# 23-0804-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

40 DAYS FOR LIFE, a nonprofit corporation of the State of Texas, WHITE PLAINS 40 DAYS FOR LIFE, as unincorporated association of the State of New York, OKSANA HULINSKY, REGINA CREARY MOLINELLI,

*Plaintiffs-Appellants,*

JANE DOE, SALLY ROE,

*Plaintiffs,*

– v. –

COUNTY OF WESTCHESTER,

*Defendant-Appellee,*

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFFS-APPELLANTS

---

CHRISTOPHER A. FERRARA
THOMAS MORE SOCIETY
148-29 Cross Island Parkway
Whitestone, New York 11357
(718) 357-1040

MICHAEL MCHALE
THOMAS MORE SOCIETY
10506 Burt Circle, Suite 110
Omaha, Nebraska 68114
(402) 501-8586

*Attorneys for Plaintiffs-Appellants*

CP COUNSEL PRESS     (800) 4-APPEAL • (623563)

COUNTY OF WESTCHESTER COUNTY DEPARTMENT OF PUBLIC
SAFETY, TERRANCE RAYNOR, Acting Commissioner of the Westchester
Department of Public Safety, in his official capacity, NEW ROCHELLE POLICE
DEPARTMENT, CITY OF WHITE PLAINS DEPARTMENT OF PUBLIC
SAFETY, GEORGE LATIMER, Chief Executive of the County of Westchester,
in his official capacity,

*Defendants.*

# TABLE OF CONTENTS

RULE 2.61 DISCLOSURE STATEMENT......................................................1

JURISDICTIONAL STATEMENT .........................................................1

INTRODUCTION ........................................................................1

STATEMENT OF THE ISSUES PRESENTED ......................................4

STANDARD OF REVIEW AS TO ALL ISSUES ................................5

STATEMENT OF THE CASE..............................................................6

SUMMARY OF ARGUMENT ...........................................................26

ARGUMENT .................................................................................30

   I.   The District Court Erred In Ruling That Hulinsky And Molinelli Lack Standing To Challenge Chapter 425.31(a), (d), (e), (f) and (h) And That 40DFL and WP-40 DFL Lack Any Standing. ...............................................30

      A. The District Court ignored the factual record and binding precedent in ruling that Hulinsky and Molinelli lack pre-enforcement standing.............30

      B. The District Court Ignored The Record And Controlling Precedent In Finding That 40DFL and WP-40DFL Lack Organizational Standing. .......37

   II.   Plaintiffs Are Likely to Succeed on the Merits. ...........................40

      A. Chapter 425 is Content-Based. ..................................................41

      B. Chapter 425 would fail intermediate scrutiny............................51

      C. Chapter 425's challenged provisions are unconstitutionally vague. ...........54

      D. Chapter 425 is overly broad.........................................................60

   III.  Plaintiffs Are Suffering Ongoing Irreparable Harm.....................61

   IV. The Balance of Harms and Public Interest Favor a Preliminary Injunction...............................................................................61

i

CONCLUSION ..................................................................................................62

# TABLE OF AUTHORITIES

## CASES

*A.H. by & through Hester v. French*, 985 F.3d 165 (2d Cir. 2021) .........................6

*Abbott v. Perez*, 138 S. Ct. 2305 (2018) ...................................................8

*Agudath Israel of Am. v. Cuomo*, 983 F.3d 620 (2d Cir. 2020).............................40

*Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219, 1247 (10th Cir. 2021)..... 44, 45

*Bell v. Keating*, 697 F.3d 445, 450 (7th Cir. 2012) ......................................... 55, 56

*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485(1984)...........6

*Brown v. City of Pittsburgh*, 586 F.3d 263 (3d Cir. 2009) .....................................53

*Brown v. Ent. Merchants Ass'n*, 564 U.S. 786 (2011).............................................50

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ............................................. 54, 57

*Coates v. Cincinnati*, 402 U.S. 611 (1971)......................................... 29, 46, 55, 56

*Connecticut Parents Union v. Russell-Tucker,* 8 F.4th 167 (2d Cir. 2021) 18, 19, 39

*Counterman v. Colorado*, 143 S. Ct. 2106 (2023)...................................................47

*De Dandrade v. United States Dep't of Homeland Sec.*, 367 F. Supp. 3d 174

   (S.D.N.Y. 2019)..................................................................................................37

*Dorman v. Satti*, 862 F.2d 432 (2d Cir. 1988) ................................ 29, 41, 50, 58, 60

*Elrod v. Burns*, 427 U.S. 347 (1976) .....................................................................61

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ....................................54

*Gaughan v. City of Cleveland*, 212 F. App'x 405 (6th Cir. 2007) (unpublished)...55

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ..................................... 58, 59, 60

*Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211 (2d Cir. 2021) ....................61

*Havens v. Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) .............................27

*Hill v. Colorado*, 530 U.S. 703 (2000) ............................................................. 22, 56

*Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515

U.S. 557 (1995) ....................................................................................6

*Kolender v. Lawson*, 461 U.S. 352 (1983)........................................................ 57, 58

*Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983), *on reh'g*, 723 F.2d 1164

(5th Cir. 1984) ................................................................................. 55, 56

*Long Island Gynecological Servs., P.C. v. Murphy*, 298 A.D.2d 504, 74 N.Y.S. 2d

776 (2d Dep't 2002) ...........................................................................51

*Madsen v. Women's Health Ctr.*, 512 U.S. 754 (1994)...........................................41

*Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003 .......................................................53

*Massachusetts v. Oakes*, 491 U.S. 576 (1989).......................................................60

*McCullen v. Coakley,* 573 U.S. 464 (2014) ..................................................... *passim*

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013)....................32

*National Institute for Family Life Assoc. v. Becerra*, 138 S. Ct. 2361 (2018). .......44

*New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021)...................................42

*New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286 (2d Cir. 2012)

.....................................................................................................40

*New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184

  (2d Cir. 2001) .................................................................... 16, 28, 51, 60

*New York Progress & Prot. v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ..............61

*New York v. Griepp*, 991 F.3d 81 (2d Cir.), *reh'g granted and opinion vacated sub*

  *nom. People v. Griepp,* 997 F.3d 1258 (2d Cir. 2021), and *on reh'g sub nom.*

  *New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021) ....................... *passim*

*Niemotko v. State of Md.*, 390 U.S. 268 (1951) .......................................................50

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ...........................................................39

*People v. Golb*, 23 N.Y.3d 455 (2014) ....................................................................60

*People v. Lagano,* 39 N.Y.3d 108, 201 N.E.3d 791 (2022) ...................................25

*People v. Richards*, 22 Misc. 3d 798 (Crim. Ct. 2008) ..........................................24

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) ..................................... 5, 31,32, 33

*Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92 (1972) ..................... 41, 48

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015)....................................... 23, 28

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) ......................61

*Susan B. Anthony List v. Driehaus*, 473 U.S. 149 (2014)................................. 31, 32

*Texas v. Johnson*, 491 U.S. 397 (1989) ........................................................... *passim*

*Thornhill v. State of Alabama*, 310 U.S. 88 (1940) .................................................59

*United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996) ........................................59

*United States v. O'Brien*, 391 U.S. 367 (1968).......................................................23

*United States v. Scott*, 958 F. Supp. 761 (D. Conn. 1997) ......................................41

*United States v. Stevens*, 559 U.S. 460 (2010) ................................................. 23, 60

*Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1974) 56

*VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179 (2d Cir. 2010) ......................54

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) ........................ 31, 61

*Vitagliano v. County of Westchester*, 71 F.4th 130

   (2nd Cir. 2023) ............................................................. 8, 22, 26, 31, 32

## STATUTES

Chapter 425 of the Laws of Westchester County

   §§425.31(a), (c), (d), (e) (f) and (h).............................................. *passim*

Freedom of Access to Clinic Entrances Act,18 U.S.C. § 248 .................................10

18 U.S.C. § 248(e)(4)................................................................................................11

28 U.S.C. § 1292(a)(1)...............................................................................................1

28 U.S.C. §§1331 and 1343 .......................................................................................1

42 U.S.C. §1983 .........................................................................................................1

City Act, N.Y., Code § 10-1003, New York City, N.Y., Code § 10-1003..............12

N.Y. Penal Law § 140.10...........................................................................................50

N.Y. Penal Law § 240.26...........................................................................................12

## RULE 2.61 DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant 40 Days For Life, the only nongovernmental corporate plaintiff, states that it is a Texas 501(c)(3) nonprofit corporation, that it has no parent corporation and that it is not publicly held.

## JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction under 28 U.S.C. §§1331 and 1343 because this action arises under the First Amendment and 42 U.S.C. §1983. On April 24, 2023, the District Court entered its Opinion And Order, SPA1, denying Plaintiffs' Motion for a Preliminary Injunction. SPA321. In accordance with FRAP 3(a)(1) and 4(a)(1)(A), Plaintiffs timely filed their Notice of Interlocutory Appeal on May 15, 2023. A367. This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1).

## INTRODUCTION

On June 27, 2022, days after the United States Supreme Court overruled *Roe v. Wade* in *Dobbs v. Jackson Women's Health Organization*, the County of Westchester enacted Chapter 425 of its local laws, imposing an array of sweeping, duplicative speech restrictions targeting pro-life sidewalk counselors with fines, imprisonment, treble damages and attorney fees, as well as actions for injunctive relief by the County Counsel. A172, et seq.

1

The Plaintiffs, two individuals and two pro-life organizations, moved for preliminary injunctive relief from seven of those speech restrictions, six of which are at issue here. A321. Chapter 425's vague and overbroad definitions of "physical obstruction" (including "hinder" or "impede" or an attempt to "hinder" or "impede"), "interfere with" (including by "deceptive means or otherwise"), "follow and harass" ( "harass" defined to include speech continuing after "an express or implied request to cease"), and "alarm or seriously annoy" (both terms undefined) are interwoven into the challenged restrictions, A174-177, which go far beyond existing "clinic access" laws.

Chapter 425 was expressly inspired by the vacated decision in *New York v. Griepp*, 991 F.3d 81 (2d Cir.), *reh'g granted and opinion vacated sub nom. People v. Griepp,* 997 F.3d 1258 (2d Cir. 2021), and *on reh'g sub nom. New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021) ("*Griepp I*"). Wrongly advised by outside counsel that *Griepp I* was still good law, the County issued a Memorandum along with the law's final version, quoting *Griepp I* to indicate its legislative intent:

> Further, with respect to reproductive health care facilities, the Second Circuit Court of Appeals, in New York v. Griepp, after characterizing the reproductive health context as particularly delicate, stated: "That sidewalk counseling constitutes a legitimate First Amendment activity is irrelevant when conduct at issue persists following a request to cease. . . . [O]nce a patient makes *an explicit or implicit request to be left alone*, that legitimate purpose is vitiated." [A167].[1]

---

[1] Emphasis added here and through this Brief unless otherwise indicated.

The six challenged provisions are designed to accomplish the County's purpose of "protecting" women from what one legislator called "the maximum fury of the First Amendment."  A57, 89. Accordingly, there is no fit between the challenged provisions and the pretext for Chapter 425's adoption: a peaceful sit-in by members of the "Red Rose Rescue" movement, who were convicted and sentenced to jail for trespass. A162-163. As the Second Verified Complaint ("Complaint") alleges without contradiction, Plaintiffs have never trespassed or violated any other law in connection. A57. Yet, fearing criminal and civil liability for violating one or more of Chapter 425's web of speech restrictions, the individual Plaintiffs have ceased their sidewalk counseling and even their very presence in the immediate vicinity of the abortion facilities, A48 to 54, while the organizational Plaintiffs have suffered injury to their pro-life missions, including sidewalk counseling.  A54-55.

The District Court  denied injunctive relief to any Plaintiff regarding five of the challenged speech restrictions on the ground of lack of Article III standing, conducting only a cursory analysis that failed to address the record facts bearing on standing, including the verified allegations of the Complaint, numerous exhibits, a supporting declaration—all incorporated by specific citations in the Notice of Motion—and a reply declaration.  *See*, *e.g.,* SPA 7-11; A48-55, 84-85, 121, 140, 188, 190, 290, 321.

The Court found standing only as to the challenge of the "follow and harass" provision of §425.31(c) by the two individual Plaintiffs. SPA13. Conducting a cursory First Amendment analysis, based on inapposite state criminal court decisions, the Court found no First Amendment violation. **The Court again failed to address the factual record, finding repeatedly—thus committing plain error—that Plaintiffs had not put forth any facts in support of their claims.** SPA8, 17, 21-22. Hence this timely appeal.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the Plaintiffs have pre-enforcement standing.

2. Whether Plaintiffs are likely to succeed on the merits. In particular:

   a. Whether Chapter 425's prohibition on "knowingly follow[ing] and harass[ing]," §425.31(c), is unconstitutionally overbroad.

   b. Whether Chapter 425's prohibitions of "*attempt[ing]*" to "intimidate," and "*attempt[ing]*" to "place[] another person in reasonable fear of physical harm" within the defined 25-foot zone, §§425.31(e)&(f), are vague facially and as applied, particularly in light of the sweeping interpretation of those terms in *Griepp I*.

   c. Whether Chapter 425's prohibition of "interfering with" "by force, threat of force or physical obstruction or blocking" "to discourage" obtaining or providing, or "because" another obtains or provides,

4

reproductive health care services, §425.31(e), (f), is unconstitutionally vague, particularly in light of *Griepp I*.

d. Whether Chapter 425's prohibition of "physically obstruct[ing] or block[ing]" "to prevent" obtaining or providing reproductive health services, §425.31(a), with those terms defined far more broadly than FACE per *Griepp I* (holding even fleeting, de minimis "obstruction" or "blocking" a violation) is unconstitutionally vague.

3. Whether the challenged provisions are unconstitutionally overbroad.

4. Whether the challenged provisions are content-based restrictions on speech in a public forum.

5. Whether the challenged provisions survive strict scrutiny.

6. Whether, alternatively, the challenged provisions survive intermediate scrutiny.

7. Whether Plaintiffs are suffering irreparable harm.

8. Whether the public interest supports an injunction.

## STANDARD OF REVIEW AS TO ALL ISSUES

1. Questions of standing are reviewed de novo. *Picard v. Magliano*, 42 F.4th 89, 96 (2d Cir. 2022). *See* Point I.

2. Denial of a preliminary injunction is reviewed for abuse of discretion, which occurs if the court "(1) bases its decision on an error of law or uses the wrong

legal standard; [or] (2) bases its decision on a clearly erroneous factual finding…

*A.H. by & through Hester v. French*, 985 F.3d 165, 175–76 (2d Cir. 2021). *See* Point II.

3. Questions of First Amendment law are reviewed de novo. *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 503(1984); *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 567 (1995). *See* Points II, III.

## STATEMENT OF THE CASE

### Plaintiffs' Sidewalk Counseling

Plaintiffs Hulinsky and Molinelli are sidewalk counselors outside Planned Parenthood abortion facilities in Westchester County, particularly at White Plains and New Rochelle. A29-34. They engage in conversational speech and leafletting effectively prohibited by the challenged provisions.

Plaintiffs peacefully approach expectant mothers and others entering or leaving the subject facilities to engage in short, quiet conversations at a normal conversational distance about alternatives to abortion, offering literature on abortion alternatives, the physical and psychological risks of abortion, and fetal development. A31-34, 42-45, 122, 141. These approaches involve pedestrians or the occupants of motor vehicles traversing the public portion of the driveway entrance at Planned

Parenthood in White Plains—the only point at which effective communication at that location is possible. *Id.* and A52-53, 66, 87; A292 (Burke Decl.).

Plaintiff Molinelli, who was trained in sidewalk counseling, A31, offers "Blessings Bags" to persons approaching or leaving the Planned Parenthood facility, which gifts are a bridge to conversation about abortion alternatives. If a car stops in the public portion of the driveway entrance to engage her, she approaches to speak and offer literature and "Blessing Bags." A32-33.

Plaintiff 40 Days for Life ("40DFL"), an international pro-life advocacy non-profit corporation, relies on local associations such as Plaintiff White Plains 40 Days for Life ("WP-40DFL") to conduct 40-day-long "Local Vigils" outside abortion facilities during the spring and fall, including Westchester County. A27-29. In addition to prayer, 40DFL trains and encourages Local Vigil participants to peacefully approach, converse, and/or offer literature to persons entering or leaving facilities. A27. WP-40DFL and its members regularly gather outside the White Plains Planned Parenthood facility, where they pray and/or approach persons entering or leaving to converse and/or offer literature. A28. Plaintiffs Molinelli and Hulinsky have both participated in 40 Days local vigils. A30, 32.

Plaintiffs recognize that the moments before expectant mothers enter or leave a Planned Parenthood facility are the last best hope of encouraging them to consider

abortion alternatives by peacefully approaching to engage in conversation rather than shouting slogans or holding signs at a distance. A30, 33.

### Westchester County Targets Pro-Life Sidewalk Advocacy

On June 27, 2022, four days after *Dobbs v. Jackson Women's Health* overturned *Roe v. Wade*, the County, whose Legislation Committee Chair publicly declared he was "enraged" by the *Dobbs* decision, adopted Chapter 425. A56, 92, 150, 331. Under penalty of fines, imprisonment, and treble damages, Chapter 425 imposes *seven different* restrictions on First Amendment-protected sidewalk counseling by pro-life advocates—including Plaintiffs—outside abortion clinics in the County. A172-180. Six of these restrictions are the subject of this appeal. The seventh—a floating eight-foot "bubble zone" forbidding any communicative "approach" within eight feet of another person for "oral protest, education, or counseling" within 100 feet of an abortion clinic entrance—is the subject of a separate appeal by these Plaintiffs[2] and a pending petition for certiorari by the Plaintiff in the related case of *Vitagliano v. County of Westchester*, held before the

---

[2] This Court declined jurisdiction over Plaintiffs' separate appeal from the District Court's repeated and emphatic refusal of preliminary injunctive relief from the bench after the Court had already dismissed a challenge to it in *Vitagliano*. *See 40 Days for Life v. Cnty. of Westchester*, No. 23-155, 2023 WL 4102246, at *2 (2d Cir. June 21, 2023). Plaintiffs believe that decision departs from the "practical effect" test of *Abbott v. Perez*, 138 S. Ct. 2305, 2322 (2018).

same District Judge. **In the face of these challenges, Chapter 425 is being amended to delete the "bubble zone."**[3]

The Board of Legislators claimed that the "precipitating event"[4] for Chapter 425 was a "Red Rose Rescue" in November 2021, in which three pro-life advocates held a peaceful sit-in at a County abortion facility—passing out roses and messages of hope to women contemplating abortion—before being arrested and sentenced to three months in jail for trespassing. A23-24, 162-163. The June 6, 2022 Legislation Committee Memorandum accompanying the final bill alleges that current law failed to "adequately protect" the facility because "the trespassers refused to leave," and the two-hour delay in making arrests "demonstrates a need for clear legislative boundaries that provide safe access to reproductive health care facilities." A162.

**None the six challenged provisions has anything to do with preventing trespass at abortion clinic facilities**. And there is no evidence that Plaintiffs or other pro-life sidewalk advocates in the County have ever trespassed at an abortion clinic or violated any other preexisting law. A57. The challenged provisions

---

[3]*See*, County Memorandum on amended Chapter 425, deleting "bubble zone." https://westchestercountyny.legistar.com/View.ashx?M=A&ID=1114350&GUID= 50C91C89-B26B-48DC-9A04-14FA10359788.

[4] "The motivation behind bringing this bill up now was not… the Supreme Court decision…. The precipitating event was the clinic invasion at All Women's Health in White Plains." *See* https://westchestercountyny.granicus.com/player/clip/1454 (at 1:09:18).

transparently target pro-life sidewalk counseling with an array of overlapping prohibitions. The legislative history of Chapter 425 is rife with legislators' statements that their intent is to insulate abortion clinic clients from pro-life advocacy. For example:

> "I disagree . . . that some stranger has the right to *come up to you* in your face and *tell you* '*You're making a big mistake.*'" A60.

> Women should not have to face "the *maximum fury* . . . of the First Amendment…" A61.

> Pro-life speech is like walking up to a mom in the grocery store and exhorting her for buying too much sugar for her kids. *Id.*

> There is a need to restrict "the gauntlet" because the pro-life *message* is "intimidating" even if stated "very politely"; pro-life speech "is *not polite* speech," etc. A62.

> Pro-life advocates must be prevented from "pestering patients," which "may be traumatizing and stop them from receiving care… *This is the goal of this legislation*." A81

*See generally* A56-82 (collecting legislators' statements).

The six restrictions challenged here, rendered substantially duplicative by repeated incorporation of the same vague and overbroad terms, *see* §§425.21(a)-(l), A172-177, are individually and collectively more burdensome to speech than already speech-restrictive putative analogues in existing law: the Freedom of Access to Clinic Entrances Act,18 U.S.C. § 248 ("FACE"), the New York Clinic Access Act (the "State Act") and the New York City Clinic Access Act ("the City Act").

The challenged restrictions and related definitions, A172-177, are as follows:

10

**1-3. "Physical Obstruction" or Force §§425.31 (a), (e), (f).** These sections prohibit:

- "physically obstruct[ing] or block[ing] another person from entering into or exiting from the premises of a reproductive health care facility or a public parking lot serving" it "to prevent… obtaining or rendering… reproductive health care services …" §425.31(a).

- the use of "force" or "threat of force," or "physically obstructing or blocking" to actually or *attempt* to "knowingly injure, intimidate, or *interfere with* another person in order to *discourage* [them] from obtaining or providing," or "*because* such person was or is obtaining or providing"… reproductive health care services ..." §§425.31(e)(f)

"**Physically obstruct or block**", defined to include "hinder… or impede, or to attempt to physically hinder… or impede" in some unspecified manner, §425.21(h), versus FACE, which requires rendering access "impassable" or "unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). Worse, "**interfere with**" is defined as "**stop . . . or prevent, through *deceptive means or otherwise***," as opposed to that phrase's much more limited definition in FACE. *See* 18 U.S.C. § 248(e)(2). "Deceptive means" sweeps the content of speech (deemed "deceptive") into the content-based prohibition. §425.21(d).

**4. "Interference" - Section 425.31(h):** Prohibits "knowingly *interfer[ing]* with the *operation* of a reproductive health care facility, or *attempt[ing]* to do the same, by *activities* including, *but not limited to*, interfering with… (i) medical procedures or treatments" at the facility; "(ii) the delivery of goods or services to" the facility; or "(iii) persons inside the facility." As noted, "**interfere with**" is

11

overbroad, vague, and content-based, as are the *undefined* terms "**operation of a reproductive health care facility**" and "**activities**."

**5. "Follow and Harass" - Section 425.31(c):** Prohibits "follow[ing] and harass[ing] another person within twenty-five (25) feet" of a facility's premises or the entrance/exit of a "public parking lot serving" it. The term "**harass**" includes speech that "**seriously annoy[s]**" and "serves no legitimate purpose," with "no legitimate purpose" defined as "any conduct or acts" (i.e., *speech*) that "continues after an express or *implied* request to cease." *See* §425.21(c). The provision is likewise vague, overbroad, and content-based, while the term "**follow**" fails to define what constitutes "following" (one step? two steps? three steps?) *Compare* City Act, N.Y., Code § 10-1003, New York City, N.Y., Code § 10-1003; *and* N.Y. Penal Law § 240.26 (referencing "no legitimate purpose," but not "express or implied request to cease.")

**6. "Attempt" to cause fear - §425.31(d):** This provision is challenged to the extent that it prohibits a "course of conduct" or repeated "acts" that merely "*attempt to*" place another person in "reasonable fear of physical harm" as these terms are unduly vague, overbroad, and content-based (dependent on listener reaction).

Penalties for violation of Chapter 425 are a $1,000 fine and a prison term up to six months for a first offense, or both, and a $5,000 fine and one year's imprisonment, or both, for any subsequent offense. *See* §425.41. A178.

In addition to this web of speech restrictions, Chapter 425 also provides a civil action for injunctive relief, treble damages, and attorney fees by virtually anyone who claims injury from a violation. *See* §425.51. The County Attorney may also sue for equitable relief "to *prevent* or cure" a violation. *See* §425.61. A178-179.

The County justified Chapter 425's multi-pronged attack on pro-life sidewalk counseling by relying *expressly* on the vacated opinion in *Griepp I*, as noted *supra*. The tenor of the County's adoption of *Griepp I* as a guide to crafting Chapter 425 is that persons approaching or leaving abortion facilities must be protected from the "unwanted" speech of pro-life sidewalk advocates in the "delicate" context of "reproductive health," such that "once a patient makes an explicit or *implicit request* to be left alone, that legitimate purpose is vitiated." A167.

The Committee was erroneously advised that *Griepp I* was good law even though it had long since been vacated. *See Griepp II*, 997 F.3d 1258 (2d Cir. 2021). A70-74. Moreover, the Chairwoman of the County Board of Legislators expressly thanked the New York Attorney General's Office for its assistance in crafting the law—the same Office that prosecuted *Griepp I*. A82-83.

13

It is easy to see why the *Griepp I* panel vacated its own decision. *Griepp I* adopted the impermissibly sweeping reading of FACE and its state and city analogues that pervades Chapter 425. In particular:

- *Griepp I* viewed as "physical obstruction" simply approaching patients and offering a leaflet, causing them to "deviate[] slightly from their path" and be delayed by "one second, at most," even though that "delay" "result[ed] from an encounter *with a pamphleteer who [did] not seek in any way to block a person's forward movement.*" *Griepp I*, 991 F.3d at 105 (Maj. Op.), 144 (Livingston, J., concurring and dissenting in part).

Chapter 425 sets up the same hair-trigger liability under its definition of "physical obstruction"—prohibited by §§425.31(a), (e) and (f)—to encompass "hinder… or impede" or a mere "attempt" to do so, as well as its definition of "interfere with"—prohibited under §§425.31(a), (e) and (h)—to encompass "stop, obstruct, or prevent, through *deceptive means* or otherwise," including speech.

- *Griepp I* construed "obstruction" to include holding signs on a broad sidewalk rarely traversed by patients while still leaving ample walking room, and consensual conversations with vehicle occupants while touching the car. *Id.* at 148 (Livingston, J., dissenting in part).

The same hair-trigger standard is reflected in the prohibition of "physical obstruction" under §§425.31 (a), (e) and (f), as defined by §425.21(h), and "interfere with" under §§425.31(e) and (f), as defined by §425.21(d).

- *Griepp I* found *attempted* "obstruction" because pro-life advocates' hand-held signs "significantly shortened the space for walking," *id.* at 106 (Maj. Op.), "even though there were no pedestrians around" and the signs "left

14

open approximately one-third of a rarely-trafficked sidewalk… over sixteen feet wide." *Id.* at 148 (Livingston, J., dissenting in part).

§425.31(e) and (f) of Chapter 425 employs the *Griepp I*-inspired vague and overbroad definitions of "physical obstruction" and "interfere with" to criminalize not only an "attempt" to "interfere with" but also, under §425.31(e), merely "discourag[ing]" reproductive health services.

- *Griepp I* ignored FACE's statutory requirement that one must render clinic access "*unreasonably* difficult or hazardous," 18 U.S.C. § 248(e)(4), finding any delay a violation, thus "effectively "creat[ing] a 'buffer zone'…. lacking any indicia of narrow tailoring." *Id.* at 105 (Maj. Op.) and 145 (Livingston, J., dissenting in part).

That is exactly the cumulative effect of §425.31 (a), (e), (f) and (h) under the definitions of "interfere with" and "physically obstruct" in §425.21(d) and (h).

- *Griepp I* found *consensual* conversation with vehicle occupants constitutes "physical obstruction" because Defendants touched the vehicles, holding "[t]here is no statutory exception for consensual conversations." *Id.* at 108.

Chapter 425's definition of "physical obstruction" to include "hinder… impede" or an attempt to "hinder… impede," and "interfere with" to include "stop, obstruct, or prevent, through *deceptive means* or *otherwise*," §§425.21(d) and (h), reflect precisely this hyper-sensitive prohibition.

- *Griepp I* found "threats of force" in the mere statement that clinic escorts "won't be here when [they] leave," and "you never know when you're going to die" in the context of preaching about the ephemeral nature of life and the need to repent. *Id.* at 114-115.

15

Chapter 425 likewise imposes criminal liability for any "course of conduct" or repeated "acts" deemed to constitute a mere "attempt to" place another person in "reasonable fear of physical harm," with attempt liability dependent on listener reaction. *See* §425.31(d). It suffices under the County's *Griepp I* standard that listeners "found the statements scary and suggestive of harm." *Griepp I*, 991 F.3d at 117.

Moreover, under the *Griepp I* standard, attempt liability for "scary" speech can be based on a "context" of unrelated violent incidents in which the speakers were not involved. As the *Griepp I* dissent noted, that view is contrary to this Court's holding that a protestor's reference to a violent incident *in the same community* was an "expression of a political opinion . . . entitled to First Amendment protection." *New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 197 (2d Cir. 2001). *See Griepp I*, 991 F. 3d at 39.

- *Griepp I* found that a single uninvited question or statement, "even for a short time after a single rebuff," violates the City Act's "follow-and-harass" prohibition because "intent to harass, annoy or alarm may be inferred from… following a patient or companion… and repeatedly attempting to engage that individual, *even for a just a short time*, when the individual explicitly *or impliedly* requested to be left alone." *Id.* at 124.

Again, Chapter 425's own "follow-and-harass" prohibition, §425.31(c), incorporates *Griepp I*'s hair-trigger standard of "harassment." §425.21(c). A167, 175. As one of the County legislators explained: "When you're walking down the

street and people are *handing out leaflets* . . . and you *ignore that person*, that's implied: 'Leave me alone.'" A77.

- *Griepp I* found the "sensitive atmosphere" outside abortion clinics creates a "controversial situation[]" that raises even a single uninvited communication to the level of "harassment." *Id.* at 122.

That is exactly how the County legislators viewed the "sensitive atmosphere" outside County abortion clinics.

*Griepp I*'s expansive reading of FACE reaches the astonishing conclusion that "[t]here is no statutory carveout for de minimis conduct" because FACE "is designed to protect… the constitutional right to terminate pregnancy" and "[t]he statute is broad in order to shield this right." *Id.* at 124. That conclusion, unsustainable under the First Amendment in any case, is certainly untenable post-*Dobbs*. And yet the County adopted Chapter 425 in furtherance of *Griepp I*'s unconstitutional conclusion to reach even de minimis conduct.

Because the six provisions challenged here sweep protected conduct into their prohibitions, Plaintiffs Hulinsky and Molinelli have ceased sidewalk counseling rather than risk criminal liability. They have even refrained entirely from being at the subject premises or their immediate vicinity. A37-45, 48-53.

Plaintiffs 40DFL and WP-40DFL have suffered injury to their organizational missions because Chapter 425 has shut down sidewalk counseling, a core activity of both organizations, and reduced the size of pro-life vigils, now

confined to prayer at a "safe" distance from anyone approaching or leaving an abortion clinic. 40DFL has also been required to divert resources from core activities to mount this challenge to Chapter 425. A54-55, 84-85, 294-295 (at ¶¶ 12-16), 365 (at ¶¶ 6-7).

**The Opinion Below**

The District Court's opinion is characterized by cursory analysis and plainly erroneous findings that Plaintiffs presented no specific facts in support of their claims.

## <u>Organizational Standing</u>

In a two-page analysis of organizational standing, the District Court found that neither 40DFL nor WP-40DFL has standing to challenge any of the six provisions at issue. As to 40DFL, the Court stated: "Plaintiffs have failed to put forward any specific facts showing that the enactment of Chapter 425 has or will in any way 'perceptibly impair its activities.'" SPA7-8; citing *Connecticut Parents Union v. Russell-Tucker,* 8 F.4th 167, 173 (2d Cir. 2021).

Not so. The Court failed to address record evidence of precisely that impairment in the pertinent paragraphs of the Complaint, verified by organizational representative Steve Karlen and keyed to the Complaint's numbered paragraphs and Exhibits in the Notice of Motion. A27-28, 48-55, 99-100, 322-323. As those uncontroverted allegations establish, the challenged provisions frustrate 40DFL's

18

mission by criminalizing its core activity of sidewalk counseling by WP-40DFL under the "40 Days for Life" banner with literature and training provided by 40DFL.

As to 40DFL, the District acknowledged that organizational standing arises when an organization not directly regulated by a law suffers an "involuntary material burden on its established core activities." SPA7, citing *Connecticut Parents,* 8 F.4th at 173-174. Here too the District Court ignored the record. The Complaint as verified by Karlen specifically alleges that enactment of Chapter 425 forced 40DFL to divert resources from core activities to contesting the challenged provisions so that its mission in Westchester County can be pursued locally, including sidewalk counseling, "an important part of 40DFL's mission." This diversion of resources includes "identifying and interviewing potential witnesses, studying the challenged provisions, consulting with counsel about a constitutional challenge to Chapter 425, and concomitant diversion of financial resources for salaries and office expenses otherwise devoted to pro-life work." A27-28, 54-55, 99.

As to WP-40DFL, the District Court stated: "Plaintiffs have failed to put forward any specific facts that Chapter 425 has actually 'perceptively impaired' [40 Days White Plains'] activities." SPA8. Once again, not so. The Court failed to address verified and uncontroverted allegations regarding cessation of sidewalk counseling following enactment of Chapter 425. A28-29, 48-53, 322-323. The Court further ignored the supporting declaration of WP-40DFL member Brian Burke,

A291, who attested that not only he and his wife, but WP-40DFL members generally have ceased conducting sidewalk counseling at the White Plains Parenthood for fear of criminal liability. A291-295. Burke also attested that WP-4DFL leadership had warned members: "This law is designed to intimidate pro-lifers and scare them off the sidewalks in front of abortion facilities." A294. The District Court also ignored Burke's reply declaration to the same effect, A364-366, noting as well that Chapter 425 has caused a dramatic diminution in attendance at local vigils. A365.

Remarkably, despite the existence of these record facts, the District Court erroneously declared "there is nothing in the record showing that 40 Days White Plains' speech has been chilled in any way." SPA8-9. Having ignored the record, the District Court concluded irrelevantly, SPA8, that WP-40DFL has continued local vigils consisting of standing and praying and/or holding signs at the White Plains Planned Parenthood, but without the core activity of sidewalk counseling whose infringement is the real issue, as is the diminished presence of regular vigil participants. A48-54; A291-295 (Burke Decl.).

**Individual Standing as to §§425.31(a), (d), (e) (f), or (h)**

The District Court rejected five of Plaintiffs Hulinsky's and Molinelli's six challenges to the provisions of Chapter 425 on the ground that they lacked pre-enforcement standing as to : §§425.31(a), (d), (e) (f), (h). SPA7-9, 11. On this score, the District Court conducted no legal analysis of the broad sweep of those speech

restrictions and their incorporated vague and overbroad definitions of "physical obstruction," "interfere with" and "harass" under §§425.21(d) and (h). Nor did the Court conduct even a minimal factual analysis of the impact of the five provisions on the individual Plaintiffs' sidewalk counseling. Yet again the Court failed to address detailed verified allegations of the Complaint, the Notice of Motion's specific references to the pertinent paragraphs, the incorporated photographic exhibits showing the layout of the subject abortion clinic facilities and the restrictive zones of Chapter 425's prohibitions, and the supporting declarations of Brian Burke concerning how Chapter 425 has ended sidewalk counseling. *See e.g.* A26-34, 48-54, 49-50, A54-55, 99-102, 188, 190, 291-295, 321-323, 364-366.

Failing to address the record, the District Court perfunctorily concluded that the individual Plaintiffs "do not put forward any evidence showing that [their] intended course of conduct—sidewalk counseling regarding alternatives to abortion—would implicate the type of conduct proscribed by Sections 425.31(a), (e), (d), (f), or (h). It is neither arguable nor reasonable to conclude that the Individual Plaintiffs' course of conduct is proscribed by Sections 425.31(a), (e), (d), (f), or (h)."

**Individual Standing as to §425.31(c): the "follow and harass" provision**

Turning to the "follow and harass" provision of §425.31, however, the District Court conceded that, given the application of New York City's "follow-and-harass" law to pro-life sidewalk counselors in *Griepp I*, "[t]he Individual Plaintiffs'

sidewalk counseling could arguably be characterized as harassing conduct violative of Section 425.31(c)" and that "their intended conduct is arguably proscribed by Section 425.31(c)." SPA11-12. The Court further found that the individual Plaintiffs "face a credible threat of prosecution under that provision and… have standing to challenge Section 425.31(c)." SPA12-13.

How the District Court rightly found that the County's reliance on *Griepp I* gives rise to pre-enforcement standing as to Westchester's "follow-and-harass" law, but not as to any of its other speech restrictions (even though *Griepp I* also applied FACE to generic sidewalk counseling), is nothing short of mysterious.

Having conceded that Plaintiffs have standing to challenge the "follow and harass" provision, however, the District Court perfunctorily concluded that, like the floating eight-foot "bubble zone"—*now in the process of being repealed*—that provision is not subject to strict scrutiny based on its terms "harass," "seriously annoying" and "express or implied request to cease," but rather is "an exceedingly modest restriction on the speakers' ability to approach." The Court quoted its own decision in *Vitagliano* dismissing a challenge to the bubble zone under Fed. R. Civ. P. 12(b)(6) solely on the authority of *Hill v. Colorado*, 530 U.S. 703 (2000)—which appears ripe for overruling, as the County Counsel conceded. A68; SPA15.

Other than relying on *Hill*, the Court conducted no analysis of First Amendment law, including the "narrow tailoring" requirement more recently reaffirmed in *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015). *See* Point II.

The District Court dismissed Plaintiffs' references to the Legislation Committee Memorandum and numerous legislators' declarations that their intent was to criminalize "unwanted" pro-life speech, citing only dicta from *Dobbs* that "inquiries into congressional motives or purposes are a hazardous matter," while ignoring the corollary that "the Court will look to statements by legislators for guidance as to the *purpose* of the legislature…" *United States v. O'Brien*, 391 U.S. 367, 383–84 (1968). SPA15-16. *See* Point II.

Turning to Plaintiffs' overbreadth challenge to §425.31(c), the District Court, again relying only on *Hill*, perfunctorily concluded that a law criminalizing unwanted speech *only outside abortion clinics* after an "express or implied request to cease" would *not* result in "a substantial number of [] applications [that] are unconstitutional, judged in relation to the statute's plainly legitimate sweep," citing *United States v. Stevens*, 559 U.S. 460, 473 (2010). SPA17. The Court failed to consider the patent likelihood that *all* applications of §425.31(c) would involve pro-life advocates and no others.

The District Court's assessment of Plaintiffs' vagueness challenge under the Fourteenth Amendment was equally perfunctory. SPA17-20. The Court found no

impermissible vagueness in "follow" or "implied request to cease" either facially or as applied.  The Court conceded that in *McCullen v. Coakley,* 573 U.S. 464 (2014), the  Supreme Court *did not give its approval* to the "follow and harass" provision of the City Act because "whether such a law would pass constitutional muster would depend on a number of other factors, such as whether the term 'harassment' had been authoritatively construed to avoid vagueness and overbreadth problems ..." *Id.* at 491 & n. 8.  SPA19.

The District Court did not consider the lack of any authoritative construction for "harass," "implied request to cease"—going beyond even the City Act—or "alarm or seriously annoy." As to "implied request to cease," the Court found that this vague speech restriction—imported from *Griepp I* and drafted with the assistance of the New York Attorney General—passed First Amendment scrutiny based solely on the decision of a criminal trial court in New York City regarding a balloon-seller who "aggressively hawk[ed] his wares to an unwilling customer…" SPA 20, citing *People v. Richards*, 22 Misc. 3d 798, 807 (Crim. Ct. 2008).  The District Court held that "attempting to evade unwanted communication by traveling down the street" sufficiently "illustrates an implied request to cease."  SPA20.

As for "alarm or seriously annoy," the District Court cited no authority upholding "seriously annoy" as a speech restriction imposing criminal liability, but only another New York criminal court decision under Penal Law 240.26 based on

death threats by a former domestic partner. *People v. Lagano,* 39 N.Y.3d 108, 201 N.E.3d 791 (2022). SPA20. The District Court also cited the plainly inapposite *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006), involving an arrest under §240.26 arising from *violation of a protective order* by acts committed *outside the victim's home*—for which defendant was *acquitted*. SPA20.

Based on this cursory analysis, the District Court concluded that the "follow and harass" provision of Chapter 425 poses no First Amendment problem. SPA20-21.

Finally, the Court concluded that Plaintiffs have suffered no irreparable harm from any of the six challenged provisions of Chapter 425. Continuing its systematic failure to address the record, the Court stated: "Plaintiffs have failed to put forward any specific facts to support this contention." SPA21.

Erring further, the Court found that "Plaintiffs have failed to rebut the evidence submitted by Defendant" purporting to demonstrate no effect on pro-life sidewalk counseling by Chapter 425. On the contrary, Plaintiffs specifically rebutted that "evidence," which showed merely that a few members of WP-40DFL were standing on the sidewalk and passively praying and/or holding signs following adoption of Chapter 425—with sidewalk counseling having been stifled—while a lone non-member who *did* attempt sidewalk counseling declared to the camera that *he was violating Chapter 425.* A365-366 (Burke Reply. Decl., ¶¶ 1-9). Declarant

25

Burke further attested that 40DFL policy forbids vigil participants to violate local laws. A365. Thus, it was Defendants who failed to rebut *Plaintiffs'* evidence.

This timely appeal followed.

## SUMMARY OF ARGUMENT

1. The District Court ruled that the individual pro-life advocate plaintiffs, Hulinsky and Molinelli, lack standing to challenge all but one of the contested provisions of Chapter 425. The Court additionally found that neither of the plaintiff pro-life organizations, 40DFL and WP-40DFL, have pre-enforcement standing to challenge any of the contested provisions of Chapter 425.

2. As to Hulinsky and Molinelli, the District Court mistakenly concluded that §425.31(a), (d), (e), (f) and (h) do not even arguably proscribe Plaintiffs' conduct. SPA11. The District Court's ruling ignored that Hulinsky and Molinelli ceased their prolife advocacy for fear of criminal and civil liability, that the vague, sweeping language of those provisions arguably criminalizes the individual plaintiffs' conduct and that, since their fear of prosecution is "not imaginary or wholly speculative", they have suffered an injury-in-fact. See *Vitagliano v. County of Westchester*, 71 F.4th 130, 136-137 (2nd Cir. 2023).

3. As to 40DFL and WP-40DFL, the District Court erroneously found they failed to demonstrate any "perceptible" impact on their activities. SPA 7-9. As indicated by the Supreme Court's decision in *Havens v. Realty Corp. v. Coleman*,

455 U.S. 363, 379 (1982), an organizational injury which confers standing may be based on a showing that an organization's activities have been "frustrated", and by a showing of diversion of the organization's resources. 40DFL and WP-40DFL demonstrated both factors with record facts the Court ignored. The verified allegations of the Complaint establish that Chapter 425 has perceptibly frustrated 40DFL's efforts by impeding its ability to promote local vigils at the White Plains Planned Parenthood, and by requiring it to divert financial resources otherwise used for pro-life work, as well as diverting time and effort away from its mission-related activities in order to "identify[] and interview[] potential witnesses, study[]the challenged provisions, [and] consult[]with counsel about a constitutional challenge to Chapter 425…." A55-56.

5.      WP-40DFL likewise demonstrated Chapter 425's impact on its mission-related activities.  The challenged provisions have ended WP-40DFL's sidewalk counseling and significantly reduced participation in the vigils that are central to WP-40DFL's mission.  A48-54.

6.      Plaintiffs are likely to succeed on the merits because the six challenged provisions of Chapter 425 are content-based, fail even intermediate scrutiny, and are unconstitutionally vague and overbroad.  These provisions were overtly tailored by the County Legislature precisely to restrict pro-life speech on public-sidewalks.

7. The challenged provisions facially restrict Plaintiffs' speech based on content, including the purpose of their speech: "to discourage" obtaining or providing *only* reproductive health care, or to "interfere with" *only* abortion clinics. Laws that restrict expression based on its "function or purpose" are facially content-based. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015).

8. Even if content-neutral facially, the challenged provisions are invalid as content-based because they arise from government disagreement with Plaintiffs' message. *Reed*, 576 U.S. at 164. The County made this clear in Chapter 425's legislative history and official Memorandum.

9. Therefore, the challenged provisions must undergo strict scrutiny, which they fail in part because it is never a compelling interest to "prohibit the expression of an idea simply because [others] find [it] offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

10. The challenged provisions fail even intermediate scrutiny because they are not narrowly tailored to any legitimate interest. They burden "substantially more speech than necessary" relative to their alleged "precipitating event"—a single trespass incident at a local abortion facility resulting in arrest and conviction. The County adopted Chapter 425 to restrict the alleged "gauntlet" of pro-life speech outside abortion facilities, which is not a legitimate (let alone) significant interest. *New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 208 (2d Cir.

28

2001). And "the layering of" multiple speech restrictions is in itself unconstitutional. *Brown v. City of Pittsburgh*, 586 F.3d 263, 279 (3d Cir. 2009). Further, the County failed to address the purported problem with less intrusive tools. *McCullen*, 573 U.S. at 486.

11.     The challenged provisions are unconstitutionally vague and overbroad. Authorities must evaluate the substantive content of "deceptive means," "follow," "harass," "hinder," "stop," "impede," "alarm" and "seriously annoy," which the County Legislature intended to have the broadest possible construction according to the vacated *Griepp I* decision on which the County relied.

12.     The challenged provisions fail the heightened First Amendment vagueness standard because the statutory terms fail to provide ascertainable standards of conduct. *See e.g.*, *Coates v. Cincinnati*, 402 U.S. 611 (1971).

13.  As to overbreadth, a substantial number of Chapter 425's applications to speech and expressive conduct vastly exceed any legitimate sweep. *See Dorman v. Satti*, 862 F.2d 432, 435-36 (2d Cir. 1988).

14.     Plaintiffs are suffering irreparable harm under Chapter 425's prohibitions. The District Court erred by holding, contrary to the entire record, that Plaintiffs had presented no facts showing irreparable harm.

15.   The balance of harms and public interest favor a preliminary injunction securing Plaintiffs' rights.   The public interest always favors respect for the First Amendment.

## ARGUMENT

### I.   The District Court Erred In Ruling That Hulinsky And Molinelli Lack Standing To Challenge Chapter 425.31(a), (d), (e), (f) and (h) And That 40 DFL and WP-40 DFL Lack Any Standing.

#### A.   The District Court ignored the factual record and binding precedent in ruling that Hulinsky and Molinelli lack pre-enforcement standing.

Although the District Court found that Hulinsky and Molinelli have standing to challenge §425.31(c) (prohibiting "follow[ing] and harass[ing]"), it found they lacked standing to challenge §§425.31(a), (d), (e), (f) and (h). The Court found no standing as to those provisions because neither Hulinsky nor Molinelli proclaimed an intent to violate them, SPA10-11, and because "[p]eaceful conversations occurring 'at a normal conversational distance' outside of reproductive health care facilities do not involve physical obstruction, threats of physical harm, or interference with the operation of the health care facility itself." *Id*. The District Court concluded: "It is neither arguable nor reasonable to conclude that the Individual Plaintiffs' course of conduct is proscribed by Section (a), (e) (d), (f), or (h)." *Id.*

30

While the District Court is correct that it is counterintuitive—and unconstitutional as discussed *infra*—that "peaceful conversations" "at normal conversational distance" outside "reproductive health care facilities" would expose a speaker to civil or criminal liability, its facile analysis disregards that §§425.31(a), (d), (e), (f) and (h) are *designed* to criminalize such interactions. As shown in the Statement of the Case, that is *what the County legislature intended*—in light of, and with express reliance upon the vacated *Griepp I* decision with its hair-trigger standards of liability for "unwanted" speech.

The Court disregarded the elementary principle applicable here: Plaintiffs are not required to declare an intention to violate the challenged law. See *Susan B. Anthony List v. Driehaus*, 473 U.S. 149, 163 (2014). As long as their fear of prosecution is "not imaginary or *wholly* speculative" they have pre-enforcement standing. *See Vitagliano*, 71 F.4th at 136-137.

With good reason the standard for pre-enforcement challenges is "quite forgiving to plaintiffs … as courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Picard*, 42 F.4th at 98 (cleaned up). This is especially true in First Amendment cases, where the "danger . . . is… one of self-censorship… without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). The District Court failed to consider the uncontroverted evidence of self-

censorship.  *See also*, *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013) ("somewhat relaxed standing and ripeness rules" for First Amendment pre-enforcement challenges).

To establish Article III standing, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Vitagliano*, 71 F.4th at 136 (cleaned up).  A cognizable injury-in-fact in the context of pre-enforcement challenges requires "(1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is 'proscribed by' the challenged law; and (3) … "a credible threat of prosecution thereunder.'" *Id.* at 136, quoting *Susan B. Anthony*, 573 U.S. at 157-58.

In this case, the District Court erred in holding that Plaintiffs failed to show that their "intended conduct is 'proscribed by' the challenged law."  See *Vitagliano*, 71 F.4th at 136. With regard to the "injury-in-fact" analysis, "[t]he Supreme Court's opinion in *Susan B. Anthony List* makes clear that courts are to consider only whether the intended conduct is '*arguably* proscribed' by the challenged statute, not whether it is *in fact* proscribed."  *Picard*, 42 F.4th at 98 [emphasis in original].  *See also*, *Vitagliano*, 71 F.4th at 138.

Under the "arguably proscribed" standard in *Susan B. Anthony List*, or this Court's corresponding "reasonable enough" interpretation standard, a court must

"consider whether the plaintiff's proffered interpretation of the statute—which leads them to fear its enforcement against their intended conduct—is arguable or reasonable." *Picard*, 42 F.4th at 99. The individual Plaintiffs easily satisfy those standards. Contrary to the District Court's opinion, §§425.31(a), (e), (d), (f), and (h) at least arguably encompass their conduct. The allegations of the verified Complaint establish that both of them actually and reasonably fear criminal and civil liability under Chapter 425.31's interlocking web of prohibitions and sweeping, vague definitions of operative terms, going beyond FACE and the State and City Acts in accordance with *Griepp I*'s view that "[t]here is no statutory carveout for de minimis conduct" under FACE because FACE "is designed to protect… the constitutional right to terminate pregnancy" and "[t]he statute is broad in order to shield this right." *Griepp I,* 991 F.3d 124.

Before enactment of Chapter 425 caused them to cease sidewalk counseling, pro-life advocacy and related religious activities, Plaintiffs engaged in those activities outside Planned Parenthood locations in New Rochelle and White Plains. Their activities included holding pro-life signs while standing on sidewalks or other public rights-of-way adjacent to those locations and participating in sidewalk vigils conducted by WP-40DFL, involving large numbers of people. A29-34, 48-54. *See* A106-111 (photos of large vigil gatherings *before* adoption of Chapter 425)

33

Molinelli's activities included speaking and offering literature to people in cars approaching the White Plains Planned Parenthood, who *stopped* in the public portion of the driveway crossing to speak to her. A33. That conduct comes under the sweeping definition of "obstruction" in multiple provisions of §§425.31 (a), (e) and (f), including "hinder, restrain, or impede, or to attempt to physically hinder, restrain or impede…", as well as the definition of "interfere with" in §425.21(d), including "*stop*" as *distinguished* from "obstruct," and "prevent, through d*eceptive means or otherwise*."

The District Court's conclusion that Plaintiffs conduct was not prohibited because it "did not involve any physical obstruction or interference with the operation of the health care facility itself," SPA 11, ignores the vague and overbroad language of §§425.31(a), (e), (d), (f), and (h), as well as the legislative history. As noted, the County relied upon *Griepp I*, which found "physical obstruction" to include holding a sign on a sidewalk or leafletting causing a "one-second delay."

Even without the undefined "following and harassing" prohibited by §425.31(c), Plaintiffs' advocacy necessarily involved at least briefly "hindering" or "impeding" entry into or exit from a reproductive health care facility as they sought to engage women face-to-face, which quite plausibly would be in violation of §§425.31(a), (e), (d), (f), and (h). All the more so with the addition of the sweeping definition of "interfere with" that animates §§425.31(e), (g) and (h): "to stop,

34

obstruct, or prevent, through *deceptive means or otherwise*." Worse, §425.31(e)'s prohibition against actual or attempted "interference" covers even a mere attempt to "*discourage*… obtaining or providing, or assisting in obtaining or providing, reproductive health care services…"

Further, even praying the Rosary while participating in vigils involving large numbers of people occupying the sidewalk is arguably also prohibited by §§425.31 (a), (e) and (f), particularly in light of the *Griepp I* decision the County cited. Plaintiffs conducted those activities while positioned with others in public rights-of-way adjacent to Planned Parenthood locations, potentially violating those provisions. With good reason has vigil attendance drastically decreased since Chapter 425's enactment. *Compare* A106-111 (photos of large gatherings *before* adoption of Chapter 425) *and* A346, 349 (defense exhibits showing drastic reduction in attendance post-Chapter 425); *and see* A294-295 (at ¶¶ 11-16), A365 (at ¶¶ 5-9).

§425.31(d) also at least arguably proscribes Plaintiffs' advocacy. As set forth *supra*, that provision imposes criminal liability for any "course of conduct" or repeated "acts" deemed to constitute an "attempt to" place another person in "reasonable fear of physical harm," "within twenty-five (25) feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public parking lot serving [it]." Plaintiffs' activities included approaching women to communicate

potentially unwelcome messages, women may claim to find disturbing or frightening.

Finally, §425.31(h) also arguably criminalizes Plaintiffs' advocacy by prohibiting "knowingly interfer[ing] with the operation of a reproductive health care facility or attempt[ing] to do so, by *activities* including*, but not limited to*, interfering with… (i) medical procedures or treatments" at the facility. Again, "stopping" or attempting to "stop" women to speak to them and offer literature plausibly constitutes "interfer[ing]" or attempted "interfering." The Court in *Griepp I* certainly believed so, even under the less-restrictive prohibitions of FACE and the City and State Acts. All the more so with "hinder" or "impede" under the definition of "physically obstruct" in §425.21(h), operative in §425.31(a), (e) and (f).

The District Court's conclusion that "[i]t is neither arguable nor reasonable to conclude that the Individual Plaintiffs' course of conduct is proscribed by Sections (a), (e), (d), (f), or (h)" is belied by the intentionally sweeping language of all the aforesaid provisions, as applied to the record facts the Court failed to address.

Yet, inexplicably, the District Court *did* find that Plaintiffs had standing to challenge the "follow and harass" provision of §425.31(c) on precisely the ground that "sidewalk counseling could *arguably be characterized as harassing conduct* violative of Section 425.31(c)." SPA 11. Why not, therefore, also arguably "obstruction" or "interference," or even *attempted* "obstruction" or "interference"

36

under subsections (a), (d), (e), (f), or (h)? The District Court's finding that Plaintiffs do not have arguable, plausible, or reasonable standing is plain error.

**B.    The District Court Ignored The Record And Controlling Precedent In Finding That 40DFL and WP-40DFL Lack Organizational Standing.**

The District Court erroneously held that Plaintiffs 40DFL and WP-40DFL failed to demonstrate any injury-in-fact.  (SPA 7-9).  Again, however, the District Court's decision ignores the verified allegations of the Complaint, as well as controlling precedent.

It should be noted that, upon a determination that Hulinsky and Molinelli have standing, it is not necessary for this Court to address the organizational standing of 40DFL and WP-40DFL.  "Generally, if one plaintiff has standing, [the court] need not decide the standing of others." *De Dandrade v. United States Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 182, n.2 (S.D.N.Y. 2019).  Nevertheless, as shown above 40DFL demonstrated a "perceptible" impact upon its mission efforts sufficient to establish standing.   In *Havens*, 455 U.S. at 379, the Supreme Court found that a plaintiff non-profit corporation had standing to challenge defendants' racial steering practices based on general allegations that its mission had been "'frustrated by defendants' racial steering practices" and that it had had "to devote significant resources to identify and counteract" those practices. Based on those allegations, the Court concluded: "If, as broadly alleged, petitioners' steering practices have

37

perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact." *Id.*

As noted above, 40DFL is an international pro-life advocacy organization whose activities include the promotion of 40-day Local Vigils throughout the nation, including White Plains. 40DFL annually promotes over a thousand Local Vigils, involving hundreds of thousands of volunteers worldwide. In support of its mission to promote Local Vigils, 40DFL trains participants in sidewalk counseling "to peacefully approach persons entering or leaving the facility, or passersby, to converse or offer literature on alternatives to abortion and other resources….", providing them with literature and other materials. Training and encouraging sidewalk counselors is an important part of 40DFL's mission. A27-28, 54-55.

Like the non-profit corporation in *Havens*, 40DFL has sufficiently alleged that Chapter 425 has perceptibly frustrated its mission efforts by impeding its ability to promote a local vigil at the White Plains Planned Parenthood. Contesting the challenged provisions of Chapter 425, so that 40DFL can continue to pursue its mission in Westchester County without unconstitutional restraints, has required 40DFL to divert resources from core activities to "identifying and interviewing potential witnesses, studying the challenged provisions, consulting with counsel about a constitutional challenge to Chapter 425, and concomitant diversion of

financial resources for salaries and office expenses otherwise devoted to pro-life work." A27-28. Notably, this Court recognizes "litigation expenses alone" as "sufficient to support standing." *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011).

The District Court's reliance on *Connecticut Parents Union*, SPA7, was misplaced. In that case, a rule establishing a racial quota in schools did not directly impede the organizational plaintiff's mission. *Id.* 8 F.4th at 170-71. By contrast, 40DFL's expenditures have been necessary to continue an *established* core activity. This is not a case of voluntarily "embark[ing] on categorically *new* activities in response to action by a putative defendant…." *Id.* at 174. In this case, the frustration of 40DFL's *established core activities* and diversion of resources from its established mission are exactly the type of perceptible impacts found sufficient for standing in *Havens*.

The District Court also erred in finding that WP-40DFL lacks organizational standing. With respect to WP-40DFL the District Court opined that "Plaintiffs have failed to put forward any specific facts" that Chapter 425 "'perceptibly impaired 40 Days White Plains from planning or promoting any vigils"—thus ignoring the record facts concerning cessation of sidewalk counseling and diminished vigil attendance following Chapter 425's passage already discussed. The record facts establish that the challenged provisions have "impeded, and will continue to impede, the

organization's ability to carry out this aforementioned responsibility." *New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 295 (2d Cir. 2012).

Contrary to the District Court's apparent conclusion, WP-40DFL was not required to show that it had to entirely cease planning vigils in the wake of Chapter 425. An uncontested fifty-percent reduction in participation in WP-40DFL core organizational activity, and the cessation of sidewalk counseling, adequately establish involuntary "perceptible impairment" of core activities and injury in fact. *See* A28-29, 48-54, 290, 364.

## II. Plaintiffs Are Likely to Succeed on the Merits.

To obtain a preliminary injunction Plaintiffs must show: "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020). Plaintiffs easily meet these elements.

Beginning with likelihood of success, it is a "bedrock principle" that "government may not prohibit the expression of an idea simply because [it] finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Moreover, when "government makes it more difficult to engage" in pro-life "sidewalk counseling, . . . normal conversations and leafletting on a public sidewalk," it "imposes an especially significant First Amendment burden." *McCullen*, 573 U.S. at 488-89 (2014). Laws regulating this activity must give

"adequate breathing space to the freedoms protected by the First Amendment." *Madsen v. Women's Health Ctr.*, 512 U.S. 754, 768 (1994). The challenged provisions of Chapter 425 are *designed* to leave *zero* breathing space for Plaintiffs' protected speech.

### A. Chapter 425 is Content-Based.

The First Amendment prohibits government from "restrict[ing] expression because of its message, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws . . . are presumptively unconstitutional" and must undergo strict scrutiny. *Reed*, 576 U.S. at 163. "The vice of content-based legislation . . . is not that it is *always* used for invidious, thought-control purposes, but that it *lends itself* to use for those purposes." *Madsen*, 512 U.S. 753, 794-95 (Scalia, J., concurring in part) (emphasis in original). Nor can government argue it is merely regulating conduct "where," as here, "conduct is related to expression." *Johnson*, 491 U.S. at 414. Further, non-expressive "[c]onduct may be regulated . . . as long as it is not regulated *because of* viewpoint." *United States v. Scott*, 958 F. Supp. 761, 775 (D. Conn. 1997) (citing, inter alia, *Madsen*, 512 U.S. at 763-65). Further, "statutory language prohibiting acts such as interference or harassment encompasses verbal as well as physical conduct." *Dorman v. Satti*, 862 F.2d 432, 436-37 (2d Cir. 1988) (citing *Houston v. Hill*, 107 S. Ct. 2502, 2511-12 (1987)).

41

The "first step in the content-neutrality analysis" is "determining whether the law is content-based on its face." *Reed*, 576 U.S. at 165. A law is facially content-based if it "draws distinctions based on the message a speaker conveys," "defin[es] regulated speech by particular subject matter" or, "more subtl[y,]" "regulat[es] speech by its function or purpose." *Id.* at 163-64.

Second, even a facially content-neutral law "will be considered content-based" if it "cannot be justified without reference to the content of the regulated speech or [was] adopted… because of disagreement with the message [the speech] conveys." *Id.* at 164 (first alteration added, second in original) (cleaned up). Chapter 425 exhibits both defects.

### 1. Chapter 425 is facially content-based.

#### a. §§425.31(e) and (f).

For starters, §425.31(e) and (f) prohibit using force or physical obstruction to knowingly "*interfere with* . . . another person in order *to discourage* such other person" from providing or obtaining "reproductive health care services," or "*because* such person" provided or obtained them. This Court has confirmed that similar language in FACE applies to pro-life speech (such as leafletting) on public sidewalks, to the extent it amounts to forbidden force or physical obstruction. *See New York by James v. Griepp*, 11 F.4th 174, 178 (2d Cir. 2021) (*Griepp II*) (acknowledging vacatur of *Griepp I* but admitting "[s]ome members of this Court

might have reached different conclusions…"). These provisions are facially content-based for at least two reasons.

First, subsections (e) and (f) apply only where the *purpose* of regulated conduct is "to discourage" providing or obtaining abortion, or "because" it was provided or obtained. But, as noted, regulating expression based on "its function or purpose" inherently draws "distinctions . . . . based on the message a speaker conveys, and, therefore, [is] subject to strict scrutiny." *Reed*, 576 U.S. at 164. That is, "regulation of that conduct is related to expression" and is thus facially content-based. *Johnson*, 491 U.S. at 414 (prohibition of flag-burning, if "designed to seriously offend other individuals," is content-based) (cleaned up). Subsections (e) and (f) facially regulate expression based on purpose and so are content-based.

Second, these subsections apply only where the alleged force or physical obstruction knowingly "interferes with" another, defined to include merely "stop[ping]" or "prevent[ing]" "through *deceptive means or otherwise*." §425.21(d). But determining whether a "means"—including *speech*—is "deceptive" is inherently a content-based inquiry because "it require[s] enforcement authorities to examine the content of the message …" *McCullen*, 573 U.S. at 479 (cleaned up). That is exactly what Subsections (e) and (f) require enforcement authorities to do.

**Indeed, the Supreme Court has recognized that "false" speech restrictions are inherently content-based**. *See United States v. Alvarez*, 567 U.S.

43

709, 718 (2012). Because "false statements" are "inevitable if there is to be an open and vigorous expression of views in public and private discussion," it is unconstitutional to prohibit "false" speech apart from some "legally cognizable harm." *Id.* at 719. Moreover, prohibiting false speech based on content or viewpoint is *not* prohibition of legally cognizable harm. *See, e.g.*, *Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219, 1247 (10th Cir. 2021) (government may not make unprotected speech "a 'vehicle[] for content discrimination *unrelated* to [its] distinctly proscribable content."); quoting *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 383-84 (1992); *accord Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018); *People for the Ethical Treatment of Animals, Inc. v. N. Carolina Farm Bureau Fed'n, Inc.*, 9 F.4th 815, 824 (4th Cir. 2023). Here, "deceptive means" are prohibited only when used "*to discourage*" providing or obtaining reproductive services, or "*because*" they were provided or obtained. That is a quintessentially content-based limitation based on the "function or purpose" of the forbidden "deceptive" speech, signaling "that the Government seeks… to suppress unpopular ideas or information." *National Institute for Family Life Association v. Becerra*, 138 S. Ct. 2361, 2374 (2018).

### b. §425.31(h)

For similar reasons, subsection (h) is a facially content-based prohibition of "interfering with" the "operation of a reproductive health care facility," without a

force or physical obstruction predicate. Thus, only speech that disrupts operation of a reproductive health care facility is forbidden—an expressly content-based restriction. The provision's flaws are only exacerbated by inclusion of "activities *including, but not limited to*" merely "*attempting* to interfere with" the operations of a "reproductive health care facility." §425.31(h). The law clearly prohibits speech or expressive conduct motivated by a *particular viewpoint* (only a speaker aiming to disrupt operation of an abortion facility). That is not a legally cognizable harm under *Alvarez*.

For example, in *Kelly* the Tenth Circuit struck down a law against trespassing at "an animal facility" "with the intent to damage the enterprise at the animal facility" as viewpoint-discriminatory only "against those who intend to damage the enterprise of the facility," because it "penalizes only entry by deception with the intent to harm the facility." *Kelly*, 9 F.4th at 1237; *accord People for the Ethical Treatment of Animals*, 60 F.4th at 824 ("Assuming North Carolina can punish all unauthorized recording or capture of documents, it cannot punish [such conduct] done with the intent to . . . cause damage to the facility.") The same is true here. The County cannot punish expressive conduct involving alleged "deceptive means or otherwise" only when aimed at reproductive health facilities.

### c. §425.31(c)

The prohibition on "follow[ing] and harass[ing]" in §425.31(c) is facially content-based because it applies to speech and expressive conduct, and defines "harass" to include *any speech* that "alarm[s] or seriously annoy[s] another," based on listener reaction. A law is "not [] content neutral if it [is] concerned with … [l]isteners' reaction to speech." *McCullen*, 573 U.S. at 481 (cleaned up; second alteration added); *accord Johnson*, 491 U.S. at 414. In this context, a prohibition based on the notion that a "close approach by a [] sidewalk counselor . . . will often . . . [be] annoying or deeply upsetting [to] the woman. . . *is not an effect which occurs without reference to the content of the speech*." *Hill v. Colorado*, 530 U.S. 703, 747-48 (2000)(Scalia, J., dissenting) (emphasis in original); *see also Dobbs*, 142 S. Ct. at 2276 & n.65 (indicating *Hill* was erroneously decided and pinpoint-citing Justice Scalia's *Hill* dissent). As the Supreme Court has elsewhere observed, "the First and Fourteenth Amendments do not permit a State to make criminal the exercise [expression] simply because [it] may be 'annoying' to some people." *Coates v. Cincinnati*, 402 U.S. 611, 615 (1971).

While the District Court held that §425.31(c) does not regulate speech, SPA 15, the County conceded that this provision *applies to* "handing out leaflets" "if an individual ignored a leafletter, and the leafletter then continually moved in front of the individual trying to get them to take the leaflet." (ECF No. 81, Opp. Br. at 23 n.8.); *see also Griepp I*, 991 F.3d at 122 (leafletting after "implicit or explicit request

46

to be left alone" constitutes harassment under City Act). Westchester's follow-and-harass law applies to speech based on listener reaction. It is facially content-based.

### d. §425.31(a)

Chapter 425's restriction on physically obstructing a reproductive health care facility or a public parking lot serving it is facially content-based under the principles discussed above. It plainly regulates speech only where one's *purpose* is "to prevent [another] from obtaining" or providing "reproductive health care services." It thus fails *Reed*'s "function or purpose" test.

### e. §425.31(d)

This provision's restriction on "course of conduct" or "acts" that place another in reasonable fear of physical harm directly regulates speech based on listener reaction. *See, e.g.*, *Griepp I*, 991 F.3d at 115 (applying FACE to allegedly "threat[ening]" speech). While "true threats" may be regulated based on content, the Supreme Court recently clarified that to satisfy the First Amendment, the state must show that the speaker "is *aware* that others could regard his statements as threatening violence and delivers them anyway." *Counterman v. Colorado*, 143 S. Ct. 2106, 2118 (2023). But §425.31(d) requires only that one "knowingly" engage in the prohibited "conduct" or "acts," without proof of such awareness.

### 2. Even if facially content-neutral, Chapter 425 is content-based in effect.

Assuming, arguendo, that the challenged provisions are facially neutral, they nonetheless "cannot be justified without reference to the content of the regulated speech" and are plainly "adopted by the government because of disagreement with the message the speech conveys." *Reed*, 576 U.S. at 164 (cleaned up). Under the First Amendment "government may not . . . deny use [of a forum] to those wishing to express less favored or more controversial views." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). As the Supreme Court observed regarding the context here, if "speech outside [] abortion clinics caused offense or made listeners uncomfortable, such offense or discomfort would not give [government] a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481.

But that is exactly why the County adopted Chapter 425. *See supra*, Statement of Case. For example, the legislators' Vice Chairman stated: "I *disagree* with the fact that some stranger has the right to come up to your face and tell you … 'You shouldn't do this.'" A60. Another legislator stated that women should not have to face "the maximum fury . . . of the First Amendment." A61. Yet another described pro-life sidewalk expression as *inherently* "intimidating" *even if stated* "very politely." A62. Still another said women have the "the right to walk the entrance path . . . without *declined or refused counseling*," A79; and one more said: "I have to fear that somebody is actually going to pray with me from entering? . . . Absolutely not . . . *not this type of harassment, not any harassment*," A81. And so on.

48

Further, the County admitted that only *pro-abortion* "stakeholders" helped draft the bill. A80. The same legislator said the law passed only because "[w]e now have . . . a *pro-choice* super majority on the Board of Legislators," A80, which was "enraged" after the leak of the *Dobbs* draft opinion. A56.

The Ninth Circuit in *Wasden* found that similar circumstances revealed a content-based purpose underlying an Idaho law prohibiting entry into agricultural facilities by misrepresentation. *Id.* 878 F.3d 1184. The Court noted "the bill was drafted by the Idaho Dairymen's Association," whose representative told legislators "that one goal of the bill was 'to protect Idaho farmers from wrongful interference,'" and to "shield the agricultural industry from undercover investigators" who expose them "to the court of public opinion." *Id.*, 878 F.3d at 1192. The Court also noted lawmaker comments "demonstrating hostility" toward undercover investigators. *Id.* at 1193. In deeming the law content-based, the Court observed that "a vocal number of [legislator] supporters were less concerned with the protection of property than they were about protecting a target group from critical speech." *Id.* at 1188. That is this case.

This Court itself struck down Connecticut's "Hunter Harassment Act" (prohibiting "interfere[nce] with" or harassment of hunters") as content-based because "[a]lthough the Act would appear by its terms to be content-neutral, it

49

clearly is designed to protect hunters from conduct—whether verbal or otherwise—by those opposed to hunting." *Dorman*, 862 F.2d at 437 (cleaned up).

Further, the Supreme Court has recognized that councilmembers' statements indicating animus toward Jehovah Witnesses required invalidating a restriction on their speech "because of the City Council's dislike for or disagreement with . . . their views." *Niemotko v. State of Md.*, 390 U.S. 268, 328 (1951). That is certainly the case here.

### 3. Chapter 425 easily fails strict scrutiny.

The challenged provisions neither "further[] a compelling interest" nor are "narrowly tailored to that end," *Reed*, 576 U.S. at 171, and thus fail strict scrutiny. As noted, there is *never* a compelling interest in "prohibit[ing] the expression of an idea simply because [others] find[] the idea itself offensive or disagreeable." *Johnson*, 491 U.S. at 414.

Moreover, the County must show these provisions are "actually necessary" to solve "an actual problem." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011). But, as noted above (note 4, *supra*), the "precipitating event" for Chapter 425 was a "Red Rose Rescue" whose three participants were convicted of trespassing. A23-24; 162-163. New York Law already prohibits trespassing. N.Y. Penal Law § 140.10. *See Long Island Gynecological Servs., P.C. v. Murphy*, 298

A.D.2d 504, 74 N.Y.S. 2d 776 (2d Dep't 2002) (affirming injunction against trespassing at abortion clinic). Additionally, FACE and the State Act already prohibit physical obstruction, force, and threats of force. Indeed, the County argued below that Chapter 425 is "nearly identical" to these laws and that Plaintiffs thus allegedly lack standing to challenge only Chapter 425. *See* ECF No. 81, Br. at 3 n.1. The County thus implicitly admits Chapter 425 was not "actually necessary."

### B.    Chapter 425 would fail intermediate scrutiny.

Even if Chapter 425 were content-neutral, "[n]o form of speech is entitled to greater constitutional protection" than "handing out leaflets [on] a politically controversial viewpoint" in a public right-of-way. *McCullen*, 573 U.S. at 488. That's because "public streets and sidewalks" are the last remaining place where "a listener often encounters speech he might otherwise tune out," consistent with "the First Amendment's purpose to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *Id.* at 476.

Hence this Court recognizes that "government may not sanitize our public places of [pro-life] protest activity," as "[t]he framers of the Constitution opted for the disharmony of controversy because they believed that in that unrest lay the best prospect of an ordered society." *New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 208 (2d Cir. 2001) (cleaned up). Accordingly, this Court condemned characterization of pro-life speech outside abortion facilities as a "gauntlet"—the

very word used by a County legislator, A40-41—because such speech "play[s] an indispensable role" under the First Amendment. *Id.*

Even a content-neutral restriction "must not burden substantially more speech than is necessary" to further a legitimate interest, such that "a substantial portion of the burden on speech does not serve to advance [the County's] goals." *McCullen*, 573 U.S. at 486. The County must also "show[] that it seriously undertook to address the problem with less intrusive tools readily available to it," and "that it considered different methods that other jurisdictions have found effective." *Id.* at 494.

Chapter 425 resoundingly flunks these tests. County legislators expressly adopted Chapter 425 in order to curtail the *emotional impact* of Plaintiffs' speech on others—an inherently illegitimate government interest. *See supra*. Chapter 425 fails intermediate scrutiny for that reason alone.

Additionally, Chapter 425 is wholly untethered from its "precipitating event" of a lone *trespass into* a local abortion facility. "For a problem shown to arise only once . . . at one clinic, creating" *nine* different restrictions on pro-life activity outside of abortion facilities (seven of which readily limit Plaintiffs' pro-life speech) "is hardly a narrowly tailored solution." *Id.* at 493. The County also ignored the preferential option "of targeted injunctions as alternatives to broad, prophylactic measures," *id.* at 492, available under the FACE Act and N.Y. Penal Law § 140.10. It additionally "fail[ed] to look to less intrusive means of addressing its concerns"

like "generic criminal statutes forbidding . . . trespass." *Id.* "Nor has it shown that it considered different methods that other jurisdictions have found effective," *id.* at 494, but instead expressly sought to "be bold." A63.

The County asserted that Chapter 425 provides "clear legislative boundaries," A162, and gives the police "clear marching orders" and "clear lines of action." A59. But in *McCullen* the Court held that such enforcement aims fail intermediate scrutiny, because "the prime objective of the First amendment is not efficiency." *Id.* at 495.

Finally, the Third Circuit has recognized that "the layering of" only "*two* types of prophylactic measures" on pro-life sidewalk counseling "is substantially broader than necessary to achieve" government interests in clinic access and public order. *Brown v. City of Pittsburgh*, 586 F.3d 263, 279 (3d Cir. 2009) (invalidating Pittsburgh's "combination of" 15-foot buffer zone and eight-foot bubble zone).

As County legal counsel publicly advised regarding Chapter 425, even if individuals "stay[] outside the bubble [zone]," "a number of other provisions might kick in as well." A77. Like the two-tier restriction in *Brown*, the County's *seven*-tier restriction "appears to be unprecedented among regulatory schemes upheld by courts." *id.*, particularly where New York *already* has its own state version of FACE. *See McCullen*, 573 U.S. at 491. Given that "most people are frightened of violating criminal statutes," *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003), the combined

53

effect of Chapter 425's web of restrictions blatantly and intentionally chills Plaintiffs' protected expression.

## C. Chapter 425's challenged provisions are unconstitutionally vague.

A law violates the Due Process Clause "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). "[S]tandards of permissible statutory vagueness are strict in the area of free expression." *NAACP v. Button*, 371 U.S. 415, 432 (1963). "When the statute is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands *a greater degree of specificity*." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010) (cleaned up). "Vagueness may invalidate a criminal law … [if] (1) it fails to provide adequate notice that will enable ordinary people to understand what conduct it prohibits;" or (2) it "authorize[s] . . . arbitrary and discriminatory enforcement." *Morales*, 527 U.S. at 56. "When speech is involved," courts must "rigorous[ly]" enforce this test "to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012).

## 1. "Alarm," "annoy," and "implied request to cease" in §425.21(c).

Chapter 425.21(c) defines "Harass" to include a course or repeated conduct "that alarm[s] or seriously annoy[s]" another and "continue[s] after an . . . implied request to cease has been made." These conditions are facially vague.

As to "annoyance," a criminal prohibition on three or more people "conduct[ing] themselves in manner annoying to" passersby is unconstitutionally vague "because it subjects…the right of assembly to an unascertainable standard." *Coates*, 402 U.S. at 614. Specifically, no state court had "indicat[ed] upon whose sensitivity a violation [] depend[ed]," and "[c]onduct that annoys some people does not annoy others." *Id.*

Chapter 425's prohibition on "annoying" conduct or acts (including speech) fails to provide any ascertainable standard. It is no answer to say that Chapter 425 prohibits only "*serious*" annoyance. The Seventh Circuit recently invalidated part of a Chicago ordinance prohibiting conduct "likely to cause . . . *serious* inconvenience, *annoyance*, or *alarm*." *Bell v. Keating*, 697 F.3d 445, 450 (7th Cir. 2012). The Court held that seriously "annoying" conduct is "an inscrutable standard" as "reasonable people may disagree" about what is annoying. *Id.* at 462. The provision failed to provide sufficient notice of what was prohibited, *id.*, and "invite[d] unbridled discretion" in enforcement. *Id.* at 463. It is no surprise that numerous "courts have followed *Coates* in determining that statutes prohibiting annoying conduct are impermissibly vague," absent a limiting construction by state courts. *State v. Bryan*, 259 Kan. 143, 148 (1996) (citing cases); *see also Kramer v. Price*, 712 F.2d 174, 178 (5th Cir. 1983), *on reh'g*, 723 F.2d 1164 (5th Cir. 1984). *Cf. Gaughan v. City of Cleveland*, 212 F. App'x 405, 412 (6th Cir. 2007) (unpublished)

Chapter 425's scienter requirement does not eliminate the problem because provisions for which "'no standard of conduct is specified at all' . . . simply ha[ve] no core." *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.7 (1974) (quoting *Coates*, 402 U.S. at 614). Thus, "[s]pecifying an intent element does not save [a prohibition on 'annoying' conduct] because . . . the standard by which that conduct is to be assessed, remain[s] vague." *Kramer*, 712 F.2d at 178.

The same problem exists with the term "alarm." In *Bell* the Seventh Circuit held that "alarm" failed to provide adequate notice as to what the ordinance prohibited, "in practice le[ft] the definition of its term[] to law enforcement officers, and thereby invite[d] arbitrary . . . enforcement." *Bell*, 697 F.3d at 462, 463. The Fifth Circuit in *Kramer* held that "alarm," like "annoy," lacked any limiting construction by a state court and thus was "inherent[ly] vague[]." *Kramer*, 712 F.2s at 178. The same is true here, as the District Court erroneously failed to recognize.

Finally, predicating punishment on "continu[ing]" to "act" (including speak) "after an **implied request to cease**" is nothing short of *egregiously* vague. "Implied" conduct is inherently complex and can obviously mean different things to different people. Tellingly, County legal counsel publicly advised an inquiring legislator that the meaning of "implied request to cease" "will be up to a court to determine," based on "whatever evidence you present." A76. That admission was fatal. "The Constitution does not permit a legislature to set a net large enough to catch all

56

possible offenders, and leave it to courts to step in[] and say who should rightfully be [charged], and who should be set at large." *Morales*, 527 U.S. at 60 (cleaned up) Subjecting Plaintiffs to potential jailtime for ignoring an "implied" request to cease speaking or distributing pro-life leaflets is outrageous.

As Justice Scalia once remarked about the City Act (alleged source of the County version, *see* A165): "Is it harassment, one wonders, [] to ask a woman, quietly and politely, two times, whether she will take literature . . . ? Three times? Four times?" *McCullen*, 573 U.S. at 500 (Scalia, J., concurring).

## 2. "Interfere with" in §425.21(d).

Chapter 425's restrictions on conduct (including expression) that "interferes with another," §§425.31(e), (f), or with the "operation" of a "reproductive health care facility," §425.31(h), are likewise vague. Defining "interfere with" to mean "to stop… through deceptive means *or otherwise*" leaves that term with "no core," as both "deceptive means" and (worse) "or otherwise" provide no standard.

The meaning of "deceptive," without more, is inherently amorphous, as those with pro-abortion views often claim generic pro-life speech and sidewalk counseling are "deceptive," as noted above. The term thus effectively "furnishes a convenient tool for harsh and discriminatory enforcement . . . against particular groups deemed to merit [official] displeasure." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)

(requirement to provide "credible and reliable" "contains no standard" and "vests virtually complete discretion in the hands of the police").

This Court struck down Connecticut's Hunter Harassment Act on vagueness grounds because it "fail[ed] to define *the nature* of the interference it proscribes." *Dorman*, 862 F.2d at 435. All the more so here where "deceptive means or otherwise" could fit an endless variety of conduct or expression.

Moreover, the forbidden "interference" in Chapter 425 is not limited to "fixed times" or "fixed place[s]"—qualities that can ameliorate vagueness. *Grayned v. City of Rockford*, 408 U.S. 104, 111 (1972). The conduct prohibited in §§425.31(e), (f), and (h) can occur anywhere and at any time. *Accord Dorman*, 862 F.2d at 435-36 (prohibition on interfering with "acts in preparation" of hunting both overbroad and vague). The inherent vagueness of "interfere with" is only exacerbated by the related vagueness of undefined (and unlimited) prohibited "activities" that interfere with the operation of a reproductive health care facility in §425.31(h). These terms simply "contain no standard." *Kolender*, 461 U.S. at 358.

### 3. Other vague provisions.

Vagueness also fatally infects Chapter 425's prohibitions on "physically obstruct[ing] or block[ing]," as defined to include mere "attempt[s]" to "hinder" or "impede" access to a reproductive health facility. *See* §425.21(h). While the County has argued these provisions are "nearly identical" to those in FACE, courts have

58

recognized that FACE is not unduly vague because it "provides narrow definitions of these terms." *See United States v. Dinwiddie*, 76 F.3d 913, 924 (8th Cir. 1996); *see also United States v. Weslin*, 156 F.3d 292, 295 (2d Cir. 1998) (citing cases). Here, there is no requirement that one's "obstruct[ion]" *physically* render clinic access "*unreasonably* difficult or hazardous" or "impassable" as in FACE. 18 U.S.C. § 248(e)(4). Hinging "obstruction" on mere "hind[rance]" or "imped[ing]," or even *attempting* such, without more, are "vague contours" not further specified, yet the County expressly contemplated their application to pro-life speech. *See Thornhill v. State of Alabama*, 310 U.S. 88, 100-101 (1940) (statute prohibiting picketing "for the purpose of hindering, delaying, or interfering with or injuring" a business was vague); *see VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 188-89 (2d Cir. 2010) (law's "stated purpose" relevant to vagueness).

Despite the physical conduct predicate, the context of these provisions being applied to pro-life expression on public rights-of-way (even when they involve "de minimis" contact with others), renders undefined terms like "hinder" and "impede" insufficiently certain. In the First Amendment context, "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (cleaned up). That is exactly what has happened here, as the District Court, ignoring the record, wrongly failed to recognize.

### D.    Chapter 425 is overly broad.

First Amendment facial overbreadth arises when "a substantial number of [a law's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *U.S. v. Stevens*, 559 U.S. 460, 472 (2010). The District Court failed to recognize that *all* applications of the challenged provisions unconstitutionally target only pro-life speech at abortion facilities—just as the County intended.

Like vagueness, this rule "prevent[s] the chilling of protected expression." *Massachusetts v. Oakes*, 491 U.S. 576, 584 (1989). The test is whether "the ordinance sweeps [in] what may not be punished under the First [] Amendment[]." *Grayned*, 408 U.S. at 114-15.   Chapter 425 sweeps in a substantial amount of protected expression judged in relation to any conceivable legitimate sweep. *See, e.g., People v. Golb*, 23 N.Y.3d 455, 467 (2014) (prohibition on speech likely to "cause annoyance or alarm" both vague and overbroad). The law runs afoul of this Court's warning that government ought "not simply characterize [pro-life] protestor behavior with discussion of emotionally upset patients," as "bans based on such general characterizations are likely to sweep up legitimate behavior." *Operation Rescue*, 273 F.3d at 195 n. 4. All the more so given Chapter 425's vague, overbroad and sweeping definitions, which carry the law's "effect far beyond the proper scope of government regulation." *Dorman*, 862 F.2d at 436.

## III.    Plaintiffs Are Suffering Ongoing Irreparable Harm.

In First Amendment challenges, "the likelihood of success on the merits will often be the determinative factor." *New York Progress & Prot. v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Indeed, "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The District Court cursorily, and erroneously, ignored all record facts in this regard, as shown in the Statement of the Case and elsewhere above. The irreparable "harm" of "self-censorship" is already occurring. *Am. Booksellers Ass'n*, 484 U.S. at 393.

## IV.    The Balance of Harms and Public Interest Favor a Preliminary Injunction.

The "balance-of-equities and public-interest factors merge when the Government is the opposing party." *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021) (cleaned up). That is because "[s]ecuring First Amendment rights is in the public interest." *Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Further, "[t]he restrictions at issue here . . . strike at the very heart of the First Amendment's guarantee" of freedom of speech." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020). The equities and the public interest cry out for injunctive relief.

## CONCLUSION

This Court should reverse the District Court's denial of Plaintiffs' Motion for

Preliminary Injunction and direct that an injunction be issued.

Dated: August 4, 2023

Respectfully submitted,

 /s/ Christopher A. Ferrara
 Christopher A. Ferrara
 Special Counsel – Thomas More   Society
 148-29 Cross Island Parkway
 Whitestone, Queens, New York 11357
 Telephone: 718-357-1040
 cferrara@thomasmoresociety.org
 *Counsel for Plaintiffs*

 /s/ Michael G. McHale
 Michael G. McHale*
 Senior Counsel
 THOMAS MORE SOCIETY
 10506 Burt Circle, Ste. 110
 Omaha, NE 68114
 Telephone: 402-501-8586
 mmchale@thomasmoresociety.org
 *Counsel for Plaintiffs*    (*pro hac vice)

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a) and Local Rule 32.1(a)(4) because, excluding the parts of the brief exempted by Fed. R. App. P. 32, this brief contains 13,706 words.

2. This document complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5)-(7) because this document has been prepared using Microsoft Word in 14-point Times New Roman font.

/s/ Christopher A. Ferrara
Christopher A. Ferrara

**i**

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

|  | **Page** |
|---|---|
| Opinion and Order, dated April 24, 2023 .................. | SPA-1 |

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OKSANA HULINSKY, et al.,

                                   Plaintiffs,

                -against-

COUNTY OF WESTCHESTER,

                                   Defendant.

---

**OPINION AND ORDER**

22-CV-06950 (PMH)

PHILIP M. HALPERN, United States District Judge:

Oksana Hulinsky ("Hulinsky") and Regina Molinelli ("Molinelli") commenced this action against the County of Westchester ("County" or "Defendant") on August 15, 2022. (Doc. 1). Hulinsky and Molinelli added White Plains 40 Days for Life ("40 Days White Plains") and 40 Days for Life ("40 Days National" and together, "Plaintiffs") as Plaintiffs in this action on December 15, 2022 in a Second Amended Complaint. (Doc. 50; Doc. 51; Doc. 52, "SAC"). Plaintiffs press three claims for relief under 42 U.S.C. § 1983 alleging that Chapter 425 of the Laws of Westchester County violated their First and Fourteenth Amendment rights. Specifically, Plaintiffs bring claims under 42 U.S.C. § 1983 alleging (1) Defendant violated their First Amendment rights to free speech and assembly (Count I); (2) Chapter 425 is void for vagueness pursuant to the Due Process Clause of the Fourteenth Amendment (Count II); (3) Defendant violated their First Amendment right to free exercise of religion (Count III). (SAC ¶¶ 157-206).

Pending before the Court is Plaintiffs' motion for a preliminary injunction under Fed. R. Civ. P. 65(a) seeking to restrain and enjoin Defendant from "enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with" Sections 425.31(a), (c), (d), (e), (f), and (h) of Westchester County Local Law 9-2022, and the incorporated definitions of their operative terms. (Doc. 80). Plaintiffs moved on March 1, 2023 in accordance with the briefing

1

SPA-2

schedule set by the Court. (Doc. 80). Plaintiffs filed a memorandum of law in support of their preliminary injunction motion (Doc. 80-1, "Pl. Br."), Defendant filed a memorandum of law in opposition (Doc. 81, "Def. Br."), and the motion was fully submitted upon the filing of Plaintiffs' reply brief (Doc. 88, "Reply").

For the reasons set forth below, Plaintiffs' motion for preliminary injunction is DENIED.

## **<u>BACKGROUND</u>**

On June 27, 2022, Defendant enacted Local Law 9-2022, "adding Chapter 425 to the Laws of Westchester County to ensure safe access to reproductive health care facilities." (Doc. 82-1, "Chapter 425"). The enactment of Chapter 425 was a response to escalating conduct occurring at reproductive healthcare clinics in Westchester County, for instance, blocking facility entrances; pushing past staff; and throwing objects at patients. (SAC, Ex. I at 12-20, Ex. N at 25-29). The specific precipitating event for the enactment of Chapter 425 was a November 21, 2021 sit-in demonstration organized by Red Rose Rescue, an anti-abortion activist group, at the All Women's Medical Office Based Surgery, PLLC in White Plains, New York. (SAC, Ex. N at 24-27). Over twenty protestors from Red Rose Rescue pushed past staff to get inside the facility, blocked access to the doorways, and occupied the waiting room for several hours. (*Id.*). During the sit-in demonstration, Red Rose Rescue protestors photographed patients, threw roses at patients and staff, and shouted condemnations about "murdering babies." (*Id.*). As a result of the sit-in, patients and staff needed to be moved and the facility's operations were temporarily suspended. (*Id.*).

SPA-3

Plaintiffs challenge six of the nine provisions of Chapter 425: Sections 425.31(a), (c), (d), (e), (f), and (h). (Doc. 80). Sections 425.31(a), (e), and (f) prohibit various forms of "physically obstructing or blocking" amount to interfering with and/or intimidating persons obtaining access at a reproductive health care facility.[1] Section 425.31(c) prohibits "knowingly following and harassing" another person within 25 feet of a reproductive health care facility. Section 425.31(d) prohibits "knowingly engag[ing] in a course of conduct" within 25 feet of a reproductive health care facility that places another person in a "reasonable fear of physical harm." Section 425.31(h) prohibits "knowingly interfer[ing] with the operation of a reproductive health care facility" by either interfering with "(i) medical procedures or treatments at the facility; (ii) the delivery of goods or services to the facility; or (iii) persons inside the facility."

Plaintiffs engage in a practice they refer to as "sidewalk counseling" wherein they will "peacefully approach[] expectant mothers and others entering or leaving the facilities to engage in short, quiet conversations at a normal conversational distance about alternatives to abortion, including offering literature on abortion alternatives, the physical and psychological risks of abortion, and on fetal development." (SAC ¶¶ 26-47). Specifically, Plaintiffs have engaged and intend on engaging in sidewalk counseling at the Planned Parenthood facility in Newburgh, New York. (SAC ¶ 9). Plaintiffs engage in sidewalk counseling on the public portion of the sidewalk

---

[1] Section 425.31 (a) makes it unlawful to "knowingly physically obstruct or block another person from entering into or exiting from the premises of a reproductive health care facility or a public parking lot serving a reproductive health care facility, in order to prevent that person from obtaining or rendering, or assisting in obtaining or rendering, medical treatment or reproductive health care services. Section 425.31(e) makes it unlawful to, "by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate, or interfere with, another person in order to discourage such other person or any other person or persons from obtaining or providing, or assisting in obtaining or providing, reproductive health care services. Section 425.31(f) makes it unlawful to, "by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate or interfere with, another person because such person was or is obtaining or providing, or was or is assisting in obtaining or providing, reproductive health care services.

near the driveway entrance outside of reproductive health care facilities. (SAC ¶ 48.). Plaintiffs allege that their sidewalk counseling "is not only adjacent to the facility's driveway on the public sidewalk, but also less than 100 feet from the facility's front entrance" and "also within the 25-foot 'no follow-and-harass' zone." (*Id.*). Plaintiffs allege that Chapter 425 have made their sidewalk counseling "impossible without the grave risk of criminal and civil liability" and as a result they have suspended sidewalk counseling "pending judicial intervention." (SAC ¶ 49).

## STANDARD OF REVIEW

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). "When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction."[2] *Keil v. City of New York*, No. 21-3043, 2022 WL 619694, at *1 (2d Cir. Mar. 3, 2022).

"The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). "A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act."[3] *Id.* "This distinction is important because [the Second Circuit has] held that a mandatory injunction should issue 'only upon a clear showing that the moving

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

[3] "The 'status quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 274 (S.D.N.Y. 2019). "This status can differ from the situation existing at the moment the lawsuit is filed." *Id.* "Here, the status quo ante is the state of affairs immediately prior" to the enactment of Chapter 425 on June 27, 2022. *Yang v. Kellner*, 458 F. Supp. 3d 199, 218 (S.D.N.Y. 2020).

party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Id*. "In other words, the movant is held to heightened standard and must show a 'clear' or 'substantial' likelihood of success on the merits, and must make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Isaac v. Schiff*, No. 21-CV-11078, 2022 WL 3290679, at *1 (S.D.N.Y. Aug. 11, 2022) (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)); *see also JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) ("A heightened standard is imposed, in part, because injunctions of those sorts tend to be particularly burdensome to the defendants subject to them."). "The 'clear' or 'substantial' showing requirement—the variation in language does not reflect a variation in meaning—thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." *Tom Doherty Assocs.*, 60 F.3d at 34.

Here, Plaintiffs seek a preliminary injunction restraining and enjoining Defendant "from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with" Sections 425.31(a), (c), (d), (e), (f), and (h) of Chapter 425. (Doc. 80 at 1-2). An injunction that enjoins a defendant from enforcing a regulation "clearly prohibits, rather than compels, government action by enjoining the future enforcement." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) (holding that the district court did not err when it applied the standard for prohibitory injunctions to a plaintiff's preliminary injunction request on his First Amendment claims). Plaintiffs do not seek to compel Defendant "to perform any specific tasks" but rather seek to prohibit Defendant from enforcing certain provisions of Chapter 425. *Id.* Accordingly, the Court applies the standard for prohibitory injunctions, and not the heightened standard for mandatory injunctions, in reviewing Plaintiffs' motion.

5

## ANALYSIS

I.  Standing

Before considering any of elements Plaintiffs are required to demonstrate for a preliminary injunction, the Court must first examine standing. A party invoking federal court jurisdiction must have standing to sue "for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). "Standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "A court may only provide proposed injunctive relief, for instance, if a plaintiff can demonstrate his entitlement to that specific relief." *Doe v. Columbia Univ.*, No. 20-CV-06770, 2022 WL 4537851, at *16 (S.D.N.Y. Sept. 28, 2022). At the preliminary injunction stage, "a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021). "To establish standing for a preliminary injunction, a plaintiff cannot rest on mere allegations but must set forth by affidavit or other evidence specific facts that establish the three familiar elements of standing: injury in fact, causation, and redressability." *Id.*

Defendant presses two arguments related to standing: (1) 40 Days National and 40 Days White Plains lack organizational and associational standing; and (2) Plaintiffs lack pre-enforcement standing because their intended course of conduct is not proscribed by the challenged provisions of Chapter 425 and Plaintiffs do not face a credible threat of prosecution. (Def. Br. at 3-7). The Court addresses each of these arguments in turn.

6

SPA-7

A.  Organizational and Associational Standing

Defendant argues that Plaintiffs 40 Days National and 40 Days White Plains lack organizational and associational standing. It has long been the law in the Second Circuit, with respect to associational standing, that "an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Each of Plaintiffs three claims for relief are brought under 42 U.S.C. § 1983 and as such, Plaintiffs 40 Days National and 40 Days White Plains "cannot bring this action as the representative of its members." *Id.* Indeed Plaintiffs concede that Second Circuit law precludes "associational/representational standing in §1983 claims." (Reply at 5, n.5). Those Plaintiffs may nevertheless bring claims on their own behalf, so long as they "can independently satisfy the requirements of Article III standing." *Id.* Pursuant to the organizational standing doctrine, "an organization can satisfy the injury prong if it shows that the challenged action did not merely harm its abstract social interests but perceptibly impaired its activities." *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 173 (2d Cir. 2021). "Where, as here, an organization is not directly regulated by a challenged law or regulation, it cannot establish perceptible impairment absent an involuntary material burden on its established core activities." *Id.* In such a circumstance, "the challenged law must impose a cost (e.g., in time, money, or danger) that adversely affects one of the activities the organization regularly conducted (prior to the challenged act) in pursuit of its organizational mission." *Id.* at 173-74.

Plaintiffs allege that 40 Days National has no members, and that "all Local Vigils and associated activities are independent from [40 Days National], which neither directs nor leads any Local Vigils." (SAC ¶ 10). Plaintiffs nevertheless argue that 40 Days National has organizational standing because it "has been forced to divert resources in order to contest the challenged

SPA-8

provisions of Chapter 425." (Reply at 5). However, Plaintiffs have failed to put forward any specific facts showing that the enactment of Chapter 425 has or will in any way "perceptibly impair its activities." *Russell-Tucker*, 8 F.4th at 173-74. Plaintiffs' allegations instead make clear that 40 Days National has no members and is not involved in organizing the Local Vigils that occur in Westchester County, and therefore 40 Days National is not involved in the sidewalk counseling at issue in this litigation. (SAC ¶ 10). Plaintiffs have failed to meet their burden in demonstrating that Plaintiff 40 Days National has suffered an injury-in-fact. Accordingly, the Court holds that Plaintiff 40 Days National lacks standing.

Plaintiffs argue that Plaintiff 40 Days White Plains has organizational standing because Chapter 425 has "restrict[ed] 40 Days White Plains' ability to engage in sidewalk counseling and leafletting—activities core to its mission." (Reply at 4). Plaintiffs have failed to put forward any specific facts that Chapter 425 has actually "perceptively impaired [40 Days White Plains'] activities." *Russell-Tucker*, 8 F.4th at 173-74. 40 Days White Plains continues to organize and promote vigils, and Plaintiffs allege that the organization planned another 40-day vigil that is set to commence on February 22, 2023. (SAC ¶¶ 96, 101). Plaintiffs have failed to put forward any facts showing that the enactment of Chapter 425 has prevented or impaired Plaintiff 40 Days White Plains from planning or promoting any vigils. Instead, Plaintiffs argue that Chapter 425 has reduced attendance at these vigils by "approximately 50%." (Reply at 4). This argument misses the mark. The essence of a chilled speech injury "is an assertion that one has elected to refrain from speaking, rather than risk prosecution." *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 324 (S.D.N.Y. 2018). Plaintiff 40 Days White Plains has not put forward any facts indicating that it had canceled any events or eliminated any of its activities in any way in response to the enactment of Chapter 425. In other words, there is nothing in the record showing that

Plaintiff 40 Days White Plains' speech has been chilled in any way. The fact that other individuals have chosen not to attend vigils organized by 40 Days White Plains is not relevant to the organizational standing inquiry because the organization "does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." *Nnebe*, 644 F.3d at 156. Plaintiffs have failed to meet their burden in demonstrating that Plaintiff 40 Days White Plains has suffered an injury-in-fact. Accordingly, the Court holds that Plaintiff 40 Days White Plains lacks standing.

## B. Pre-Enforcement Standing

The Court next turns to evaluating the standing of Plaintiffs Hulinsky and Molinelli ("Individual Plaintiffs") to bring pre-enforcement claims. To establish injury-in-fact in the pre-enforcement context, a plaintiff may show that threatened enforcement is "sufficiently imminent," by demonstrating that: (1) she has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *see also Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) (same).

### 1. Intention to Engage in Proscribed Conduct

The Second Circuit, in *Picard*, explained that "courts are to consider whether the plaintiff's intended conduct is arguably proscribed by the challenged statute, not whether the intended conduct is in fact proscribed." 42 F.4th at 98. "If a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation, the plaintiff may legitimately fear that it will face enforcement of the statute, then the plaintiff has standing to challenge the statute." *Id.* at 101. The relevant inquiry is whether "plaintiff's proffered interpretation of the statute – which leads them to fear its enforcement against their intended conduct – is arguable or reasonable." *Id.*

Plaintiffs seek a preliminary injunction enjoining the County from enforcing six provisions of Chapter 425, "§ 425.31(a), (c), (d), (e), (f), and (h)." (Doc. 80 at 1-2). These provisions prohibit different kinds of conduct described *supra*, and as such, Plaintiffs must demonstrate that they are entitled to injunctive relief as to each of the provisions at issue. *See Doe*, 2022 WL 4537851, at *16. Plaintiffs allege that they have engaged, and wish to continue to engage, in a course of conduct referred to as "sidewalk counseling," wherein they "approach expectant mothers and others going to or leaving the facility by car or on foot in order to engage in a short, quiet conversation, at a normal conversational distance" and offer literature relating to "alternatives to abortion." (SAC ¶¶ 26-49). Plaintiffs argue, relying on *Picard*, that they have suffered an injury-in-fact because "it is at least plausible that Plaintiffs' advocacy violates the . . . restrictions" contained in the challenged provisions of Chapter 425. (Pl. Br. at 10). Defendant argues that sidewalk counseling is not proscribed by Chapter 425. (Def. Br. at 3-4).

The plaintiff in *Picard* brought suit challenging a New York statute which prohibited the displaying of "placards or signs containing written or printed matter, concerning the conduct of a trial being held in such courthouse" within 200 feet of any courthouse. 42 F.4th at 95. The plaintiff in *Picard* argued that his conduct, passing out pamphlets advocating for jury nullification near a courthouse, was arguably proscribed by the statute. *Id.* Plaintiffs' reliance on *Picard* is misplaced because the instant case is distinguishable. Plaintiffs do not assert that they intend on physically obstructing or blocking anyone from entering a reproductive healthcare facility in violation of Sections 425.31(a), (e), and (f) or engaging in a course of conduct that would place another in reasonable fear of physical harm in violation of Section 425.31(d). Plaintiffs also do not assert that they intend on interfering with the operations of any reproductive health care facilities in violation of Section 425.31(h), either by interfering with the medical procedures being conducted within

those facilities, the delivery of goods to those facilities, or by interfering with persons inside those facilities. Plaintiffs allege that the Individual Plaintiffs only intend to "peacefully approach expectant mothers and others entering or leaving the facilities to engage in short, quiet conversations at a normal conversational distance about alternatives to abortion, including offering literature on abortion alternatives." (Pl. Br. at 2). Plaintiffs expressly distinguish the Individual Plaintiffs' intended course of conduct from the sit-in organized by the "Red Rose Rescue" activist group on November 27, 2021. (Pl. Br. at 3). Members of the Red Rose Rescue group forced their way into a reproductive health care facility in order to stage a sit-in demonstration, blocked access to the facility's entrance, and physically occupied the facility's waiting room for a number of hours, refusing to leave in an attempt to prevent individuals from obtaining reproductive health care services. (SAC, Ex. M at 14).

Peaceful conversations occurring "at a normal conversational distance" outside of reproductive health care facilities do not involve physical obstruction, threats of physical harm, or interference with the operations of the health care facility itself. Plaintiffs themselves do not put forward any evidence showing that the Individual Plaintiffs' intended course of conduct–sidewalk counseling regarding alternatives to abortion–would implicate the type of conduct proscribed by Sections 425.31(a), (e), (d), (f), or (h). It is neither arguable nor reasonable to conclude that the Individual Plaintiffs' course of conduct is proscribed by Sections 425.31(a), (e), (d), (f), or (h). With respect to Section 425.31(c)'s prohibition (knowingly following or harassing another person within 25 feet of a facility), however, Plaintiffs argue that it could proscribe walking "behind or alongside the intended recipient of their message, advocating for life despite an express or implied request to stop speaking." (Pl. Br. at 7). The Individual Plaintiffs' sidewalk counseling could arguably be characterized as harassing conduct violative of Section 425.31(c).

**SPA-12**

The Court finds that the Individual Plaintiffs' intended conduct is not arguably proscribed by Sections 425.31(a), (e), (d), (f), or (h) but that their intended conduct is arguably proscribed by Section 425.31(c). Accordingly, Plaintiffs have failed to establish standing for the Individual Plaintiffs to pursue injunctive relief as to Sections 425.31(a), (e), (d), (f), and (h). *Picard*, 42 F.4th at 100 (requiring plaintiff to show that their intended course of conduct is "arguably proscribed" by the challenged statute). As such, the Individual Plaintiffs are unable to demonstrate a likelihood of success on the merits with respect to those provisions. *See Miller v. Smith*, No. 21-CV-02949, 2021 WL 4222981, at *7 (E.D.N.Y. Sept. 16, 2021) (a plaintiff failing to establish "requisite standing to bring her claims of constitutional violations" was in turn "unable to demonstrate a likelihood of success on any of those claims").

### 2.   Credible Threat of Future Prosecution

The standing inquiry, with respect to Section 425.31(c), does not end there. The Court must also determine whether Plaintiffs face a "credible threat of future prosecution" by engaging in sidewalk counseling. *Picard*, 42 F.4th at 100. "The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue, and will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Picard*, 42 F.4th at 98.

Chapter 425 was recently enacted by Westchester County on June 27, 2022, and as such, Plaintiffs have had little opportunity to test whether, and the extent to which, it will be enforced. (SAC ¶ 50). Westchester County "has not foresworn enforcement of [Chapter 425], and courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Silva v. Farrish*, 47 F.4th 78, 88 (2d Cir. 2022); *see also Frey v.*

12

*Nigrelli*, No. 21-CV-05334, 2023 WL 2473375, at *8 (S.D.N.Y. Mar. 13, 2023) ("given the recency of the law and lack of any indication that it will be repealed, the Court is and should be willing to presume that the government will enforce it"); *Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski*, No. 21-CV-07667, 2023 WL 2185901, at *8 (S.D.N.Y. Feb. 23, 2023) (finding a credible threat of prosecution where the plaintiff "has had little opportunity to test the waters"). Furthermore, the New York Attorney General brought suit against thirteen individuals who protested outside Choices Women's Medical Center, a reproductive health clinic in Queens, New York under analogous federal and state statutes. *See Griepp II*, 11 F.4th at 175. Section 425.81(a) permits the New York Attorney General to "seek other available criminal penalties or civil remedies" under the statute, like with the protestors in *Griepp*, the Individual Plaintiffs thus face a real possibility of a civil enforcement action against them should they continue on their intended course of conduct. The Individual Plaintiffs, in light of these circumstances, face a credible threat of prosecution by engaging in sidewalk counseling.

The Individual Plaintiffs have, with respect to Sections 425.31(c), established an injury-in-fact because they have demonstrated an intention to engage in a course of conduct implicated by the First Amendment but arguably proscribed by a statute, and because there exists a credible threat of prosecution. Accordingly, the Court holds that the Individual Plaintiffs have standing to challenge Section 425.31(c).

II. <u>Likelihood of Success on the Merits</u>

"Consideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). "On a motion for preliminary injunction, the movants must show that they are likely to prevail on their claims that

**SPA-14**

the challenged government action is unlawful." *We The Patriots USA*, 17 F.4th at 280. As previously stated, the Individual Plaintiffs press three claims for relief: (1) Chapter 425 violates the First Amendment's Free Speech Clause both because it is an impermissible content-based restriction and because it is impermissibly overbroad (Count I); (2) Chapter 425 violates the Fourteenth Amendment's Due Process Clause because it is impermissibly vague (Count II); (3) Chapter 425 violates the First Amendment's Free Exercise Clause because impermissibly targets Plaintiff's sincerely held religious beliefs (Count III). (SAC ¶¶ 157-206). Plaintiffs, in their preliminary injunction motion, do not mention their third claim for relief under the First Amendment's Free Exercise Clause, and as such they have failed to establish a likelihood of success on the merits for that claim. The Court will now turn to Plaintiffs' likelihood of success on the merits for their first and second claims for relief.

A.  <u>First Claim for Relief: Violation of the First Amendment's Free Speech Clause</u>

Plaintiffs press two arguments in support of their first claim for relief: first, that Chapter 425 is an impermissibly content-based restriction on their speech and second, that Chapter 425 is impermissibly overbroad. The Court addresses each of these arguments seriatim.

1.  Content Neutrality

Plaintiffs argue that Chapter 425 "is a content-based restriction of speech and fails strict scrutiny." (Pl. Br. at 18). The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const. Amend. I. A government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be

SPA-15

justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

This Court recently held that Section 425.31(i)—which makes it unlawful to "knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing any material, item, or object to, displaying a sign to, or engaging in oral protest, education, or counseling"—is a content-neutral restriction that is "narrowly tailored to advance Westchester County's significant governmental interest in protecting individuals attempting to enter health care facilities from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." *Vitagliano v. Cnty. of Westchester*, No. 22-CV-09370, 2023 WL 24246, at *3 (S.D.N.Y. Jan. 3, 2023). The same holds true for Section 425.31(c).[4] Like the Colorado statute upheld by the Supreme Court in *Hill v. Colorado*, Section 425.31(c) "is not limited to those who oppose abortion" but instead "all demonstrators whether or not the demonstration concerns abortion, and whether they oppose or support the woman who has made an abortion decision." 530 U.S. 703, 725 (2000). An individual violates Section 425.31(c) when they knowingly follow and harass another within 25 feet of a reproductive health care facility, this is true regardless of what that individual is saying or the content of the leaflet that they may be attempting to hand out to a passerby. Put simply, Section 425.31(c) regulates the location of conduct, not speech. "That is the level of neutrality that the Constitution demands." *Id.*

Plaintiffs argue, relying on comments made in a press release by the County's Legislative Committee Chair, that Chapter 425 is an impermissible content-based restriction enacted because

---

[4] Indeed, Plaintiffs do not even attempt to distinguish Section 425.31(i) or this Court's decision in *Vitagliano*. (*See generally*, Pl. Br.).

SPA-16

of Defendant's disagreement with pro-life messages. (Pl. Br. at 21-22). The Supreme Court recently cautioned that "inquiries into legislative motives are a hazardous matter" and that "even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole . . . what motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022). The comment made by the County's Legislative Committee Chair and relied on by Plaintiffs in pressing their argument was not made during a legislative session and did not concern or even refer to Chapter 425. (SAC, Ex. L). Rather, like in *Dobbs*, the text of the statute itself shows "ample evidence that the passage of [Chapter 425] was instead spurred by a sincere belief" regarding the need to provide safe access to reproductive healthcare facilities by staff and patients. 142 S. Ct. at 2256. The preamble of Chapter 425, Section 425.11, provides that the statue was enacted in order to "protect persons seeking access to reproductive health care facilities and services both inside facilities as well as outside said facilities." (Doc. 82-1 at 3-4). The text of the statute itself makes clear that Chapter 425 was enacted not out of disagreement with pro-life messaging, but rather as a desire to protect safe access to reproductive health care facilities. "Persons who are attempting to enter health care facilities—for any purpose—are often in particularly vulnerable physical and emotional conditions." *Hill*, 530 U.S. at 729. Defendant, in enacting Chapter 425, was properly responding "its substantial and legitimate interest in protecting these persons from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." *Id.*

Accordingly, Plaintiffs have not shown a likelihood of success on the merits with respect to their challenge that Section 425.31(c) is an improper content-based restriction.

2.  Overbreadth

Plaintiffs argue that Section 425.31(c) is impermissibly overbroad because it "prohibits continued speech after an implied request to cease." (Pl. Br. at 17). In the First Amendment context, "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). The Supreme Court, in *Hill*, held that the Colorado statute at issue was not overbroad because it "merely regulates the places where communications may occur." 530 U.S. at 731. The same is true here, Section 425.31(c) merely regulates conduct–namely, following and harassing another–within 25 feet of a reproductive health care facility. As in *Hill*, Plaintiffs have not put forward any evidence that would allow the Court to conclude that the impact of Chapter 425 "on the conduct of other speakers will differ from its impact on their own sidewalk counseling." *Id.* Like Plaintiffs' own activities, the conduct of other protestors at all reproductive health care facilities in Westchester County "are encompassed within the statute's legitimate sweep." *Id.*

Accordingly, Plaintiffs have failed to establish a likelihood of success on the merits with respect to their first claim for relief under the First Amendment's Free Speech Clause.

B.  Second Claim for Relief: Violation of the Fourteenth Amendment's
   Due Process Clause

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Where, as here, the statutes at issue are "capable of reaching expression sheltered by the First Amendment, the vagueness doctrine would demand a greater degree of specificity than in other contexts." *Melendez v. City of New York*, 16

F.4th 992, 1015 (2d Cir. 2021). "There are two types of vagueness challenges: as-applied challenges, which concern the clarity of the law as applied to a plaintiff's conduct, and facial challenges, in which the court considers a statute's application to hypothetical circumstances." *Kosinski*, 2023 WL 2185901, at *17. While Plaintiffs claim to assert both a facial and an as-applied vagueness challenge to Section 425.31(c), their as-applied challenge merely states in a conclusory fashion that the statute is "standardless" and "has no core meaning." (Pl. Br. at 13-14). "A plaintiff making an as-applied challenge must show that the statute in question provided insufficient notice that his or her behavior at issue was prohibited." *Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010). Plaintiffs fail to make the requisite showing that Section 425.31(c) did not provide them with sufficient notice that their sidewalk counseling was prohibited. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 n. 4 (2d Cir.2000) (holding that a "single, conclusory, one-sentence argument" was insufficient to adequately raise an issue). Accordingly, Plaintiffs have failed to demonstrate a likelihood of success on the merits with respect to their as-applied vagueness challenge. The Court turns next to Plaintiffs' facial vagueness challenge.

A vagueness inquiry "should begin with the text of the provision, considered in context, and, where appropriate, with the benefit of canons of statutory construction and legislative history." *Rothenberg v. Daus*, 481 F. App'x 667, 671 (2d Cir. 2012). Section 425.31(c) makes it unlawful to "knowingly follow and harass another person within 25 feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public." Section 425.21(c) defines "harass" to mean "to engage in a course of conduct or repeatedly commit conduct or acts that alarm or seriously annoy another person and which serve no legitimate purpose." The definition further provides that "for the purposes of the definition, conduct or acts that serve no legitimate purpose

**SPA-19**

include, but are not limited to, conduct or acts that continue after an express or implied request to cease has been made." *Id.*

Defendant modeled Chapter 425 after the City Act, N.Y.C. Admin. Code § 10-1001 *et seq.*, and the follow-and-harass prohibition in Section 425.31(c) is nearly identical to Section 8–803(a)(3) of the City Act. (SAC, Ex. I at 12-20). The Supreme Court struck down a Massachusetts regulation on sidewalk counseling in *McCullen v. Coakley* but noted in that opinion that the follow-and-harass provision of the City Act "could in principle constitute a permissible alternative" in New York. 573 U.S. 464, 491 n.8 (2014). This does not end the inquiry, however, because the *McCullen* court went on to note that it did not give its "approval" to the City Act, and that, "whether such a law would pass constitutional muster would depend on a number of other factors, such as whether the term 'harassment' had been authoritatively construed to avoid vagueness and overbreadth problems." *Id.* Chapter 425's legislative history makes clear that the definition of "harass" is "derived from N.Y. Penal Law § 240.26(3), and related interpretations in the case law." (SAC, Ex. I at 17).

Plaintiffs press two vagueness arguments as to Section 425.31(c). First, that the "serves no legitimate purpose" clause in the definition is vague because it includes a potential violator's continuing "conduct or acts" following another person's "implied request to cease" the conduct. (Pl. Br. at 12). Second, that the definition of "harass" comprises an "unascertainable standard" because it targets acts that "alarm or seriously annoy" others. (Pl. Br. at 13). The Court addresses each of these two arguments in turn.

Plaintiffs contend that because Chapter 425 does not define the term "implied request to cease" the term is rendered "standardless." (Pl. Br. at 13). The Court disagrees. New York Penal Law § 240.26 and its associated case law provide guidance on what constitutes an "implied request

19

to cease." The defendant in *People v. Richards*, a balloon-seller convicted of harassment under Penal Law § 425.26, "repeatedly blocked the path of a pedestrian, who was attempting to travel unmolested down the street with her two small children." 22 Misc. 3d 798, 807 (Crim. Ct. 2008). The court found that while the balloon-seller's "initial offer to engage in a commercial transaction may have served a legitimate purpose, his continuing to aggressively hawk his wares to an unwilling customer, did not." *Id. Richards* illustrates an implied request to cease, namely attempting to evade unwanted communication by traveling down the street. *Id.* Further, any vagueness concerns with respect to Section 425.31(c) is "ameliorated by [the statute's] scienter requirement." *Hill*, 530 U.S. at 732. The statute only applies to a person who "knowingly" follows and harasses another within 25 feet of a reproductive health care facility. Section 425.31(c). An offender must continue a course of conduct after learning that a request–either express or implied– to cease that course of conduct has been made.

Next, Plaintiffs contend that the term "alarm or seriously annoy" is vague because it is an "unascertainable standard." (Pl. Br. at 13). However, conduct that causes alarm or serious annoyance is already prohibited under N.Y. Penal Law § 240.26(3) and therefore not vague. *See Jaegly v. Couch*, 439 F.3d 149, 152-53 (2d Cir. 2006) (quoting N.Y. Penal Law § 240.26(3) and upholding probable cause on an arrest for violation of this subsection). With respect to ascertainability, it is well-settled that New York's harassment statutes assume a reasonable person standard. *See People v. Lagano*, 39 N.Y.3d 108, 112 (2022) (construing Penal Law § 240.26(1) and explaining that a "'true threat' is one that a reasonable person in the victim's position would consider to be an unequivocal statement of intended physical harm").

Plaintiffs have not met their burden in showing that the terms "implied request to cease" or "alarm or seriously annoy" render Section 425.31(c) vague. Accordingly, Plaintiffs have failed

20

to demonstrate a likelihood of success on the merits with respect to their second claim for relief under the Fourteenth Amendment's Due Process Clause.

### III. Irreparable Harm

"The burden of proof and persuasion rests squarely on the party moving for a preliminary injunction to show that irreparable harm is likely." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 34 (2d Cir. 2015). To satisfy their burden to show irreparable harm, "plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *JTH Tax*, 62 F.4th at 672 (affirming the district court's holding that plaintiff failed to show irreparable harm where plaintiff "presented no evidence that [defendant's] continuing operations would irreparably harm its goodwill, client relationships, or ability to compete in the geographic area").

Plaintiffs argue, with respect to irreparable harm, that Chapter 425 has "effectively stifled Plaintiffs' pro-life sidewalk advocacy at County abortion facilities." (Pl. Br. at 24). Plaintiffs have failed to put forward any specific facts to support this contention. To the contrary, there is ample evidence that anti-abortion protestors have continued to engage in sidewalk counseling, protesting, and literature distribution outside of reproductive health care facilities in Westchester County. (*See* Doc. 82; Doc. 83; Doc. 84; Doc. 85). Defendant, in opposition to Plaintiff's preliminary injunction motion, has submitted photographs and videos documenting anti-abortion protestors and counselors carrying out these activities after the enactment of Chapter 425 without incident. (*Id.*). Plaintiffs' contention that Chapter 425 has "stifled" their pro-life advocacy is not supported by the record, and Plaintiffs have failed to rebut the evidence submitted by Defendant or otherwise put

forward any specific facts showing that they will imminently suffer an injury "if the court waits until the end of trial to resolve the harm." *JTH Tax*, 62 F.4th at 672.

Plaintiff further argues that they have satisfied the irreparable harm requirement because "'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (Pl. Br. at 24 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This argument fails because, as discussed above, Section 425.31(c) is a content-neutral regulation narrowly tailored to Westchester County's significant interests and as such, is not violative of the First Amendment. *See Agudath*, 983 F.3d at 637. Plaintiffs have failed to show that Section 425.31(c) deprived them, for any period of time, of their First Amendment freedoms.

Accordingly, Plaintiffs have failed to demonstrate irreparable harm.

IV. <u>Public Interest</u>

As this Court previously held in *Vitagliano*, Defendant has a "significant governmental interest in protecting individuals attempting to enter health care facilities from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." 2023 WL 24246, at *3. Where a law furthers the government's interests and Plaintiffs have not shown a likelihood of success on the merits of a constitutional violation claim, an injunction does not serve the public interest. *We the Patriots*, 17 F.4th at 296. Accordingly, Plaintiffs have failed to demonstrate that the public interest weighs in favor of granting injunctive relief.

SPA-23

**CONCLUSION**

For the foregoing reasons, the Court holds that: (i) Plaintiffs 40 Days National and 40 Days White Plains lack standing; and (ii) the Individual Plaintiffs lack pre-enforcement standing to challenge Sections 425.31(a), (e), (d), (f), and (h). With respect to Section 425.31(c), the Individual Plaintiffs have standing but have failed to meet their burden of proof with regards to their likelihood of success on the merits of their claims, irreparable harm, and that the public interest weighs in favor of granting injunctive relief. Accordingly, Plaintiffs' motion for a preliminary injunction is DENIED.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 80. The Clerk of Court is further directed to terminate Plaintiff White Plains 40 Days for Life and Plaintiff 40 Days for Life as parties to this action.

**SO ORDERED.**

Dated:   White Plains, New York
         April 24, 2023

_____
PHILIP M. HALPERN
United States District Judge

23