# 23-804-cv

## United States Court of Appeals for the Second Circuit

40 DAYS FOR LIFE, A NONPROFIT CORPORATION OF THE STATE OF TEXAS,
WHITE PLAINS 40 DAYS FOR LIFE, AN UNINCORPORATED ASSOCIATION
OF THE STATE OF NEW YORK, OKSANA HULINSKY, AND
REGINA JOY CREARY MOLINELLI,

*Plaintiffs-Appellants,*

JANE DOE, SALLY ROE

*Plaintiffs,*

v.

COUNTY OF WESTCHESTER,

*Defendant-Appellee,*

*(caption continued on inside cover)*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### BRIEF FOR APPELLEE COUNTY OF WESTCHESTER

JUSTIN R. ADIN
SHAWNA C. MACLEOD
ALIDA MARCOS
 *of Counsel*

November 3, 2023

JOHN M. NONNA
WESTCHESTER COUNTY ATTORNEY
148 Martine Avenue, Room 600
Michaelian Office Building
White Plains, New York 10601
Telephone: (914) 995-2960
*Attorney for Defendant-Appellee Westchester County*

COUNTY OF WESTCHESTER COUNTY DEPARTMENT OF PUBLIC SAFETY,
TERRANCE RAYNOR, ACTING COMMISSIONER OF THE WESTCHESTER
DEPARTMENT OF PUBLIC SAFETY, IN HIS OFFICIAL CAPACITY, NEW ROCHELLE
POLICE DEPARTMENT, CITY OF WHITE PLAINS DEPARTMENT OF PUBLIC SAFETY,
GEORGE LATIMER, CHIEF EXECUTIVE OF THE COUNTY OF WESTCHESTER, IN HIS
OFFICIAL CAPACITY,

*Defendants.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF THE ISSUES ...................................................................... 3

STATEMENT OF THE CASE ......................................................................... 3

    A. Statutory Background: Chapter 425 ...................................................... 3

    B. The Plaintiffs in This Action ................................................................ 7

    C. Ongoing Protest Activity ...................................................................... 8

    D. Procedural History ................................................................................ 8

    E. The District Court's Opinion & Order Denying Preliminary Relief ................. 9

SUMMARY OF THE ARGUMENT ............................................................... 12

STANDARD OF REVIEW ............................................................................ 14

ARGUMENT ................................................................................................. 15

    I. The District Court Properly Determined that Plaintiffs Lack Standing as
      to All but One Provision of Chapter 425 ....................................................... 15

        A. The Organizational Plaintiffs Lack Standing to Challenge Chapter 425 ..... 16

            1. International Organization 40DFL Lacks Standing ................................. 17

            2. WP40DFL Lacks Standing ........................................................... 19

        B. The Individual Plaintiffs Lack Standing to Challenge Five of the
           Provisions at Issue on Appeal ................................................................. 20

    II. Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits
       Because Chapter 425 Is Content Neutral and Narrowly Tailored to the
       County's Significant Interests ...................................................................... 23

        A. Chapter 425 and Its Provisions Are Content-Neutral ............................... 23

            1. Chapter 425 Is Facially Content Neutral ................................... 24

a. Section 425.31(c)—the Follow-and-Harass Provision—Is Content-Neutral, as the District Court Correctly Held................ 24

b. Section 425.31(d)—Course of Conduct Placing Another in Reasonable Fear of Physical Harm—Is Content-Neutral ........... 26

c. Sections 425.31(e) & (f)—Force and Threats of Force—Are Content-Neutral ................................................................................ 28

d. Section 425.31(a)—Physical Obstruction and Blocking—Is Content-Neutral ................................................................................ 31

e. Section 425.31(h)—Interference with the Operation of a Clinic—Is Content-Neutral ............................................................. 31

2. Plaintiffs' Arguments Regarding any Disagreement with the Pro-Life Message Are Unsupported and Irrelevant.................................... 33

B. Chapter 425 Is Narrowly Tailored to the Government's Significant, Legitimate Interests ..................................................................... 36

III. Plaintiffs Cannot Demonstrate a Likelihood of Success on Their Due Process Claims ................................................................................ 37

A. Section 425.31(c)—the Follow-and-Harass Provision—Is Not Vague....... 38

B. Section 425.31(a)—Physical Obstruction and Blocking—Is Not Vague ................................................................................................ 43

C. Section 425.31(h)—Interference with the Operation of a Clinic—Is Not Vague ................................................................................................ 44

D. Sections 425.31(e) & (f)—Force and Threats of Force—Are Not Vague ................................................................................................ 45

IV. Chapter 425 Does Not Implicate Overbreadth Concerns ............................. 47

V. Plaintiffs Have Not Established Irreparable Harm.............................................. 50

VI. The Balance of the Equities/Public Interest Weigh Against Plaintiffs............ 51

# TABLE OF CONTENTS
## (Continued)

Page

CONCLUSION ................................................................................................... 52

# TABLE OF AUTHORITIES

**Cases**

*40DFL v. Cnty. of Westchester*, No. 23-155 (June 21, 2023) ................................................. 9

*Animal Legal Def. Fund (ALDF) v. Kelly*, 9 F.4th 1219 (10th Cir. 2021) ................... 32, 33

*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018) .................................. 35

*Apt. Owners Advisory Council v. Marks*, No. 21 CV 10175 (VB), 2022 U.S. Dist. LEXIS 169873 (S.D.N.Y. Sept. 20, 2022) ................................................. 20

*Beckles v. United States*, 580 U.S. 256 (2017) ................................................. 37

*Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012) ................................................. 42

*Betancourt v. Bloomberg*, 448 F.3d 547 (2d Cir. 2006) ................................................. 43

*Bond v. United States*, 572 U.S. 844 (2014) ................................................. 22

*Boos v. Barry*, 485 U.S. 312 (1988) ................................................. 26

*Brown v. City of Pittsburgh*, 586 F.3d 263 (3d Cir. 2009) ................................................. 37

*Byrd v. United States*, 138 S. Ct. 1518 (2018) ................................................. 15

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ................................................. 15

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ................................................. 23

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S. Ct. 1464 (2022) ................. 24

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ................................................. 41

*Coates v. Cincinnati*, 402 U.S. 611 (1971) ................................................. 42

*Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439 (2d Cir. 2021) ................................................. 20

*Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167 (2d Cir. 2021) ................................ 10, 16, 18

*Counterman v. Colorado*, 143 S. Ct. 2106 (2023) ................................................. 26, 27, 28

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ................................ 33, 34, 36

*Dorman v. Satti*, 862 F.2d 432 (2d Cir. 1988) ........................................................ 35

*Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167 (2d Cir. 2006) ....................................... 14

*Golb v. A.G. of N.Y.*, 870 F.3d 89 (2d Cir. 2017) ........................................................ 28, 38

*Granite State Outdoor Advertising, Inc. v. Town of Orange*, 303 F.3d 450 (2d Cir. 2002)
    (*per curiam*) ........................................................................................... 16

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................................... 38

*Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of
    Corr. & Cmty. Supervision*, 16 F.4th 67 (2d Cir. 2021) ........................................... 16, 19

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................ 16, 19

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006) ......................................................... 42

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ............................................ 21

*Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983) ........................................................ 42

*L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32 (1999) ............................ 48

*Libertarian Party v. Cuomo*, 970 F.3d 106 (2d Cir. 2020) .............................................. 38

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) ............................................. 49

*Marcavage v. Syracuse Police Dep't*, 515 F. App'x 14 (2d Cir. 2013) ................................. 51

*McCullen v. Coakley*, 573 U.S. 464 (2014) ......................................................... 25, 26, 36, 51

*New York v. Cain*, 418 F. Supp. 2d 457 (S.D.N.Y. 2006) ............................................... 46

*New York v. Griepp*, 991 F.3d 81 (2d Cir.), *reh'g granted and op. vacated*, 997 F.3d 1258
    (2d Cir.), *op. on reh'g*, 11 F.4th 174 (2d Cir. 2021) .......................................... 7, 47

*Niemotko v. Maryland*, 340 U.S. 268 (1951) ....................................................... 34, 35

*Nken v. Holder*, 556 U.S. 418 (2009) .................................................................. 15

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ................................................... 10, 18, 19, 20

*People v. Coveney*, 50 Misc. 3d 1 (2d Dep't App. Term 2015) ......................................... 39

*People v. Dietze*, 75 N.Y.2d 47 (1989) ................................................................ 49

*People v. Golb*, 23 N.Y.3d 455 (2014) .................................................................. 49

*People v. Harvey*, 307 N.Y. 588 (1954) ............................................................. 42

*People v. Lagano*, 39 N.Y.3d 108 (2022) .......................................................... 42

*People v. Richards*, 22 Misc. 3d 798 (N.Y. Crim. Ct. 2008) ........................... 39

*People v. Shack*, 86 N.Y.2d 529 (1995) ............................................................ 39

*Pharaohs GC, Inc. v. United States SBA*, 990 F.3d 217 (2d Cir. 2021) ............... 14

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) ............................................... 15

*Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972) ......................... 36

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ................................................. 23

*Skilling v. United States*, 561 U.S. 358 (2010) ................................................ 38

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ......................... 15, 21

*United States v. Alvarez*, 567 U.S. 709 (2012) ................................................ 30

*United States v. Davis*, 139 S. Ct. 2319 (2019) ............................................... 37

*United States v. Dawkins*, 999 F.3d 767 (2d Cir. 2021) .................................. 38

*United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996) ......................... 29, 46

*United States v. O'Brien*, 391 U.S. 367 (1968) ................................................ 36

*United States v. Schneiderman*, 968 F.2d 1564 (2d Cir. 1992) ........................ 44

*United States v. Scott*, 979 F.3d 986 (2d Cir. 2020) ........................................ 41

*United States v. Stevens*, 559 U.S. 460 (2010) ................................................ 30

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) ...................................... 44

*United States v. Thompson*, 896 F.3d 155 (2d Cir. 2018) ................................ 48

*United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998) ................................passim

*United States v. Williams*, 553 U.S. 285 (2008) .............................................. 48

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ......................... 35

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ............ 44, 45

*VIP of Berlin, LLC v. Tn. of Berlin*, 593 F.3d 179 (2d Cir. 2010) ..................................... 46

*Virginia v. Hicks*, 539 U.S. 113 (2003) .................................................................................. 47

*Vitagliano v. Cnty. of Westchester*, 71 F.4th 130 (2d Cir. 2023) ......................................... 6, 9

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .............................................................. 38

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) ..................................... 51

*Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392 (2d Cir. 2018) ........................... 15

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................................... 15

*Wisconsin v. Mitchell*, 508 U.S. 476 (1993) .......................................................................... 30

## Statutes

18 U.S.C. § 248 ............................................................................................................ 29, 44, 46

Chapter 425 of the Laws of Westchester County, N.Y. (2022) ............................... passim

N.Y. Civ. Rights L. § 79-m ........................................................................................... 29, 46

N.Y. Penal L. § 240.26 ................................................................................................... 39, 42

N.Y. Penal L. § 240.70 ................................................................................................... 29, 46

N.Y. Penal L. § 425.26 ......................................................................................................... 39

## Other Authorities

Legis. Comm. Mtg. (June 1, 2022) .......................................................................... 31, 45

Legis. Comm. Mtg. (June 6, 2022) .............................................................. 6, 34, 40, 41

Legis. Comm. Mtg. (May 23, 2022) ..................................................................................... 45

Local Law Intro. No. 309-2023 ..................................................................................... 5, 6

Merriam-Webster.com Dictionary ............................................................................. 40, 45

## PRELIMINARY STATEMENT

As the Supreme Court and this Court have long recognized, the government can regulate conduct that may have expressive components, so long as the government tailors the regulation to an important interest unrelated to the suppression of free expression. In 2022, the County of Westchester ("the County" or "Appellee") did just that when it crafted Chapter 425 of the Laws of Westchester County ("Chapter 425"). Chapter 425 provides safe access to reproductive health care facilities, targeting threatening, harassing, violent, fraudulent, and obstructive conduct. Its provisions are modeled after federal and state laws that have already been upheld by various courts.

While Chapter 425 advances the County's significant interests in, among other things, promoting the safety and privacy of individuals seeking reproductive health care, Plaintiffs assert that the law violates their constitutional rights to free speech, free exercise of religion, and due process (under the "void-for-vagueness" doctrine). In the District Court, they sought the extraordinary and drastic remedy of a preliminary injunction to enjoin the law, claiming it amounted to a "sidewalk counseling ban."

Plaintiffs are wrong. The County legislature carefully balanced, in a workable manner, the rights of those seeking safe access to reproductive health care facilities with the rights of individuals to express their views. Chapter 425 restricts proscribed conduct—not protected First Amendment expression. The resulting law allows sidewalk counselors—Plaintiffs and others—to safely continue their sidewalk advocacy,

while at the same time ensuring that individuals will have safe passage to reproductive health care facilities.

The United States District Court for the Southern District of New York (Halpern, J.) therefore properly denied Plaintiffs' request for a preliminary injunction. In doing so, it correctly determined that the organizational plaintiffs lack standing to challenge Chapter 425, and that the individual plaintiffs lack standing to challenge all but one of Chapter 425's provisions,[1] and thus concluded that Plaintiffs could not succeed on the merits of their related claims. As to the single remaining challenged provision—the law's prohibition on following and harassing another person within 25-foot boundaries near reproductive health care facilities—the District Court correctly decided that the provision is constitutional under the First and Fourteenth Amendments.

This Court should affirm in all respects. On appeal, Plaintiffs cannot carry their heavy burden of showing that the District Court abused its discretion in denying an injunction. Given the law's constitutionality, Plaintiffs cannot show they have suffered any stifling of their First Amendment freedoms or violation of their civil rights, and thus do not face irreparable harm. The balance of the equities also weighs in the County's favor, given that the law is in the public interest.

---

[1] While the County does not believe that the individual plaintiffs have standing to challenge that remaining provision, it does not contest, at this stage in the litigation, the District Court's determination to permit standing as to the "follow and harass" provision.

# STATEMENT OF THE ISSUES

I. Whether the District Court properly concluded that the organizational plaintiffs lack standing to sue, and that the individual plaintiffs lack standing to challenge all but one of the Chapter 425 provisions they seek to enjoin.

II. Whether the District Court properly exercised its discretion in denying Plaintiffs' request for a preliminary injunction because of the unlikelihood that Plaintiffs can prevail on their First and Fourteenth Amendment claims, where Plaintiffs face no harm stemming from Chapter 425 in the absence of an injunction, and where the balance of the equities favors the County's law remaining intact.

# STATEMENT OF THE CASE

## A.    Statutory Background: Chapter 425

On June 27, 2022, the County enacted Local Law No. 9-2022, "adding Chapter 425 to the Laws of Westchester County to ensure safe access to reproductive health care facilities." (Joint Appendix ("JA") 181-87, 332-41.) Chapter 425 was a response to conduct occurring near reproductive healthcare clinics in the County that exceeded the bounds of protected First Amendment expression—for instance, blocking facility entrances; pushing past staff; and throwing objects at patients. (*See, e.g.*, JA 161-69, 172-74, 244-48.)

The Chapter 425 provisions that Plaintiffs seek to enjoin here—which are modeled after federal and state laws that have been upheld by various courts—target

threatening, harassing, violent, fraudulent, and obstructive conduct that is not protected by the First Amendment. (JA 182-84.)

With accompanying definitions and penalties, Chapter 425 makes it unlawful to do any of the following:

a. knowingly physically obstruct or block another person from entering into or exiting from the premises of a reproductive health care facility or a public parking lot serving a reproductive health care facility, in order to prevent that person from obtaining or rendering, or assisting in obtaining or rendering, medical treatment or reproductive health care services; or

b. strike, shove, restrain, grab, kick, or otherwise subject to unwanted physical contact or injury any person seeking to legally enter or exit the premises of a reproductive health care facility; or

c. knowingly follow and harass another person within twenty-five (25) feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility; or

d. knowingly engage in a course of conduct or repeatedly commit acts when such behavior places another person in reasonable fear of physical harm, or attempt to do the same, within twenty-five (25) feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility; or

e.  by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate, or interfere with, another person in order to discourage such other person or any other person or persons from obtaining or providing, or assisting in obtaining or providing, reproductive health care services; or

f.  by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate or interfere with, another person because such person was or is obtaining or providing, or was or is assisting in obtaining or providing, reproductive health care services; or

g.  physically damage a reproductive health care facility so as to interfere with its operation, or attempt to do the same; or

h.  knowingly interfere with the operation of a reproductive health care facility, or attempt to do the same, by activities including, but not limited to, interfering with, or attempting to interfere with (i) medical procedures or treatments being performed at such reproductive health care facility; (ii) the delivery of goods or services to such reproductive health care facility; or (iii) persons inside the facility.

Laws of Westchester County, N.Y. ("LWC") § 425.31 (2022) (JA 182-85, 334-37).[2] The only restrictions that Plaintiffs do not challenge are Sections 425.31(b) and 425.31(g).

---

[2] On August 7, 2023, the County repealed Subdivision (i) of Section 425.31 of the Laws of Westchester County. *See* Local Law Intro. No. 309-2023, *available at* https://westchestercountyny.legistar.com/View.ashx?M=F&ID=12230678&GUID=CCBD

Chapter 425 defines reproductive health care facilities as "any building, structure, or place, or any portion thereof, at which licensed, certified, or otherwise legally authorized persons provide reproductive health care services." LWC § 425.21(k) (JA 183, 336).[3] In turn, reproductive health care services are defined as "medical, surgical, counseling, or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." LWC § 425.21(*l*) (JA 183, 336). As defined, the term "reproductive health care facilities" includes facilities that provide abortion-related services as well as anti-abortion facilities such as pregnancy crisis centers—and any other center that provides medical, surgical, counseling, or referral services relating to the human reproductive system. *See* LWC §§ 425.21(k), (*l*); *see also* Legis. Comm. Mtg. (June 6, 2022) at 1:10:50-1:16:25[4] (discussing various types of facilities that could fall under definition).

---

8621-9D0E-491F-A9C4-8049209DA5A4. Now repealed Section 425(i) was the subject of this Court's June 2023 decision in *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130 (2d Cir. 2023).

[3] Because Section 425.31(i) and its accompanying definitions have been repealed, the section numbers in the definitional section of Chapter 425 have been newly revised. *See* Local Law Intro. No. 309-2023. Nevertheless, in this brief, Appellee retains the section numbers for Chapter 425 as they appeared in the original enacted version of the law, as well as they appear in the Joint Appendix and in Appellant's brief, for the Court's ease of reference, and because these section numbers were in effect when the District Court denied Plaintiffs' PI application in April 2023.

[4] The video of this Board of Legislators' committee meeting is available at the following link: https://westchestercountyny.granicus.com/player/clip/1463?view_id=1&redirect=true&h= 9c1c3977d426a1edf751722cc4ca7a6f (last visited Nov. 2, 2023).

Further, while the committee report references this Court's vacated panel decision in *New York v. Griepp*, 991 F.3d 81 (2d Cir.), *reh'g granted and op. vacated*, 997 F.3d 1258 (2d Cir.), *op. on reh'g*, 11 F.4th 174 (2d Cir. 2021), even a cursory review of the legislative history makes clear that the County did not rely on *Griepp* in enacting Chapter 425. The meanings of terms like "physical obstruction," "interference," and "harassment" are derived from other laws and standing decisions, as discussed below. The reference to *Griepp* does not change the language of those terms, nor did it control the drafting of Chapter 425. With or without reference to *Griepp*, Chapter 425 passes constitutional muster.[5]

## B. The Plaintiffs in This Action

Plaintiffs Hulinsky and Molinelli (the "Individual Plaintiffs"), two anti-abortion "sidewalk advocates and counselors," along with organizational plaintiffs White Plains 40 Days for Life ("WP40DFL") and 40 Days for Life ("40DFL")[6] (together, the "Organizational Plaintiffs"), challenge Chapter 425 as invalid on its face and as-applied under the First and Fourteenth Amendments, alleging that their (or their members')

---

[5] Throughout their opening brief, as they did in the proceedings below, Plaintiffs persist in referencing *Griepp*, claiming that the County's reliance on the decision was so great that *Griepp*'s discussion should control and essentially replace the plain language, or otherwise defined meaning, of terms in Chapter 425. (*See* App. Br. 4-5, 14-17, 31, 33-36.) Plaintiffs' *Griepp* references are a distraction, meant to draw the Court's attention away from the plain text of the County's law, and misdirect it to the text of a vacated decision and the specific facts in that case. This Court should reject that invitation. *See* Part III.D.

[6] 40DFL is alternately referred to as an "international" and a "national" organization in the Second Amended Complaint. (JA 27, 85.)

freedoms of expression and religion have been "chilled." (JA 23-34, 48-55, 84-97.) These sweeping challenges are based on a misunderstanding of Chapter 425 and a misapprehension of the controlling case law. As set forth in this brief, Plaintiffs, and anyone else, can speak, leaflet, pray, protest, and express themselves near reproductive health care clinics in the County consistent with Chapter 425.

### C. Ongoing Protest Activity

Since the enactment of Chapter 425, anti-abortion advocates have continued to pray, counsel, and protest in the public way right outside of the County's reproductive healthcare facilities. For instance, and consistent with the law, individuals hold signs, including 40DFL signs; sit in the public way while displaying signs and literature; pray to the Rosary; and approach others in cars to pass them literature. (JA 328-330, 342, 343-351, 352-357, 358-361, 362-63.) This continued protected First Amendment activity outside of reproductive healthcare clinics—without incident of arrest or prosecution under Chapter 425—shows that the law does not have the chilling effect Plaintiffs claim it does.

### D. Procedural History

On August 15, 2022, two anonymous plaintiffs commenced the underlying action, challenging Chapter 425. *See* Case No. 7:22-cv-06950-PMH (S.D.N.Y.), ECF ("SDNY ECF") No. 1. On August 27, 2022, Plaintiffs also filed a pre-motion letter in anticipation of moving for a preliminary injunction ("PI"). SDNY ECF No. 7. The Court denied the letter request as premature, without prejudice to renew once Plaintiffs'

anticipated motion to proceed under pseudonyms was decided. SDNY ECF No. 26. On November 23, 2022, Plaintiffs added the organizational plaintiffs to the case, SDNY ECF No. 45, and on December 20, 2022, they filed a Second Amended Complaint ("SAC") in which they added Hulinsky as a plaintiff, dropped one anonymous plaintiff from the case, and designated the other anonymous plaintiff by her real name, Molinelli. SDNY ECF No. 52.

On December 30, 2022, Plaintiffs filed a letter seeking to renew their PI request. SDNY ECF No. 55. Following the submission of the parties' pre-motion letters, the Court held a conference and thereafter set a briefing schedule for Plaintiffs' PI motion, which was fully submitted March 1, 2023. SDNY ECF Nos. 59, 80-86, 88.[7]

### E.    The District Court's Opinion & Order Denying Preliminary Relief

On April 24, 2023, the District Court issued its opinion and order, denying Plaintiffs' motion for a preliminary injunction. SDNY ECF No. 94; Special App. ("SPA") 1-23.

The Court first examined Plaintiffs' standing for each of their asserted claims. It determined that 40DFL and WP40DFL each lack standing to challenge any of Chapter

---

[7] Plaintiffs attempted to appeal from a statement the District Court made during the pre-motion conference in January 2023, regarding now-repealed Section 425.31(i). In June 2023, this Court dismissed Plaintiffs' appeal for lack of appellate jurisdiction. *40DFL v. Cnty. of Westchester*, No. 23-155 (June 21, 2023) (summary order ). In a separate action regarding Section 425.31(i), this Court determined that the section was constitutional. *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130 (2d Cir. 2023). Section 425.31(i) has nevertheless been repealed by the County, and is not a subject of this appeal. *See supra* footnote 2.

425's provisions. (SPA 7-9.) Regarding 40DFL, the District Court found that the organization failed to demonstrate an injury in fact, as it had not "put forward any specific facts showing that the enactment of Chapter 425 has or will in any way 'perceptibly impair its activities,'" and because it is "not involved in organizing the Local Vigils" nor is it "involved in the sidewalk counseling at issue in this litigation." (SPA 8 (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 173-74 (2d Cir. 2021).) As for WP40DFL, the District Court rejected the argument that WP40DFL has standing based on the alleged injuries of its members, relying on this Court's precedent relating to Section 1983 actions (SPA 9 (citing *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)), and otherwise ruled that WP40DFL's speech had not "been chilled in any way." (SPA 8-9.)

Next, regarding the Individual Plaintiffs, the District Court determined that they lack standing to bring a pre-enforcement challenge against five of the six provisions of Chapter 425 they sought to challenge. (SPA 9-12.) The Court explained that "it is neither arguable nor reasonable to conclude" that Plaintiffs' intended course of conduct as alleged—i.e., peaceful sidewalk counseling regarding alternatives to abortion—would implicate Sections 425.31(a), (e), or (f) (e.g., physically obstructing or blocking anyone from entering a reproductive health care facility), Section 425.31(d) (engaging in conduct that places another in reasonable fear of physical harm), or Section 425.31(h) (interfering with reproductive health care facilities' operations). (SPA 10-12.) The Court

did find that the Individual Plaintiffs had standing to challenge Section 425.31(c)—the follow-and-harass provision—in that it was at least arguable that the provision could be construed to proscribe certain sidewalk counseling. (SPA 11-13.)

Nevertheless, the Court determined that Plaintiffs failed to establish a likelihood that they would prevail on their claims. (SPA 13-21.) In a thorough analysis of Plaintiffs' First Amendment claims, the Court explained that Section 425.31(c) is content-neutral and narrowly tailored to significant government interests, and that it poses no overbreadth concerns. (SPA 14-17.) The District Court also found that the text of both Section 425.31(c) and its related definitions is sufficiently clear to provide notice about the conduct it prohibits, rendering Plaintiffs' vagueness challenges meritless. (SPA 17-21.)

With respect to irreparable harm, the District Court explained that although Plaintiffs alleged that Chapter 425 "stifled" their "pro-life sidewalk advocacy at County abortion facilities," they "failed to put forward any specific facts to support this contention," and also "failed to rebut the evidence submitted by [the County] or otherwise put forward any specific facts showing that they will imminently suffer an injury if the court waits until the end of a trial to resolve the harm." (SPA 21-22 (internal quotation marks omitted).) It also explained that Plaintiffs failed to show how Section 425.31(c), a content-neutral regulation narrowly tailored to the County's significant

interests, deprived them for any period of time of their First Amendment freedoms. (SPA 22.)

Finally, the District Court found that an injunction would not serve the public interest. (SPA 22.) The District Court thus ordered the Organizational Plaintiffs dismissed from the case, and denied the Individual Plaintiffs a PI.[8]

## SUMMARY OF THE ARGUMENT

The District Court acted well within its discretion in denying Plaintiffs' application for a preliminary injunction, and its order should be affirmed.

As a threshold matter, as the District Court properly held, the Organizational Plaintiffs have failed to meet their burden to show they have standing to sue—a necessary prerequisite to obtaining an injunction. 40DFL and WP40DFL lack standing to challenge Chapter 425 because they are not directly regulated by the law, nor have they faced any "involuntary material burden" on their core activities as a result of the law's enactment. *See* Point I.A. The District Court also correctly concluded that the Individual Plaintiffs lack standing to challenge Sections 425.31(a), (d), (e), (f), and (h), because their intended conduct, as pleaded, is not even arguably proscribed by those sections, and they thus face no credible threat of enforcement against them. *See* Point I.B.

---

[8] In this appeal, the question of standing as it relates to the Organizational Plaintiffs is whether or not they can pursue a claim at all; for the Individual Plaintiffs, the standing issue is solely related to the likelihood of success on the merits of their PI request.

Turning to the merits, the District Court properly determined that Plaintiffs did not establish a likelihood of prevailing on their challenge to the follow-and-harass provision of the law, Section 425.31(c). As the District Court found, Section 425.31(c) is content-neutral and narrowly tailored to the County's significant interests in (among others) the free-flow of traffic, the ability to access reproductive health care facilities, and the privacy protection of individuals seeking reproductive health care. *See* Parts II.A(1)(a), II.B. The section leaves open ample alternative channels of communication because it is aimed at unlawful conduct, not communication, and thus does not suffer from any issues of unconstitutional overbreadth. *See* Parts II.B, IV. Section 425.31(c) is also clear: its plain-worded text and accompanying definitions ensure standards for law enforcement, and provide the public with fair notice about what the law prohibits, as the District Court properly determined. *See* Part III.A.

This Court need not reach the merits of the remainder of the provisions at issue on this appeal. The District Court did not reach claims as to these provisions in the proceedings below, having rightly determined that none of the Plaintiffs has standing to challenge them. If the Court does reach the merits of the rest of the provisions, it should nevertheless affirm the denial of the PI. Like the follow-and-harass provision, the others—Sections 425.31(a), (d), (e), (f), and (h)—are content-neutral and narrowly tailored to the County's significant interests, consistent with the First Amendment, *see* Parts II.A(1)(b)-(e), II.A(2), II.B, and they are clear about the type of conduct they

prohibit, in accordance with the Due Process Clause, *see* Part III.B-D. Nor do any of the law's provisions implicate overbreadth concerns, because they do not regulate a substantial amount of free expression, either in an absolute sense, or when compared with Chapter 425's legitimate sweep. *See* Part IV.

Plaintiffs also fail to demonstrate, on appeal, that irreparable harm is likely in the absence of an injunction, because Plaintiffs have not been, and will not be, deprived for any period of time of their First Amendment freedoms. *See* Part V.

Finally, because Chapter 425 furthers the County's interests in protecting individuals attempting to enter health care facilities from unlawful conduct, and because Plaintiffs have not shown a likelihood of success on the merits of their constitutional claims, an injunction does not serve the public interest. *See* Part VI.

For all these reasons, and those that follow, this Court should affirm the denial of Plaintiffs' application for a PI, and the dismissal of the Organizational Plaintiffs.

## <u>STANDARD OF REVIEW</u>

The Court reviews questions of standing under Article III *de novo. Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006).

The denial of a preliminary injunction is reviewed for an abuse of discretion, which is found only where the decision rests "on an incorrect legal standard or on a clearly erroneous assessment of the facts." *Pharaohs GC, Inc. v. United States SBA*, 990 F.3d 217, 225 (2d Cir. 2021) (internal quotation marks omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) the balance of equities tipping in plaintiff's favor, and (4) that an injunction is in the public interest. *Id.* at 20. The last two factors, the balance of the equities and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

This Court may "affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) (internal quotation marks omitted).

## ARGUMENT

### I. The District Court Properly Determined that Plaintiffs Lack Standing as to All but One Provision of Chapter 425

This Court first analyzes the question of standing "because it is a 'jurisdictional' requirement and 'must be assessed before reaching the merits.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014)). At the preliminary injunction stage, "a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for

summary judgment." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (internal quotation marks omitted). Absent standing, Plaintiffs cannot establish a likelihood of success on the merits, and thus cannot obtain an injunction. *Cf. Granite State Outdoor Advertising, Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (*per curiam*) (explaining that a lack of jurisdiction negates the litigant's chance of success on that claim).

## A. The Organizational Plaintiffs Lack Standing to Challenge Chapter 425

The District Court properly determined that neither 40DFL nor WP40DFL sufficiently demonstrated organizational standing. It is the organizations' burden to satisfy the "irreducible constitutional minimum of standing" by showing: "(i) an imminent injury in fact to itself as an organization (rather than to its members) that is distinct and palpable; (ii) that its injury is fairly traceable to [the challenged act]; and (iii) that a favorable decision would redress its injuries." *Russell-Tucker*, 8 F.4th at 172-173 (internal quotation marks omitted; alteration in original). "An organization can satisfy the injury prong if it shows that the challenged action did not merely harm its 'abstract social interests' but 'perceptibly impaired' its activities." *Id.* at 173 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). "Where, as here, an organization is not directly regulated by a challenged law or regulation, it cannot establish 'perceptible impairment' absent an *involuntary material burden* on its established core activities." *Id.* (emphasis added). In such a circumstance, "the challenged law . . . must impose a cost (e.g., in time, money, or danger) that adversely affects one of the activities the

organization regularly conducted (prior to the challenged act) in pursuit of its organizational mission." *Id.* at 173-74.

### 1. International Organization 40DFL Lacks Standing

According to the operative complaint, 40DFL is an "international pro-life advocacy organization whose activities include the promotion of 40-day Local Vigils on public sidewalks or in public-rights-of way adjacent to abortion facilities throughout the nation, including the Planned Parenthood facility in Greenburgh, NY." (JA 27.) 40DFL has no members, and "[a]ll Local Vigils and associated activities are independent from 40DFL, which neither directs nor leads any Local Vigils." (JA 26.)

40DFL argues that Chapter 425 was designed to "imped[e]" 40DFL's promotion of local vigils in Westchester. (App. Br. 38.) But the materials submitted to the District Court show otherwise. It is clear—even from the SAC—that 40DFL vigils have been and continue to be promoted and attended, including in Westchester County, since the enactment of Chapter 425. (JA 54-55, 290-95, 328-30, 342, 343-351, 352-357, 358-361, 362-63; SPA 8, SPA 21-22; Def.'s Mem. of Law at 6, SDNY ECF No. 81); "Promotional Flyer Fall 2023," *available at* https://s3-us-west-2.amazonaws.com/cdn.40daysforlife.com/resources/11104/40DFL_WP_English_Flyer_Fall_2023-2.pdf.) There are simply no non-conclusory allegations in the pleadings—and there is no evidence—that the organization's vigil promotion efforts in

the County have been impeded because of Chapter 425, let alone that the organization's core activities have been materially burdened in an involuntary way.

40DFL's claims that it diverted resources to "contest" Chapter 425 by engaging legal counsel, "interviewing potential witnesses," and studying Chapter 425's provisions for the purposes of this voluntary litigation (JA 55) are insufficient to amount to an "involuntary material burden on its established core activities" that would confer standing. *Russell-Tucker*, 8 F.4th at 173. And while 40DFL asserts that litigation costs can generally confer standing (App. Br. 39), this is not always the case; nowhere here does 40DFL allege that it frequently participates in litigation as part of its mission. *Russell-Tucker*, 8 F.4th at 174 ("[A]n organization's decision to embark on categorically new activities in response to action by a putative defendant will not ordinarily suffice to show an injury for standing purposes."). Under 40DFL's theory, "an organization could establish standing by claiming to have been injured by any law or regulation touching any issue within the scope of its mission (which the organization itself can define) so long as it expends resources to oppose that law or regulation." *Id.* at 173. This Court expressly "reject[ed] such an expansive concept of organizational injury for standing purposes." *Id.* Therefore, 40DFL does not have standing to sue on this basis.

40DFL's reliance on *Nnebe*, 644 F.3d at 157-58 (*see* App. Br. 39) is misplaced. In *Nnebe*, the organization demonstrated that it was directly expending resources providing legal representation and counseling to its own members in response to enforcement of

the challenged practice. Its damages were those costs, *not* the costs of bringing and participating in the *Nnebe* action. 644 F.3d at 157-58.[9]

40DFL cannot and did not demonstrate standing, which was its burden, and the District Court correctly dismissed 40DFL from this action for this reason.

### 2.      **WP40DFL Lacks Standing**

Nor does WP40DFL have organizational standing to sue. WP40DFL "is an unincorporated association of pro-life advocates and a Local Vigil . . . that engages in 40-day vigils and peaceful activism, including the offering of pro-life literature and sidewalk outreach, on the sidewalks and rights-of-way adjacent to the aforementioned Planned Parenthood facility in Greenburgh, NY." (JA 26.)

Plaintiffs appear to have abandoned their argument, rightly rejected by the District Court, that WP40DFL has standing to sue on behalf of its members in this Section 1983 case. (SPA 7.)[10] On appeal, WP40DFL argues only that its vigils have

---

[9] Even if this Court were to determine that 40DFL's foray into this action constituted a kind of redressable injury, it would seem that the organization's (voluntary) litigation costs could, at best, help 40DFL seek money damages—not seek forward-looking injunctive relief. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). Indeed, *Havens*, which 40DFL relies upon (App. Br. 37-39), deals with an organization's standing to seek money damages. But even in *Havens*, those damages related to the organization's normal activities, not the cost of entering into the *Havens* litigation. Moreover, the *Havens* Court found the organization was still required to prove its standing before the District Court (455 U.S. at 379), which is what 40DFL was required to do here at the PI stage (*see Green Haven Prison*, 16 F.4th at 78). It did not do so.

[10] Similarly, in the SAC, 40DFL alleges its mission has been "perceptibly" impaired because its volunteers might be threatened with litigation or prosecution. (JA 54.) But 40DFL cannot assert claims on behalf of individuals in a Section 1983 action.

declined in attendance. (App. Br. 40.) But as the District Court explained, "[t]he fact that other individuals have chosen not to attend vigils organized by [WP40DFL] is not relevant to the organizational standing inquiry because the organization 'does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983.'" (SPA 8-9 (citing *Nnebe*, 644 F.3d at 156).) Indeed, under Chapter 425, WP40DFL can continue to engage in its core activities without restriction. *See, e.g.*, *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 447 (2d Cir. 2021) (advocacy organization lacked standing to challenge executive order where its advocacy in opposition to the order was "not a departure from [its] usual activities"); *Apt. Owners Advisory Council v. Marks*, No. 21 CV 10175 (VB), 2022 U.S. Dist. LEXIS 169873, at *12 (S.D.N.Y. Sept. 20, 2022) (no organizational standing where plaintiffs "engaged in more of the same work as a result of [the challenged policies]"). There is no evidence that WP40DFL's speech has been chilled in any way. Since WP40DFL has not demonstrated that its core mission has been perceptibly impaired, it lacks organizational standing.

## B. The Individual Plaintiffs Lack Standing to Challenge Five of the Provisions at Issue on Appeal[11]

To establish the "injury in fact" element of standing in the pre-enforcement context, the Individual Plaintiffs may show that threatened enforcement is "sufficiently

---

[11] As previously noted, the County is not challenging on appeal the District Court's determination as to standing on the "follow and harass" provision. The County does not, however, concede such standing exists regarding the Individual Plaintiffs' intended activities, particularly without the benefit of a fully developed record on appeal.

imminent," by demonstrating: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest;" (2) that their "intended future conduct is 'arguably proscribed by [the] statute'" they challenged; and (3) that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159-162 (alteration in original) (quoting *Babbit v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979)). As this Court has made clear, a "credible threat of prosecution . . . cannot rest on fears that are 'imaginary or speculative'," and requires something more concrete. *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (citation omitted).

As to whether the intended conduct is arguably proscribed by the challenged law, "If a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation, the plaintiff may legitimately fear that it will face enforcement of the statute, then the plaintiff has standing to challenge the statute." *Id.* at 98 (internal quotation marks omitted). The relevant inquiry is whether "plaintiff's proffered interpretation of the statute—which leads them to fear its enforcement against their intended conduct—is arguable or reasonable." *Id.* at 99.

Here, the Individual Plaintiffs allege that they intend to pray, counsel, and distribute literature peacefully in public areas outside of reproductive healthcare facilities, and they assert they have been chilled, in whole or in part, from doing so because of Chapter 425. Specifically, Molinelli and Hulinsky allege that they engage in "sidewalk counseling," where they "approach expectant mothers and others going to

or leaving the facility by car or on foot in order to engage in a short, quiet conversation, at a normal conversational distance" and offer literature relating to "alternatives to abortion." (JA 26-34.) Plaintiffs do not assert that they intend to: physically obstruct or block anyone from entering a reproductive healthcare facility; engage in a course of conduct that would place another in reasonable fear of physical harm; threaten force or use force against someone entering a reproductive healthcare facility; or interfere with the operations of any reproductive health care facilities by interfering with either the medical procedures being conducted within those facilities, the delivery of goods to those facilities, or persons inside those facilities, in violation of Sections 425.31(a), (d), (e), (f), or (h). Individual Plaintiffs' intended activities are not even arguably proscribed by any reasonable reading of these subsections, which are discussed in detail in Parts II, III, and IV of this brief. Because no reasonable reading of these challenged sections of Chapter 425 would encompass the conduct and speech in which the Individual Plaintiffs wish to engage, their fear of prosecution is subjective and imaginary, and there is no credible threat of enforcement against them.

As Plaintiffs do not have standing as to these provisions, this Court should decline to review the merits of Plaintiffs' claims that Sections 425.31(a), (d), (e), (f), and (h) are unconstitutional under the First and Fourteenth Amendments. *See Bond v. United States*, 572 U.S. 844, 855 (2014) ("[I]t is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a

constitutional question if there is some other ground upon which to dispose of the case.") (internal quotation marks omitted). Nevertheless, because Plaintiffs argue the merits of these provisions on appeal, the County also addresses the constitutionality of these provisions in this brief.

## II.    Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits Because Chapter 425 Is Content Neutral and Narrowly Tailored to the County's Significant Interests

Plaintiffs attack the constitutionality of Chapter 425 under the First Amendment, claiming that the law is content-based, and therefore subject to strict scrutiny. For the reasons set forth below, this argument is without merit.

## A.    Chapter 425 and Its Provisions Are Content-Neutral

Chapter 425 is content-neutral. A regulation fails content neutrality only if (1) it "'applies to particular speech because of the topic discussed or the idea or message expressed'" or (2) "'though facially content neutral,'" it "'cannot be justified without reference to the content of the regulated speech,' including preventing expression from disfavored speakers." *Citizens United v. Schneiderman*, 882 F.3d 374, 381-82 (2d Cir. 2018) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015)).

As discussed below, first, Chapter 425 is facially content-neutral. None of its provisions regulate conduct based on topic; nor does Chapter 425 "draw[] facial distinctions based on the 'function or purpose' of speech," as Plaintiffs argue. The Supreme Court recently clarified that a law regulating speech "cannot escape classification as facially content based simply by swapping an obvious subject-matter

distinction for a 'function or purpose' proxy that achieves the same result." *City of Austin v. Reagan Nat'l Adver. of Austin*, LLC, 142 S. Ct. 1464, 1474 (2022). However, Chapter 425 does no such thing.

Second, the law is not justified with reference to the content of any regulated speech, nor was the law enacted, as Plaintiffs argue, because of the County legislature's disagreement with the anti-abortion message.

### 1. Chapter 425 Is Facially Content Neutral

#### a. Section 425.31(c)—the Follow-and-Harass Provision—Is Content-Neutral, as the District Court Correctly Held

The district court properly determined that Section 425.31(c) is a content-neutral regulation. Plaintiffs argue on appeal that the follow-and-harass provision is "facially content-based because it applies to speech and expressive conduct, and defines 'harass' to include any speech that 'alarms or seriously annoys another' based on listener reaction." (App. Br. 46.)

The first problem with Plaintiffs' argument is that it relies on a misreading of the law. Nowhere do the terms "speech" or "expression" appear in the text of the follow-and-harass provision or its related definitional section. To the contrary, and as the District Court explained, "Put simply, Section 425.31(c) regulates . . . conduct, not speech." (SPA 15.) Plaintiffs prove this point themselves, with their leafleting example. Although they assert that the County "conceded" in its district court papers that the follow-and-harass provision targets leafleting (the County does not, and never did,

concede this), the County was merely explaining that an individual who continuously tried to physically stand in front of another person—while at the same time holding a leaflet—*could* violate Section 425.31(c), as long as all the other statutory elements were also met (including being within the applicable twenty-five foot zone, physically following the other person, causing the other person serious alarm or annoyance, without any legitimate purpose, and conceivably after being asked to stop, all the while knowing she was acting in such a way).[12]

The second problem with Plaintiffs' content-based argument is that, to the extent any expression might be incidentally implicated by the County's restriction on "following and harassing," the section is utterly neutral about the content of that expression. Like the statute the Supreme Court found to be content-neutral in *McCullen v. Coakley*, the "problems . . . arise irrespective to the listener's reaction to the content of the speech." 573 U.S. 464, 481 (2014). In other words, regardless of whether anyone reacts to a person's speech—whether it is anti-abortion or pro-choice rhetoric, or advocacy relating to climate change—if the person purveying the message also physically follows another person within twenty-five feet of the premises of a reproductive health care facility and engages in conduct that alarms another person after

---

[12] A review of the footnote in the County's district court brief, to which Plaintiffs point, makes this clear. (Def.'s Mem. of Law at 23 n.8, SDNY ECF No. 81.) It plainly shows that the conduct being discussed pertained to an "implied request to cease;" conversely, the conduct with the potential to "alarm or seriously annoy," as explained in the footnote, was not the content of a leaflet: it was the physical course of conduct described by the County.

being asked to stop, the conduct could still "compromise public safety," or result in "impede[d] access." *See id.* Returning to Plaintiffs' leafleting example, the speech is extraneous and inessential to Section 425.31(c), which not concerned with the content of the pamphlet. The content or the existence of the speech is irrelevant to Section 425.31(c); it is the conduct that matters.

Plaintiffs' reliance on dicta in *McCullen*, which noted that a statute "would not be content neutral if it were concerned with . . . '[l]isteners' reactions to speech'" (573 U.S. at 481) does not change the equation, as Section 425.31(c) regulates the physical conduct or acts accompanying the speech, not the speech itself. Put differently, if the speech itself "caused offense or made listeners uncomfortable, such offense or discomfort" is insufficient to violate Section 425.31(c). *Id.*[13] Conversely, an individual can violate Section 425.31(c) without speaking at all, as it is a restriction on conduct, not speech. Thus, Section 425.31(c) is content neutral.

**b. Section 425.31(d)—Course of Conduct Placing Another in Reasonable Fear of Physical Harm—Is Content-Neutral**

Also without merit is Plaintiffs' new argument, based on the Supreme Court's recent decision in *Counterman v. Colorado*, 143 S. Ct. 2106 (2023), that section 425.31(d)

---

[13] In *McCullen*, the Supreme Court referenced its earlier decision in *Boos v. Barry*, 485 U.S. 312 (1988), which is completely different from the case here. In *Boos*, the Supreme Court was faced with a regulation that was "justified only by reference to speech" and was based on "the need to protect the dignity of foreign diplomatic personnel by shielding them from speech that is critical of their governments." *Id.* at 321. While such a restriction is clearly content-based, that is extraordinarily far afield from the regulation herein.

is content-based because it supposedly "directly regulates speech based on listener reaction." (App. Br. 47.) In *Counterman*, the Supreme Court held that, in order to criminalize communications containing true threats, the speaker must have acted with at least reckless disregard in making the statement. 143 S. Ct. at 2112, 2119.

Plaintiffs' argument based on *Counterman* fails for numerous reasons. First, as stated, Section 425.31(d) by its plain terms prohibits "conduct" and "acts"—not pure speech or "communications," as Plaintiffs continue to insist. Second, if Section 425.31(d) is read as prohibiting true threats,[14] the provision contains the key element that the Colorado statute lacked—a subjective *mens rea* requirement. Section 425.31(d) includes the specific intent of "knowingly."[15] Thus, the County law goes beyond the subjective mindset that the Constitution requires to criminalize true threats.

Although the argument is somewhat unclear, to the extent Plaintiffs assert that the "knowing" *mens rea* applies only to the "conduct" that places another in fear of physical harm—and somehow not to the entire clause, i.e., "conduct that places another

---

[14] Sections 425.31(e) and (f) do prohibit true threats (accompanied with other "knowing" conduct), however. *See* LWC § 425.31(e), (f) ("by force or threat of force . . . knowingly injure, intimidate, or interfere with . . ."). The arguments contained within this Part II.A(1)(b) apply with equal force to subsections (e) and (f), although Plaintiffs have not argued that the *mens rea* elements in Sections 425.31(e) and (f) are problematic under *Counterman*.

[15] As the *Counterman* Court acknowledged, there are three basic choices in the subjective "mental-state hierarchy": purpose, knowledge, and recklessness. 143 S. Ct. at 2117. "Knowing," which is close to "purpose," occurs in the true threats context when a person "knows to a practical certainty that others will take his words as threats." *Id.* "A greater gap" separates purpose and knowledge from "recklessness." *Id.*

in fear of physical harm"—the argument must fail. (*See* App. Br. 47.) In interpreting a statute, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and an alternative interpretation of the statute is fairly possible, [this Court is] . . . obligated to construct the statute to avoid such problems." *Golb v. A.G. of N.Y.*, 870 F.3d 89, 103 (2d Cir. 2017) (quotation marks and citation omitted; alteration accepted).

Finally, even Plaintiffs seem to acknowledge that true threats, as category of unprotected speech, may be properly restricted based on content, consistent with the First Amendment. (App. Br. 47.) Although *Counterman* demands that a true-threat speaker meet a subjective *mens rea* requirement in order to be held liable, the decision did not transform true threats into a category of protected pure speech that, when regulated, demands strict scrutiny.

### c. Sections 425.31(e) & (f)—Force and Threats of Force—Are Content-Neutral

First, it bears repeating that these sections' plain terms regulate conduct and/or true threats—not protected expression, as Plaintiffs argue. (App. Br. 43.) That difference is fundamental, as this Court has explained, and the distinction underpins a host of constitutional regulations. *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998) (collecting cases and describing activities with expressive components that the government regulates in a constitutional manner).

Second, Plaintiffs' argument that the motive requirements of Sections 425.31(e) and (f) make those sections content-based is without merit. Under Section 425.31(e), it is unlawful for any person to engage in the specifically proscribed conduct[16] "in order to discourage such other person . . . from obtaining or providing, or assisting in obtaining or providing, reproductive health care services." Section 425.31(f)'s motive requirement prohibits the same predicate conduct "because such person was or is obtaining or providing, or was or is assisting in obtaining or providing, reproductive health care services." These sections are virtually identical to sections of the federal Freedom of Access to Clinic Entrances Act ("FACE") and the New York State Clinic Access Act ("NYSCAA"). *See* 18 U.S.C. § 248(a); N.Y. Penal L. § 240.70(1)(a)-(b); N.Y. Civ. Rights L. § 79-m.

Numerous courts—including this Court—have upheld FACE as content-neutral against similar challenges. *See, e.g., Weslin*, 156 F.3d at 296-297; *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir. 1996) ("FACE's motive requirement does not discriminate against speech or conduct that expresses an abortion-related message. . . . What FACE's motive requirement accomplishes is the perfectly constitutional task of filtering out conduct that Congress believes need not be covered by a federal statute."). In any case, as the Supreme Court has explained, the "First Amendment . . . does not prohibit

---

[16] That is, "by force or threat of force, or by physically obstructing or blocking, knowingly injure, intimidate, or interfere with, or attempt to injure, intimidate, or interfere with, another person . . . ." Section 425.31(e).

the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993); *see also United States v. Stevens*, 559 U.S. 460, 468 (2010) (explaining that "speech integral to criminal conduct" has never been protected by the First Amendment).

Under these sections, "interfering with" is a violation if it is linked with a predicate use of force, threat of force, or physical obstruction. *See* LWC § 425.21(e), (f).[17] Plaintiffs' citation to *United States v. Alvarez*, 567 U.S. 709 (2012) (App. Br. 43-44)—a case that invalidated a law criminalizing false statements on their own— is therefore not on point. Indeed, even the plurality opinion in *Alvarez* discussed Supreme Court precedents that recognized legally cognizable harms associated with false statements. 567 U.S. at 719-22, 730. Were there any ambiguity as to whether "deceptive means" serves as a proxy for anti-abortion rhetoric, the legislative history for Chapter 425 is clear that the phrase was included in the definition of "interfere with" as a response to specific individuals who gained entry to a reproductive health care facility in White Plains through the making of false appointments, then facilitated the

---

[17] Plaintiffs are wrong that "interfering with" is a necessary element of each of these sections. (App. Br. 43.) It is an alternative element, connected by a disjunctive "or," with "injure" and "intimidate."

infiltration of numerous others, ultimately suspending the facility's operation for several hours. (JA 244-247; Legis. Comm. Mtg. (June 1, 2022).[18])

Again, these provisions essentially mirror conduct prohibited by FACE, which was found to be content-neutral by this Court, among other courts. Thus, Plaintiffs' arguments fail.

### d. Section 425.31(a)—Physical Obstruction and Blocking—Is Content-Neutral

Plaintiffs' argument that Section 425.31(a) is content-based is unclear; they say simply that the provision "fails *Reed*'s 'function or purpose' test" because it relates to "one's *purpose*" of "prevent[ing another] from obtaining or providing reproductive health care services." (App. Br. 47 (internal quotation marks omitted).) In this way, Plaintiffs appear to attack the motive requirement of this section, as they did with Sections 425.31(e) and (f). But Section 425.31(a) clearly prohibits conduct—physically obstructing or blocking, not speech—and any motive requirement is content-neutral, merely serving to draw the provision more narrowly. The same logic and precedent refuting Plaintiffs' arguments as to subsections (e) and (f) apply here. *See supra* II.A(1)(c).

### e. Section 425.31(h)—Interference with the Operation of a Clinic—Is Content-Neutral

---

[18] The video of this Board of Legislators' committee meeting is available at the following link: https://westchestercountyny.granicus.com/player/clip/1454?view_id=1&redirect=true&h=36548071fec63c46b64b3f8ebeee1f57 (last visited Nov. 2, 2023).

Plaintiffs' argument that Section 425.31(h) is content-based (App. Br. 44-45) is also unavailing. As with Section 425.31(a), the section clearly prohibits *conduct*—i.e., suspending the operation of a reproductive health care facility. Nor is the section "viewpoint" based. Plaintiffs argue that "only a speaker aiming to disrupt operation of an abortion facility" falls under the ambit of the law. (App. Br. 45.) But this is inaccurate, because the term "reproductive health care facility" is a two-way street, and as defined, includes, for instance, anti-abortion pregnancy crisis centers. *See* LWC § 425.21(k), (*l*). To the extent any speech or expressive conduct is incidentally implicated, Section 425.31(h) remains content-neutral. *See Weslin*, 156 F.3d at 296-97 (explaining that "FACE prohibits obstruction of reproductive health clinics regardless of the issue that animates the demonstrators" and "applies . . . at a clinic in which patients are encouraged not to have abortions").

Plaintiffs' reliance on *Animal Legal Def. Fund (ALDF) v. Kelly*, 9 F.4th 1219 (10th Cir. 2021)—an out-of-circuit opinion about a materially different Kansas statute—is misguided. *Kelly* invalidated a Kansas law that criminalized false statements made to gain entry into an animal facility with "intent to damage" that facility. *Id.* at 1234-35. The law was found to be "impermissibly viewpoint discriminatory" because the "damage" the statute's intent element contemplated was the speculative result of a temporally distant chain of hypothetical events: first, that the entrant would conduct an investigation; second, that the entrant would later disseminate information of wrongdoing uncovered

during the investigation; and finally, that the facility would face (speculative) "negative publicity, lost business, or boycotts." *Id.* Thus, the damage in *Kelly* arose not from the false speech, but from the post-entrance dissemination of true facts uncovered during the investigation. *Id.* The law at issue here is eminently distinct. Not only is there no viewpoint problem, but the contemplated harm in Section 425.31(h) is the imminent disruption of the facility itself through the suspension (or attempted suspension) of its operations—for example, *during* a person's hypothetical entrance by deceptive means.

### 2. Plaintiffs' Arguments Regarding any Disagreement with the Pro-Life Message Are Unsupported and Irrelevant

Plaintiffs' argument that the law is content-based because certain members of the legislature disagreed with pro-life messaging (App. Br. 47-50) is without any basis, as the District Court explained in its opinion. (SPA 16.) The Supreme Court recently cautioned that "inquiries into legislative motives are a hazardous matter" and that "[e]ven when an argument about legislative motive is backed by statements made by legislators who voted for a law, [the Court has] been reluctant to attribute those motives to the legislative body as a whole . . . . [W]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022) (internal quotation marks and citation omitted). Indeed, "the text of the statute itself shows 'ample evidence that the passage of [Chapter 425] was instead spurred by a sincere belief' regarding the need to provide safe access to reproductive healthcare facilities by staff and patients." (SPA 16

(quoting *Dobbs*, 142 S. Ct. at 2256).) Section 425.11 provides that Chapter 425 was enacted in order to "protect persons seeking access to reproductive health care facilities and services both inside facilities as well as outside said facilities." (JA 173-4.) The text of the statute itself makes clear that Chapter 425 was enacted not out of disagreement with pro-life messaging, but rather as a desire to protect safe access to reproductive health care facilities. This is also supported by the fact that the law applies outside of both facilities that provide abortion-related services *and* anti-abortion facilities such as pregnancy crisis centers. *See* LWC § 425.21(k),(*l*); *see also* Legis. Comm. Mtg. (June 6, 2022) at 1:10:50-1:16:25.

Moreover, the cases Plaintiffs cite in support of their argument (App. Br. 48-50) that this Court should consider their cherry-picked statements are inapposite, do not stand for the propositions Plaintiffs claim, and/or did not involve any formal content-neutrality analysis.

For instance, *Niemotko v. Maryland*, 340 U.S. 268 (1951), invalidated disorderly-conduct convictions of Jehovah's Witnesses who had gathered in a park without first obtaining a permit, where government officials had essentially unfettered discretion to approve or deny the permit applications. *Id.* at 271-273. There, the statements and questions made as part of the permit hearing—a record of the decision-making process—were relevant to the plaintiffs' equal-protection claim, and the Court found that the city council's denial of the plaintiffs' applications was based solely on

discriminatory animus. *Id.*; *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977) (consideration of motive relevant in review of the determination made for a specific housing development).

The Ninth Circuit's decision in *Wasden* is also inapposite. There, a panel held that Idaho's "Recordings Clause" was content-based where it "prohibit[ed] the recording of a defined topic—'the conduct of an agricultural production facility's operations.'" The court explained that the provision was an "obvious" example of a content-based regulation of speech because it "defin[es] regulated speech by particular subject matter." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (quoting *Reed*, 135 S. Ct. at 2227). The *Wasden* Court additionally found the Recordings Clause was content-based because state authorities would not apply the law without viewing or listening to the particular recording at issue. *Id.* In a separate section of the court's opinion regarding equal-protection claims, the court did note that animus towards investigative reporters and animal activist groups motivated passage of the law, but not exclusively. *Id.* at 1201-02. After conducting a searching rational basis review, it declined to strike down the relevant section of the law.

Plaintiffs are also wrong about this Court's holding in *Dorman v. Satti*, 862 F.2d 432 (2d Cir. 1988). This Court did not invalidate the subject law because it was deemed content-based and unable to survive strict scrutiny. *Id.* at 437. Rather, the *Dorman* Court struck down the law on overbreadth and vagueness grounds. *Id.*

Finally, in *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972), the law was content-based and violated the Equal Protection Clause on its face, by permitting picketing on a single subject (labor relations) but banning all other picketing within 150 feet of a school. *Id.* at 92, 94-97, 102. Here, Chapter 425 contains no such exception for a category of "favored" speech. In short, none of the cases on which Plaintiffs rely supports their claim.

Ultimately, the Supreme Court's recent instruction in *Dobbs* to focus on the text of the enactment, and not political speech by members of the elected body, defeats Plaintiffs' attempt to divine the motivations of the legislature. As such, there is no need to go down Plaintiffs' rabbit hole, as Chapter 425 is content-neutral.

## B. Chapter 425 Is Narrowly Tailored to the Government's Significant, Legitimate Interests

Because Chapter 425 is content-neutral, it must be narrowly tailored to a significant government interest. *See McCullen*, 573 U.S. at 486 (setting forth intermediate scrutiny test for time, place, and manner restrictions); *Weslin*, 156 F.3d at 297 (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)) (setting forth intermediate scrutiny test for restrictions on proscribable conduct that may have expressive components).

Binding precedent holds that the County's stated interests in ensuring public safety, protecting access to reproductive health care, and protecting property rights, among others, are valid, significant interests, unrelated to the suppression of free expression. *See McCullen*, 573 U.S. at 486; *Weslin*, 156 F.3d at 297-98. The Chapter 425

provisions challenged here are narrowly tailored to the County's interests. They proscribe conduct and expression that is not protected by the First Amendment, like physical force, physical damage, obstruction, and true threats, and leave open ample alternative channels for communication. Plaintiffs' argument that the County's law is not narrowly tailored for the same reasons that the Pittsburgh law failed narrow tailoring in *Brown v. City of Pittsburgh*, 586 F.3d 263 (3d Cir. 2009) (App. Br. 53), is unpersuasive. In *Brown*, the subject law contained two provisions regulating traditional forms of speech (e.g., picketing, demonstrating, counseling, and protesting within certain buffer and bubble zones around clinics) and in total burdened substantially more speech than necessary to achieve Pittsburgh's significant interests. 586 F.3d at 276-282. The same cannot be said here. None of Chapter 425's provisions regulates protected First Amendment expression; rather, they prohibit specific conduct.

In sum, Plaintiffs (and anyone else) can speak, leaflet, pray, protest, picket, demonstrate and express themselves outside of reproductive health care clinics. The law is thus narrowly tailored.

## III. Plaintiffs Cannot Demonstrate a Likelihood of Success on Their Due Process Claims

To satisfy due process, statutes "must give people of common intelligence fair notice of what the law demands of them," *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (internal quotation marks and citation omitted), and prevent "arbitrary and discriminatory enforcement." *Beckles v. United States*, 580 U.S. 256, 262 (2017); *see* SPA

17. But statutory language need not achieve "meticulous specificity, which would come at the cost of flexibility and reasonable breadth." *United States v. Dawkins*, 999 F.3d 767, 787 (2d Cir. 2021) (internal quotation marks and citation omitted). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). This Court has recognized that "language is necessarily marked by a degree of imprecision." *Libertarian Party v. Cuomo*, 970 F.3d 106, 126 (2d Cir. 2020) (internal quotation marks and citation omitted). Thus, a statute meets the constitutional standard for specificity when "it is clear what the [statute] as a whole prohibits." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). In reviewing a vagueness claim, courts must adopt any reasonable statutory construction that will preserve a law's constitutionality. *See Skilling v. United States*, 561 U.S. 358, 404-06 (2010); *Golb*, 870 F.3d at 103.

## A. Section 425.31(c)—the Follow-and-Harass Provision—Is Not Vague

As the District Court found, Section 425.31(c) does not implicate the concerns underlying the vagueness doctrine. As a whole, Chapter 425 promotes the safe and unimpeded access to reproductive health care facilities, and the law reinforces that goal with targeted prohibitions, such as the restriction on following and harassing. When the County crafted the follow-and-harass provision, it was careful to include a definition of "harass." Indeed, the provision's text and the legislative history make clear that "harass" takes its meaning from a specific section of New York State's criminal harassment

38

statute—Penal Law § 240.26—and related case law interpretations. *See* LWC § 425.21(c); (JA 161-69).

Plaintiffs facially attack the follow-and-harass provision on two grounds, both rooted in the definition of "harass." First, Plaintiffs argue that the "serves no legitimate purpose" clause in the definition is vague because it includes, as an illustration, a potential violator's continuing "conduct or acts" following another person's "implied request to cease" the conduct. (App. Br. 54-56.) But far from introducing uncertainty into the law, the example of a person's ignoring an express or implied request to be left alone provides more specificity to assist in the determination of what constitutes a "legitimate purpose." This language also finds support in the case law. For instance, in *People v. Richards*, the defendant balloon-seller was convicted of harassment under Penal Law § 425.26, where each time a prospective buyer declined defendant's offer and tried to walk around him, defendant stepped in front of her and insisted that she buy balloons for her young children. 22 Misc. 3d 798, 800, 806-07 (N.Y. Crim. Ct. 2008); *see also People v. Shack*, 86 N.Y.2d 529, 533-39 (1995) (defendant's calls to psychologist-cousin no longer served legitimate purpose of treating his mental health after he stopped taking medication and cousin explained his calls were not welcome). In these cases and others, the conduct continued after an express or implied request to cease had been made— satisfying one element of the penal law, in that the conduct no longer served a legitimate purpose. *See also, e.g., People v. Coveney*, 50 Misc. 3d 1, 7 (2d Dep't App. Term 2015)

("[T]he sheer volume of unwanted attempted communications can establish the 'no legitimate purpose' element of the offense."); *People v. Sonee*, 25 Misc. 3d 128(A) (1st Dep't App. Term 2009) (*per curiam*) (same).

Moreover, a person of ordinary intelligence would understand the plain meaning of the definitional terms. "Imply" means "to express indirectly," or to suggest rather than say plainly. Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/imply (last accessed 29 Oct. 2023). A "request to cease" conduct is ordinarily understood as asking that the conduct come to an end. *See id.*, https://www.merriam-webster.com/dictionary/request & https://www.merriam-webster.com/dictionary/cease (last accessed 29 Oct. 2023).

Different examples of implied requests to cease were also discussed during committee meetings. The example of refusing to buy wares and walking around a seller to imply a request that the seller stop (i.e., the balloon-salesman example) was discussed, as was the example of walking by and ignoring an individual handing out objects or literature. (*See* Legis. Comm. Mtg. (June 6, 2022) at 1:29:25-1:31:16.) In light of the ordinary meaning of the language, the relevant case law, and the examples discussed during committee meetings, Plaintiffs' assertion that the County left the parameters of the definition of "harass" for the courts to decide is unfounded. The quotation that Plaintiffs cite from the County's counsel in support of this claim—that evidence would need to be presented to the court to make a determination (App. Br. 56-57)—merely

harkened back to a prior committee discussion about the fact-intensive nature of proving-up harassment claims, which is an unremarkable proposition. (Legis. Comm. Mtg. (June 6, 2022) 1:26:51-1:31:16.)

That a court might be required to make a factual determination in a case is not a novel consideration, nor does it render a statute unconstitutionally vague. Plaintiffs' reliance on *City of Chicago v. Morales* (App. Br. 57) is thus misplaced. There, a Supreme Court plurality struck down a Chicago ordinance that criminalized loitering—which was defined simply as "remaining in any one place with no apparent purpose"—as vague, where the definition was innately subjective, and the statute failed to include a *mens rea* requirement, or any other elements or standards to guide compliance with the law or its enforcement. 527 U.S. 41, 55-64 (1999). In contrast, Chapter 425's follow-and-harass provision and corresponding definition include a "knowingly" scienter requirement, as well as numerous other limitations: "following;" the 25-foot vicinity; and the repeated course of conduct or acts that alarm or seriously annoy others. *See United States v. Scott*, 979 F.3d 986, 993 (2d Cir. 2020) (explaining that under the statute, defendant must "knowingly act with the intent to impede an investigation to be liable," and that the statute's "scienter requirement alleviates any lingering concerns about fair notice.").

Second, Plaintiffs argue that the definition of "harass" comprises an "unascertainable standard" because it targets acts that "alarm or seriously annoy" others. (App. Br. 54-56.) However, not only is this an ascertainable standard, it is already

prohibited conduct under Section 240.26(3) of the New York Penal Law. Under that section, a person who intentionally "engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose" can be found guilty of harassment in the second degree. *See Jaegly v. Couch*, 439 F.3d 149, 152-53 (2d Cir. 2006) (quoting N.Y. Penal L. § 240.26(3) and upholding probable cause on an arrest for violation of this subsection). Also with respect to ascertainability, New York's highest court has long held that the State Penal Law's harassment statutes assume a reasonable person standard for potential victims. *See People v. Lagano*, 39 N.Y.3d 108, 112 (2022) (construing Penal Law § 240.26(1) and explaining that a "'true threat' is one that a reasonable person in the victim's position would consider to be an unequivocal statement of intended physical harm"); *see also People v. Harvey*, 307 N.Y. 588, 592 (1954) ("[L]anguage or conduct is to be adjudged to be disorderly, not merely because it offends some supersensitive or hypercritical individual, but because it is, by its nature, of a sort that is a substantial interference with (our old friend) the reasonable man."). Thus, given this decisional law, a reasonable person standard would apply here as well.

For all these reasons, the other cases Plaintiffs cite in an attempt to undercut Section 425.31(c)'s clarity—*Coates v. Cincinnati*, 402 U.S. 611 (1971), *Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012), and *Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983) (App. Br. 55-57)—are readily distinguishable, most fundamentally because the statutes at issue in

each of those cases lacked sufficient limiting language or additional statutory elements, and invited arbitrary enforcement.

Section 425.31(c) is clearly worded and sufficiently limited, and gives fair notice to Plaintiffs, and anyone else, about the parameters of the law. Further, the law can be enforced in a rational and even-handed manner. While law enforcement may be required to exercise some level of judgment in enforcing the law, so too does law enforcement exercise judgment with respect to any of the harassment laws. As the Supreme Court has noted, the necessity for exercise of judgment by police in enforcing a criminal law does not invalidate it—the question is whether the law establishes sufficient standards to guide the exercise of judgment. *See Betancourt v. Bloomberg*, 448 F.3d 547, 554 (2d Cir. 2006). Here, the degree and nature of judgment required does not invite arbitrary or discriminatory enforcement in light of the numerous and specific elements of the provision. Thus, Plaintiffs' facial and as-applied vagueness arguments regarding the follow-and-harass provision fail.

**B.    Section 425.31(a)—Physical Obstruction and Blocking—Is Not Vague**

Plaintiffs also erroneously argue that Section 425.31(a)'s prohibition on "physically obstructing or blocking" is impermissibly vague. (App. Br. 58-59.) Under section 425.21(h), to "physically obstruct or block" means "to physically hinder, restrain, or impede, or to attempt to physically hinder, restrain or impede, or to otherwise render ingress to or egress from, or render passage to or from the premises

of a reproductive health care facility impassable, unreasonably difficult, or hazardous." Despite Plaintiffs' claim to the contrary, this language is not materially different from that of FACE. *See* 18 U.S.C. § 248(e)(4) ("'Physical obstruction' means rendering impassable ingress to or egress from a facility . . . or rendering passage to or from such a facility . . . unreasonably difficult or hazardous."). Each term used in the County's prohibition precludes actual or attempted physical obstruction of some kind—not First Amendment expression—which is cabined further by a motive requirement ("to prevent that person from obtaining or rendering . . . medical treatment or reproductive health care services"). Moreover, as with all the other provisions Plaintiffs challenge in their appeal, Section 425.31(a) includes a "knowing" *mens rea*. The Supreme Court and this Court have repeatedly recognized that a scienter requirement ameliorates any concern over the adequacy of notice in a vagueness analysis. *See, e.g., Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *United States v. Stewart,* 590 F.3d 93, 117 (2d Cir. 2009). Thus, facially or as-applied, the contours of Section 425.31(a) are not impermissibly vague, and do not set any "trap[s] for the innocent." *United States v. Schneiderman*, 968 F.2d 1564, 1568 (2d Cir. 1992).

## C. Section 425.31(h)—Interference with the Operation of a Clinic—Is Not Vague

Plaintiffs also challenge Section 425.31(h) as vague, due to the definition of "interfere with." (App. Br. 57.) As discussed above, the definition is identical to that in FACE, although it adds "to stop . . . through deceptive means or otherwise." LWC

§ 425.21(d). The County included this language to specifically address individuals who gained entry to a reproductive health care facility under deceptive means, then facilitated the infiltration by numerous other people, ultimately suspending the facility's operation for 22 a period of time. (Legis. Comm. Mtg. (May 23, 2022) at 11:26-29:51;[19] Legis. Comm. Mtg. (June 1, 2022) at 3:40-5:20, 2:00:30-2:01:38.) But "interference" is not a violation on its own. Rather, for a violation to occur, "interference" must be tied to suspending the actual operation of a facility. LWC § 425.31(h). A person of ordinary intelligence would understand that the common meaning of "operation" in this context is "the quality or state of being functional or operative." Merriam-Webster.com Dictionary, Def. 2(b), https://www.merriam-webster.com/dictionary/operation (last accessed 30 Oct. 2023). And again, the "knowing" scienter requirement mitigates any concerns regarding the adequacy of notice. An individual would understand if they were knowingly suspending the operation of a clinic through one of the means specified in Section 425.31(h). *See Hoffman Estates*, 455 U.S. at 499.

### D. Sections 425.31(e) & (f)—Force and Threats of Force—Are Not Vague

Sections 425.31(e) and (f) are virtually identical to provisions of the FACE and the NYSCAA. *See* 18 U.S.C. § 248(a); N.Y. Penal Law § 240.70(1)(a)-(b); N.Y. Civ. Rights Law § 79-m. Like those statutes, Sections 425.31(e) and (f) unambiguously

---

[19]The video of this Board of Legislators' committee meeting is available at the following link: https://westchestercountyny.granicus.com/player/clip/1437?view_id=1&redirect=true&h=557cd2095116e25bfc76977a559bcf18 (last visited Nov. 2, 2023).

prohibit force, threats of force, and physical obstruction and blocking under specific circumstances, and these elements are necessary predicates to a violation. Given the clear conduct it proscribes, FACE—which also prohibits attempts—has been upheld, time and again, when challenged on vagueness grounds. *See, e.g., Dinwiddie*, 76 F.3d at 924; *see also New York v. Cain*, 418 F. Supp. 2d 457, 482 (S.D.N.Y. 2006) (noting no material difference between challenged provision of the NYSCAA and the FACE).

On appeal, Plaintiffs appear to have abandoned their primary argument, asserted below, that these provisions are vague because they do not actually require any predicate force, threat of force, or physical obstruction. (*See* Pls.' Mem., SDNY ECF No. 80-1 at 5, 15 (ECF pages 13, 23).)[20] Now acknowledging that force, a threat of force, or physical obstruction is a requirement of these provisions, Plaintiffs take another tack—they claim that the terms "physically obstruct or block" (because it includes in its definition "hindering" and "impeding") and "deceptive means" (as used in the definition of the term "interfere with") are unconstitutionally vague. (App. Br. 57-59.) But for the

---

[20] This argument had rested on Plaintiffs' bizarre assertion that the plain language of Sections 425.31(e) and (f) should be supplanted with words Plaintiffs had selected and spliced from the legislative intent of Chapter 425. (*See* Pls.' Mem., SDNY ECF No. 80-1 at 15 (ECF page 23.) On appeal, Plaintiffs' citation to and accompanying parenthetical proposition for *VIP of Berlin, LLC v. Tn. of Berlin*, 593 F.3d 179 (2d Cir. 2010), appears to be a vestige of this argument. (App. Br. 59.) To be clear, the plain text of a statute is reviewed first; the legislative intent should only be reached if questions remain about the law's meaning. *VIP of Berlin* is not to the contrary. 593 F. 3d at 188 ("In addition to the plain meaning of the ordinance's wording . . . the ordinance's stated purpose—preventing the adverse secondary effects . . . provides additional clarity and guidance.").

reasons already discussed above in Parts III.B and III.C, Plaintiffs' arguments are unavailing.

Plaintiffs also urge that the prohibitions on physical obstruction and threats of force found in these sections (and potentially others, like Section 425.31(a)) are vague when viewed through the lens of the vacated Second Circuit panel opinion in *Griepp*, 991 F.3d 81. (*See* App. Br. 4-5, 14-17, 31, 33-36.) The Court can reject this argument— and all Plaintiffs' arguments relating to the vacated *Griepp* decision. Regardless of whether the case was mentioned fleetingly in the legislative history, the relevant question presented in this appeal is whether the challenged provisions of Chapter 425 are constitutional. Plaintiffs are the only parties to this action that rely on the vacated decision in *Griepp* in an attempt to undermine the County's law. But their reliance simply underscores their inability to legitimately challenge the plain language of Chapter 425's provisions. These sections are not unconstitutionally vague.

## IV.    Chapter 425 Does Not Implicate Overbreadth Concerns

According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. *Virginia v. Hicks*, 539 U.S. 113, 118-20 (2003). The doctrine seeks to strike a balance between competing social costs—free expression, and the ability to proscribe dangerous activities. *Id.* "In order to maintain an appropriate balance, [the Supreme Court has] vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553

U.S. 285, 292 (2008). Invalidation for overbreadth is "strong medicine" that is not to be "casually employed." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (internal quotation marks omitted).

Although Plaintiffs devote the bulk of their brief to arguing that Chapter 425 is content-based and vague, they nonetheless advance a half-hearted argument that Chapter 425 is overbroad, in which they assert in conclusory fashion that "a substantial number of Chapter 425's applications to speech and expressive conduct vastly exceed any legitimate sweep" (App. Br. 29), and that "Chapter 425 sweeps in a substantial amount of protected expression judged in relation to any conceivable legitimate sweep." (App. Br. 60). Plaintiffs' argument, such as it is, is unavailing. Chapter 425's prohibitions all regard non-expressive conduct, with only potentially incidental implications for free expression. *See United States v. Thompson*, 896 F.3d 155, 163 (2d Cir. 2018).

In appraising the District Court's analysis, Plaintiffs argue that the District Court "failed to consider the patent likelihood that all applications of 425.31(c) would involve pro-life advocates and no others." (App. Br. 23.) But Plaintiffs' attack appears to stem from a misapprehension of the overbreadth doctrine's meaning. The overbreadth doctrine is concerned with a statute's potentially sweeping up substantial amounts of protected speech in its application, *see Williams*, 553 U.S. at 292—not whether, in practice, the greater percentage of individuals prosecuted under the law, for their violating conduct, are also purveying an anti-abortion message. In any event, the First

Amendment does not recognize disparate impact claims, and "a group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." *Weslin*, 156 F.3d at 297; *see also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762-63 (1994) (same).

Plaintiffs' parenthetical citation to *People v. Golb* in its short overbreadth argument—to the extent it was intended to call into question Section 425.31(c)'s validity (App. Br. 60)—is inapposite. In *Golb*, the New York Court of Appeals declared unconstitutional an "aggravated harassment" statute that criminalized pure speech without sufficient limitation. 23 N.Y.3d 455, 467 (2014) (statute violated where person engaged in any "communication" made "in a manner likely to cause annoyance or alarm"). The Court determined that the law was overbroad (and vague) because "any proscription on pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to invoke immediate violence." *Id.* (internal quotation marks omitted). More instructive here is *People v. Dietze*, 75 N.Y.2d 47 (1989), on which *Golb* relied. In *Dietze*, the Court of Appeals invalidated a prohibition on the public use of "abusive or obscene language" because it regulated "pure speech" and was not appropriately limited; it was thus unconstitutional. 75 N.Y. 2d at 50-53 & n.1. But a separate provision of the same harassment law, which was also before the Court, was left intact: that provision prohibited certain physical conduct and harassment, like Section 425.31(c). *See id.* at 53-54.

Plaintiffs have failed to demonstrate that any of the challenged provisions of Chapter 425 are overbroad in an absolute sense (that a substantial number of instances exist where the law cannot be applied constitutionally), or that Plaintiffs' First Amendment rights would be substantially burdened in relation to Chapter 425's plainly legitimate sweep. Their challenge based on overbreadth must therefore be rejected.

## V.     Plaintiffs Have Not Established Irreparable Harm

Plaintiffs' assertion of irreparable harm is based on the alleged "self-censorship" that they claim is "already occurring." (App. Br. 61.) To the extent there is any self-censorship, however, it is based on an obvious and intentional misreading of Chapter 425.

Nothing prevents the Individual Plaintiffs from participating in the conduct they claim they want to engage in—for instance, anti-abortion sidewalk counseling and literature distribution. Indeed, anti-abortion sidewalk counselors and protesters have continued to carry out these very activities right outside of Westchester County reproductive health care facilities, without incident. Moreover, and as mentioned above, certain sections of Chapter 425 are nearly identical to those in the existing federal and state clinic access laws. Thus, even were this Court to enjoin those sections of the County law (e.g., Sections 425.31(e) and (f)), the purported "chilling" effect would necessarily remain, to the extent it (subjectively) exists. As such, Plaintiffs have not carried their burden.

Chapter 425 is a valid, content-neutral regulation that fully complies with the First Amendment. Thus, there is no threat of harm that Appellants will lose First Amendment freedoms. *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) ("[B]ecause they have failed to demonstrate a likelihood of success on their First Amendment or other constitutional claims, their asserted harm is not of a constitutional dimension."); *Marcavage v. Syracuse Police Dep't*, 515 F. App'x 14, 15-16 (2d Cir. 2013) (summary order) (affirming denial of a PI where there was no realistic threat of a loss of First Amendment freedoms, as the Court had upheld similar ordinances).

With respect to 40DFL and WP40DFL, their purported irreparable harm was initially tied to "the 40-day Local Vigil" that took place last spring. However, that vigil is long over, and they have promoted new vigils since. Moreover, there are no claims that the organizations have engaged in "self-censorship," as Plaintiffs argue. (App. Br. 61.) Thus, there would be no irreparable harm to the Organizational Plaintiffs, even if they had standing.

For all these reasons, Plaintiffs have not demonstrated irreparable harm.

## VI. The Balance of the Equities/Public Interest Weigh Against Plaintiffs

The County's interests in ensuring public safety and protecting access to reproductive health care clinics, as examples, have been recognized as significant by the courts. *See, e.g., McCullen*, 573 U.S. at 486; *Weslin*, 156 F.3d at 297-98. Further, Chapter 425 is narrowly tailored to the County's interests, leaving open ample alternative channels for communication. *See* Part II.B. Where a law furthers the government's

interests and Plaintiffs have not shown a likelihood of success on the merits of a constitutional-violation claim, an injunction does not serve the public interest. *We the Patriots USA*, 17 F.4th at 296. Thus, as the District Court determined (SPA 22), Plaintiffs have failed to meet their burden to show the balance of the equities weigh in their favor.

## CONCLUSION

For the foregoing reasons, the County respectfully requests that this Court affirm the District Court's dismissal of the Organizational Plaintiffs for lack of standing and the denial of Plaintiffs' application for a preliminary injunction.

Dated: November 3, 2023       Respectfully submitted,

         *John M. Nonna*
         John M. Nonna
         Westchester County Attorney

         JUSTIN R. ADIN
         Deputy County Attorney

         SHAWNA C. MACLEOD
         Senior Assistant County Attorney

         ALIDA L. MARCOS
         Assistant County Attorney

         148 Martine Avenue
         600 Michaelian Office Building
         White Plains, New York 10601
         (914) 995-2690

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4) because it contains 13111 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Garamond font and 13-point font for footnotes, using Microsoft Word 2016.

Dated: White Plains, New York
November 3, 2023

*John M. Nonna*
John M. Nonna
Westchester County Attorney