# 23-804-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

40 Days For Life, a Nonprofit Corporation of the State of Texas, White Plains 40 Days For Life, an Unincorporated Association of the State of New York, Oksana Hulinsky, and Regina Joy Creary Molinelli

*Plaintiffs-Appellants,*

Jane Doe, Sally Roe,

*Plaintiffs,*

– against –

County of Westchester,

*Defendant-Appellee,*

County of Westchester, County of Westchester County Department of Public Safety, Terrance Raynor, Acting Commissioner of the Westchester Department of Public Safety, in his official capacity, New Rochelle Police Department, City Of White Plains Department Of Public Safety, George Latimer, Chief Executive of the County of Westchester, in his official capacity

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF *AMICUS CURIAE* NEW YORK CIVIL LIBERTIES UNION IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE**

*For continuation of Amicus Appearance See Inside Cover*

New York Civil Liberties Union
Foundation, by:

JESSICA PERRY
GABRIELLA LARIOS
KATHARINE ES BODDE
MOLLY K. BIKLEN
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
jperry@nyclu.org

*Counsel for Amicus Curiae*

Dated: November 13, 2023
New York, NY

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, amicus curiae New York Civil Liberties Union hereby certifies that it has no parent corporations and that no publicly held corporations own 10% or more of its stock.

## STATEMENT REGARDING CONSENT TO FILE AND COMPLIANCE WITH RULE 29(a)(4)(E)

This brief is filed pursuant to Federal Rule of Appellate Procedure 29(a)(2) with the consent of all parties. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amicus curiae certifies that no counsel for a party authored this brief in whole or in part, and no person other than amicus, its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................... i

STATEMENT REGARDING CONSENT TO FILE AND COMPLIANCE ........... ii

WITH RULE 29(a)(4)(E) ................................................................ ii

TABLE OF CONTENTS ................................................................. iii

TABLE OF AUTHORITIES ............................................................ iv

INTRODUCTION .......................................................................... 1

INTEREST OF AMICUS CURIAE ..................................................... 3

ARGUMENT ................................................................................ 4

   I. Chapter 425 is Content-Neutral and Ensures Reproductive Access and Ample
     Room for Protest. ................................................................ 4

     A. Chapter 425 is a Content-Neutral Regulation and Intermediate Scrutiny
       Applies. ...................................................................... 5

     B. Chapter 425 is Narrowly Tailored to Bar No More Speech Than Necessary
       to Ensure Reproductive Access. ....................................... 9

   II.  The Follow-and-Harass Provision in Chapter 425 is Constitutional. ........... 14

     A. Chapter 425's Follow-and-Harass Provision is Clearly Defined in
       Accordance with New York Penal Law § 240.26(3). ................... 17

     B. New York Courts Interpret the Term "Harass" Narrowly in Related Criminal
       Harassment Statutes So as Not to Implicate Protected Speech. ................... 23

CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Cases** ...................................................................................... Pages(s)

*Boos v. Barry*, 485 U.S. 312 (1988)......................................................... 10

*Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984) ................... 10

*Cohen v. California*, 403 U.S. 15 (1971) ..................................................... 5

*Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194
    (2d Cir. 2012)......................................................................... 17, 20

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)...................... 9, 13

*Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167 (2d Cir. 2006)........................... 19

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)........................................... 17, 20

*Hill v. Colorado*, 530 U.S. 703 (2000)..................................................... 8, 12, 13, 23

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006).......................................... 20

*Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994)........................................ 5, 11

*Matter of Martin v. Flynn*, 133 A.D.3d 1369 (4th Dep't 2015) ............................. 21

*McCullen v. Coakley*, 573 U.S. 464 (2014) ..................................................... 10, 24

*Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021).................................... 19

*New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021) .............................. 22, 23

*New York v. Griepp*, 991 F.3d 81 (2d Cir. 2021), *reh'g granted and opinion
    vacated sub nom. People v. Griepp*, 997 F.3d 1258 (2d Cir. 2021)............... 22

*People v. Dietze*, 75 N.Y.2d 47 (1989)................................................... 25, 26

*People v. Feliciano*, No. 01-147, 2002 WL 338123
    (N.Y. App. Term Feb. 26, 2002) ................................................... 27

*People v. Golb*, 23 N.Y.3d 455 (2014)..................................................... 26

*People v. Richards*, 22 Misc. 3d 798 (Crim. Ct. 2008)..................................... 21, 23

*People v. Shack*, 86 N.Y.2d 529 (1995) ............................................................21, 22

*People v. Stuart*, 100 N.Y.2d 412 (2003) ...................................................21

*People v. Valerio*, 60 N.Y.2d 669 (1983) ....................................................21

*Police Dept. of Chicago v. Mosley*, 408 U.S. 92 (1972) ...........................................4

*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) ..................................................5

*Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357 (1997) .......................4, 11

*Skilling v. United States*, 561 U.S. 358 (2010) ......................................................19

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011) ...........................................17

*United States v. Weslin*, 156 F.3d 292 (2d Cir. 1988) ..............................1, 8, 9, 12

*VIP of Berlin, LLC v. Tn. of Berlin*, 593 F.3d 179 (2d Cir. 2010)...........................19

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)..................................................5

*Watts v. United States*, 394 U.S. 705 (1969)...........................................................27

**Statutes, Rules, and Regulations**

18 U.S.C. § 248 ............................................................................*passim*

N.Y. Pub. Health Law § 2599-aa (McKinney 2019)........................................12, 13

N.Y.C. Admin. Code §§ 10-1001, 10-1003.....................................................2, 4, 24

N.Y. Penal Law § 240.25 ..................................................................25, 27

N.Y. Penal Law § 240.26(3)................................................................*passim*

N.Y. Penal Law § 240.30(1)(a) ...............................................................26

N.Y. Penal Law §§ 240.70-240.73 ...............................................................2, 4

Reproductive Health Care Facilities Access Act, Local Law No. 309-2023
    (as amended by the Westchester County Board of Legislators, Aug. 10,
    2023) ....................................................................................8

## Other Authorities

Bailey Hosfelt, *Three Pro-Lifers Arrested After Infiltrating White Plains Abortion Clinic*, Examiner News (Dec. 3, 2021), https://www.theexaminernews.com/three-pro-lifers-arrested-after-infiltrating-white-plains-abortion-clinic/ .........................................................7

Nat'l Abortion Federation, 2022 Violence & Disruption Statistics (2022), https://prochoice.org/wp-content/uploads/2022-VD-Report-FINAL.pdf .......8

U.S. Dep't of Justice, *Recent Cases on Violence Against Reproductive Health Care Providers* (May 30, 2023), https://www.justice.gov/crt/recent-cases-violence-against-reproductive-health-care-providers .....................................8

# INTRODUCTION

The right to protest and peacefully assemble is at the core of the First Amendment's protections. Federal and New York law also protect a patient's safe access to reproductive health care. Courts can properly interpret clinic access laws like the one at issue in this case in a manner that respects the First Amendment rights of individuals seeking to engage in constitutionally protected speech on public streets and sidewalks outside of clinics while ensuring safe access to reproductive health care, free from obstruction, intimidation, and harassment. *Amicus curiae* New York Civil Liberties Union writes here to address whether the Westchester County clinic access law, Chapter 425 of the Local Laws of Westchester, is a constitutional content-neutral regulation of speech under the First Amendment and concludes that it has been properly calibrated to satisfy the First Amendment.

In *United States v. Weslin*, 156 F.3d 292 (2d Cir. 1988), this Court upheld the validity of the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248, in large part because the federal statute is directed at obstructive conduct and not at constitutionally protected speech. It also held, as has every Circuit Court to address the question, that the statute is content-neutral because it prohibits obstruction of reproductive health care clinics regardless of the message of protestors. Just as FACE is facially content-neutral and valid, so too is Chapter

425, which closely tracks FACE, the New York State clinic access law, N.Y. Penal Law Section 240.70, and the New York City clinic access law, N.Y. Admin. Code § 10-1003. As a facially content-neutral law, Chapter 425 passes constitutional muster under the First Amendment because it is narrowly tailored to only minimally burden speech, if speech is burdened at all, to achieve Westchester County's significant interest in ensuring that people can safely access reproductive health care, and thus satisfies intermediate scrutiny.

Additionally, Section 425.31(c), which prohibits "follow[ing] and harass[ing]," someone within 25 feet of a clinic, is not unconstitutionally vague. The term "harassment" is defined in Chapter 425 to track the definition of second-degree harassment in New York Penal Law § 240.26(3). New York courts have upheld this provision and further narrowed it to reach only conduct unprotected by the First Amendment, such as physical violence and true threats, and not constitutionally protected expression.

The District Court correctly concluded that Plaintiffs-Appellants failed to demonstrate a likelihood of success on the merits of their claims and the decision below should be affirmed.[1]

---

[1] Plaintiffs-Appellants challenge Chapter 425 as content-based and challenge, on due process grounds, six of the nine specific provisions of the law: Sections 425.31(a), (c), (d), (e), (f), and (h). Plaintiffs-Appellants also appeal the lower court's decision on standing. *Amicus curiae* addresses only the content-based arguments and Section 425.31(c)—the follow-and-harass provision of the law. While *amicus curiae* agrees with Defendant-Appellee Westchester County that all of the

# INTEREST OF AMICUS CURIAE

The New York Civil Liberties Union is a non-profit membership organization with approximately 85,000 members and supporters and is the New York State affiliate of the American Civil Liberties Union. The NYCLU is devoted to the protection and enhancement of fundamental rights and liberties, including the right to protest and the right of individuals to make their own decisions concerning their lives and intimate relationships such as whether to carry a pregnancy to term. The current controversy raises the question of whether Westchester County's clinic access law, aimed at ensuring safe access to reproductive health care, respects the First Amendment rights of individuals who are opposed to abortion to express their views in traditional public forums like the public sidewalks and streets outside of reproductive health care clinics.

The NYCLU has served as *amicus curiae* in cases where this Court and the United States Supreme Court were tasked with engaging in a similar exercise. In *People v. Griepp*, the NYCLU argued the constitutionality of the FACE, its state law counterpart, N.Y. Penal Law §§ 240.70-240.73, and the "follow-and-harass provision" of the New York City clinic access law, N.Y. Admin. Code § 10-1003.

---

remaining challenged provisions of Chapter 425 are constitutional under the First Amendment and the Due Process Clause of the Fourteenth Amendment, and further agrees with the District Court's decision with respect to standing, *amicus curiae* do not address those arguments.

997 F.3d 81, 124 (2d Cir. 2021). The NYCLU also joined the ACLU and other organizations to argue in *Schneck v. Pro-Choice Network of Western New York* that specific clinic protestors who had engaged in prior unlawful conduct could be subject to a narrowly crafted injunction imposing reasonable time, place, and manner restrictions on their demonstration activity. 519 U.S. 357 (1997). The proper resolution of this case is thus a matter of substantial interest to the NYCLU and its members.

## ARGUMENT

### I.   Chapter 425 is Content-Neutral and Ensures Reproductive Access and Ample Room for Protest.

The Supreme Court has repeatedly held that in traditional public forums, like the sidewalks and streets near reproductive health care clinics, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972); *see also Madsen v. Women's Health Ctr., Inc*., 512 U.S. 753, 764 (1994) (describing areas around a reproductive health care clinic as a "traditional public forum"). Courts are correctly skeptical of governmental restrictions on speech in public forums where anyone who does not want to hear the speaker's message is free to walk away. *See Cohen v. California*, 403 U.S. 15, 21 (1971) ("[W]e are often 'captives' outside the sanctuary of the home and subject to free speech."). It is also

well-established that "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 163 (2015).

Even so, the Supreme Court has recognized that certain significant or compelling interests may justify some restrictions on speech, even on public sidewalks and streets, so long as the restrictions are not aimed at the suppression of any particular viewpoint. "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). If a law that restricts speech in a public forum is "content-neutral," it is "justified without reference to the content of the regulated speech," and in that case, its constitutionality may be assessed by determining if the law is "narrowly tailored to serve a significant government interest." *Id.* at 791 (internal quotation marks and citations omitted). Accordingly, the Court must first determine the appropriate level of scrutiny.

### A. Chapter 425 is a Content-Neutral Regulation and Intermediate Scrutiny Applies.

Neither the language of Chapter 425 nor its legislative history supports Plaintiffs-Appellants' argument that the statute was enacted to single out particular

speech or to suppress particular ideas.

The legislative history makes clear that the County's purpose in passing the law is to "ensure safe access to reproductive health care facilities" while protecting the "right to peaceably protest and express one's views." A-161. The legislative record cites instances of obstructive, intimidating, and harassing conduct—not speech—as motivating the County to enact the law. Specifically, the record describes a clinic invasion that took place at All Women's Health and Medical Services in White Plains, New York, where an individual affiliated with Red Rose Rescue falsely identified herself as a patient to gain entry to the clinic, and after letting in other members of their group, occupied the clinic for more than three hours until law enforcement finally removed the protestors. A-272.[2] Clinic operations were completely disrupted during that time. Patients could not access the waiting room and were forced to leave and cancel appointments. A-272 – A-273.[3] On the same day as protestors invaded and blocked access to the clinic, members of Red Rose Rescue took down the names of clinic patients who were forced to cancel their appointments so they could later identify those patients if

[2] *See also* Considine Decl., ¶¶ 10-13, *Hulinsky v. Cnty. of Westchester*, No. 22-CV-06950 (PMH) (Mar. 14, 2023), ECF. No. 91 (Chief Administrator for All Women's Medical Services in White Plains summarizing November 27, 2021 clinic invasion).

[3] *See also* Bailey Hosfelt, *Three Pro-Lifers Arrested After Infiltrating White Plains Abortion Clinic*, Examiner News (Dec. 3, 2021), https://www.theexaminernews.com/three-pro-lifers-arrested-after-infiltrating-white-plains-abortion-clinic/; Complaint, ¶¶ 36-48, *People v. Red Rose Rescue*, No. 23-cv-04832 (June 8, 2023) (alleging that patients were not able to see their doctors at the clinic until later in the day), ECF No. 1.

6

they returned to the clinic for their missed appointments. A-273. Patients at other reproductive health care clinics in Westchester County have also experienced obstructive and intimidating conduct. For example, at Planned Parenthood Hudson Peconic, protestors threw nails and other sharp metal objects on the ground of the clinic's driveway, which resulted in a patient's flat tire. A-274. Reproductive health care is often time sensitive, and the impact of a cancelled appointment can be great. Additionally, disruptions of this nature in a health care setting that is supposed to be private are traumatic for both patients and clinic staff, particularly given how widespread violence and threats of violence are at reproductive health care clinics throughout the country.[4]

On its face and in the legislative record, nothing in Chapter 425 expressly refers to the content of any message,[5] such as singling out speech against abortion.

---

[4] *See, e.g.*, U.S. Dep't of Justice, *Recent Cases on Violence Against Reproductive Health Care Providers* (May 30, 2023), https://www.justice.gov/crt/recent-cases-violence-against-reproductive-health-care-providers (summarizing recent federal prosecutions of violence and other conduct directed at reproductive health care providers); Nat'l Abortion Federation, 2022 Violence & Disruption Statistics (2022), https://prochoice.org/wp-content/uploads/2022-VD-Report-FINAL.pdf (noting an increase in clinic invasions, arsons, death threats, threats of harm, stalking, and other criminal conduct at reproductive health clinics in 2022 as compared to previous years).

[5] An earlier version of Chapter 425 contained an 8-foot bubble zone provision which was modeled on a similar provision the Supreme Court had previously upheld in *Hill v. Colorado*, 530 U.S. 703, 719 (2000). *See* A-151 – A-185. The ACLU submitted an *amicus* brief in *Hill* arguing that the law did refer to the content of speech because it forbade handing out pamphlets, flyers, and other materials within the bubble zone. The Supreme Court disagreed and concluded the law was content-neutral. The County voted to repeal the bubble zone provision of the law on August 10, 2023, so it is no longer at issue. *See* Reproductive Health Care Facilities Access Act, Local Law No. 309-2023 (as amended by the Westchester County Board of Legislators, Aug. 10, 2023).

It is targeted at conduct not protected by the First Amendment, such as "obstructing or blocking," or using "force or threat of force" to "injure, intimidate, or interfere with" accessing reproductive health services. *See* §§ 425.31(a), (d), (e), (f), and (h). These provisions are modeled off FACE and the New York State clinic access act. FACE is a constitutional, content-neutral regulation of speech, as has been held by every Circuit to address this issue, including this Court in *United States v. Weslin*. In *Weslin*, this Court found that FACE was content-neutral because it "prohibits obstruction of reproductive health clinics regardless of the issue that animates the demonstrators" and "applies *whenever* access to reproductive health services is obstructed." 156 F.3d at 297 (emphasis in original). Chapter 425 similarly bars obstructive conduct regardless of the message of the protestor, so is likewise content-neutral. There is no reason here for this Court to diverge from its prior determination in *Weslin*.

Further, the follow-and-harass provision of the law, Section 425.31(c), makes no viewpoint distinctions. As discussed thoroughly in Section II *infra*, the law's operative language—which carefully tracks the language of second-degree harassment in New York Penal Law § 240.26(3)—is directed at behavior or conduct, not speech in support of or against any particular viewpoint. New York courts have interpreted the term "harass" narrowly to ensure that it does not reach speech. The legislative record refers to the possibility of anticipated violence and

8

protest activity related to the then anticipated decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), overturning *Roe v. Wade*, 410 US 113 (1973), and therefore refers to abortion. A-273. But a mere reference to the *Dobbs* decision provides no basis to draw the conclusion that the law was enacted to single out or suppress any particular type of speech, idea, or discussion of any subject. In fact, the law accounts for the possibility that potential perpetrators of violence could support *or* oppose abortion. A-273. It is also permissible that the County identified reproductive health care clinics as the target of the legislation. "[A] facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics." *McCullen v. Coakley*, 573 U.S. 464, 480 (2014) (quoting *Ward*, 491 U.S. at 791). The First Amendment does not require the legislature to adopt only speech regulations that apply everywhere if the problem the regulation seeks to address is most acute at one type of facility, such as at reproductive health clinics, so long as the government's interests do not make viewpoint distinctions. *See, e.g.*, *Boos v. Barry*, 485 U.S. 312 (1988) (partially upholding statutory restriction on picketing outside foreign embassies because of unique security problems).

> **B. Chapter 425 is Narrowly Tailored to Bar No More Speech Than Necessary to Ensure Reproductive Access.**

Since the law is a content-neutral speech regulation, intermediate scrutiny

applies. Chapter 425 must be narrowly tailored to advance a significant governmental interest and must "leave open ample alternative avenues of communication." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). A law that "burden[s] substantially more speech than is necessary to further the government's legitimate interests" is not narrowly tailored. *Ward*, 491 U.S. at 799. Applying intermediate scrutiny, Chapter 425 is constitutional on its face because Westchester County has a significant interest in protecting safe access to reproductive health care facilities, and the law only minimally burdens protestor speech—or burdens no speech at all—to protect reproductive access, leaving ample alternative avenues of communication to protestors outside the clinic.

There can be no doubt that Westchester County has a significant interest in preserving the health and safety of clinic patients and staff and ensuring that patients have unobstructed access to health care. Specifically, Westchester County states that its interest is to "ensure safe access to reproductive health care facilities." A-161. The County could similarly assert a significant interest in ensuring safe patient access to any type of health care that certain members of the public may deem controversial, such as access to vaccines, contraception, or gender-affirming care. The Supreme Court and this Court have repeatedly affirmed the importance of such interests. *See Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 376 (1997) (citing *Madsen v. Women's Health Ctr.*, 512 U.S. 753,

767–68 (1994)) (recognizing state's legitimate interest in "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights, and protecting a woman's freedom to seek pregnancy-related services"); *Hill v. Colorado*, 530 U.S. 703, 715–16, 719 (2000) (recognizing state's legitimate interest in facilitating "unimpeded access to health care facilities" and that "[t]he First Amendment does not demand that patients at a medical facility undertake Herculean efforts to escape the cacophony of political protests" (alteration in original)); *Weslin*, 156 F.3d at 297 (same).

The New York legislature, in passing the Reproductive Health Act, made it abundantly clear that "comprehensive reproductive health care is a fundamental component of every individual's health, privacy and equality" in New York State, and "[e]very individual has the fundamental right to choose or refuse contraception or sterilization," the "fundamental right to choose to carry the pregnancy to term, to give birth to a child, or to have an abortion," and the "state shall not discriminate against, deny, or interfere with the exercise of the[se] rights." N.Y. Pub. Health Law § 2599-aa (McKinney 2019). Westchester County's asserted interest in ensuring safe access to reproductive health care aligns and furthers New York's

strong interest in protecting the rights of all New Yorkers to access "comprehensive reproductive health care."[6]

Chapter 425 is also narrowly tailored to not burden more speech than is necessary because it leaves open ample alternative avenues of communication. As a preliminary matter, nothing in the law prevents a protestor, irrespective of the content of their speech, from approaching anyone on the public street, sidewalk, driveway, or parking lot near the clinic to speak, hand out leaflets, or to hold a sign in viewing distance of patients or clinic staff. Speech activities are unrestricted except for the prohibition of following and harassing within 25 feet of the clinic.

The Supreme Court has of course recognized the importance of safeguarding the opportunity to engage in face-to-face communication with willing listeners on public sidewalks. *See Hill*, 530 U.S. at 726–27 (approving of a buffer zone that "allow[ed] the speaker to communicate at a 'normal conversational distance'"); *Schenck*, 519 U.S. at 377 (striking down floating buffer zone around people and vehicles entering clinic in part because it prevented the petitioners "from communicating a message from a normal conversational distance or handing

---

[6] Nothing in the Supreme Court's recent decision in *Dobbs* overruling its prior precedent to take away the federal constitutional right to abortion alters the significance of Westchester County's significant and legitimate interest in ensuring safe access to reproductive health care. Before the Supreme Court determined that "the issue of abortion" belongs "to the people's elected representatives," *Dobbs*, 142 S. Ct. at 2243, the people of New York had already enshrined in law the "fundamental right" of all New Yorkers "to have an abortion," N.Y. Pub. Health Law § 2599-aa (McKinney 2019).

leaflets to people entering or leaving the clinics who are walking on the public sidewalks"). The law's follow-and-harass provision, § 425.31(c), *see* Section II *infra*, may prevent protestors from engaging in some face-to-face conversations with clinic patients or staff, but it applies only after "an express or implied request to cease" has been made and the protestor continues to follow them. In practice, this means that any protestor may approach anyone entering the clinic to speak to them and to offer them leaflets or other objects. Nothing in the follow-and-harass provision would prevent a protestor from standing still and holding a sign with a message or standing still and speaking a message loudly within hearing distance of someone approaching the clinic. The law is clear on its face that if no "request or implied request to cease" has been made, a protestor's activity is not burdened at all. Chapter 425 therefore leaves ample alternative avenues of communication.

Nothing demonstrates this better than the protest activity that has taken place at Westchester reproductive health care clinics without incident since the law went into effect. Since Chapter 425 was enacted, demonstrators have continued to protest outside of clinics in Westchester County. In a video taken only a month after the passage of the law, protestors can be seen holding signs in front of the clinic and walking up to a car at the clinic and handing out a leaflet. A-328 – A-329, A-342; *see also* A-343 – A-350 (photos taken in October 2022 of one protestor outside of clinic holding signs and another protestor speaking to a person

13

in front of the clinic); A-352 – A-357 (photos taken in January 2023 depicting protestors holding signs in front of and along the wall of All Women's Health Medical Services); A-358 – A-361 (photos of protestors outside of Planned Parenthood taken in October 2022). If Chapter 425 allows expressive activity to occur in all instances except the narrow set of circumstances when a person indicates they do not want to listen to and be followed by the protestor, it would be a stretch to conclude that speech is significantly burdened, if it is even burdened at all. This minimal level of intrusion protects the First Amendment rights of those who wish to have their messages seen and heard, while also protecting the interests of clinic patients and staff to be free from intimidation, harassment, obstruction, and in some cases, violence, when seeking to obtain or provide reproductive health care services.

## II.    The Follow-and-Harass Provision in Chapter 425 is Constitutional.

Plaintiffs-Appellants challenge the facial validity of Chapter 425's follow-and-harass provision under the Due Process Clause of the Fourteenth Amendment, arguing that it is so vague and standardless that it fails to provide adequate notice of what conduct is prohibited. But this argument fails to account for the limiting language in the provision that makes it ascertainable and ignores judicial interpretations of the term "harass" by the New York courts that exclude protected speech from within its scope.

Section 425.31(c), the follow-and-harass provision, makes it unlawful to "knowingly follow and harass another person within twenty-five (25) feet of (i) the premises of a reproductive health care facility or (ii) the entrance or exit of a public parking lot serving a reproductive health care facility." Section 425.21(c) then defines "harass" as "to engage in a course of conduct or repeatedly commit conduct or acts that alarm or seriously annoy another person and which serve no legitimate purpose"; "[f]or the purposes of th[e] definition, conduct or acts that serve no legitimate purpose include, but are not limited to, conduct or acts that continue after an express or implied request to cease has been made." As stated in the legislative history, the meaning of "harass" in Chapter 425 "is derived from New York Penal Law § 240.26(3), and related interpretations in the case law." *See* A-166. New York Penal Law § 240.26(3) is a provision of the state second degree criminal harassment statute requiring that an individual, with intent to harass, annoy or alarm another person, "engage[] in a course of conduct or repeatedly commit[] acts which alarm or seriously annoy such other person and which serve no legitimate purpose." Judicial interpretations of "harass" under Penal Law § 240.26(3) have repeatedly upheld the validity of the statute.

In interpreting the words of a statute, this Court has directed courts look to "the interpretations the relevant courts have given to analogous statutes." *Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 213 (2d Cir.

2012) (citing *Grayned v. City of Rockford*, 408 U.S. 104 (1972)). In *Grayned*, the Supreme Court reviewed an Illinois anti-noise ordinance that was challenged as unconstitutionally vague. *Id.* at 107-08. While there were no state court decisions interpreting the anti-noise ordinance at issue in the case, the Court recognized that state courts' interpretations of state statutes must control and looked to controlling Illinois Supreme Court decisions on an analogous statute to understand the challenged phrase in the local ordinance. *Id*. at 110-11. Furthermore, in interpreting a statute, a court should consider the language of a statute "in context, with the benefit of the canons of statutory construction and legislative history." *Commack*, 680 F.3d at 213 (citing *United States v. Farhane*, 634 F.3d 127, 142 (2d Cir. 2011).

Consistent with these directives, the term "harass" in Chapter 425 should be interpreted in conformance with its meaning in the New York Penal Law, as was the clear intent of the Westchester County Legislature. *See* A-166. Penal Law § 240.26 has consistently been interpreted narrowly by New York courts to apply only to unprotected conduct and not to protected First Amendment expression. Indeed, in close cases where there was a risk that a prohibition against harassment might intrude upon free expression, the New York Court of Appeals has narrowed the statutory definition of harassment and invalidated provisions that risk such intrusion. This Court should therefore reject Plaintiffs-Appellants' facial challenge.

### A. Chapter 425's Follow-and-Harass Provision is Clearly Defined in Accordance with New York Penal Law § 240.26(3).

Plaintiffs-Appellants' facial vagueness challenge to Chapter 425's follow-and-harass provision must fail because all elements of the provision are clearly defined in accordance with New York law. First, Plaintiffs-Appellants argue that the definition of "harass" "fails to provide any ascertainable standard" because it includes a "prohibition on 'annoying' conduct or acts," Pls. Br. at 55, and that the law's "scienter requirement does not eliminate the problem" because "the standard by which to assess that conduct remains vague," *id.* at 56 (quotations omitted). Second, Plaintiffs-Appellants argue that the law's imposition of penalties for continuing to act "after an implied request to cease" is "egregiously vague." Pls. Br. at 56. Both of these arguments are easily refuted because, taken together, all components of the definition of harass provide sufficient notice as to what conduct is prohibited.

A statute is impermissibly vague as a matter of due process if it either fails to provide a person of ordinary intelligence fair notice as to the prohibited conduct or is so devoid of standards that it authorizes or encourages discriminatory enforcement. *VIP of Berlin, LLC v. Tn. of Berlin*, 593 F.3d 179, 186-87 (2d Cir. 2010). In reviewing a vagueness claim, courts must adopt any reasonable statutory construction that will preserve a law's constitutionality. *Skilling v. United States*,

561 U.S. 358, 405-06 (2010); *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 177 (2d Cir. 2006). Where, as here, the statutes at issue are "capable of reaching expression sheltered by the First Amendment, the vagueness doctrine would demand a greater degree of specificity than in other contexts." *Melendez v. City of New York*, 16 F.4th 992, 1015 (2d Cir. 2021). Under these standards, Chapter 425's follow-and-harass provision is not unconstitutionally vague.

Plaintiffs-Appellants' first argument, that the law's prohibition on annoying conduct fails to provide any ascertainable standard, finds no support in this Circuit's or State's jurisprudence. Critically, as the District Court correctly noted, "conduct that causes alarm or serious annoyance is already prohibited under N.Y. Penal Law § 240.26(3) and therefore not vague." *Hulinsky v. Cnty. of Westchester*, No. 22-CV-06950 (PMH), 2023 WL 3052267, at *10 (S.D.N.Y. Apr. 24, 2023); *see also Jaegly v. Couch*, 439 F.3d 149, 152-53 (2d Cir. 2006) (quoting N.Y. Penal Law § 240.26(3) and finding probable cause for an arrest for violation of this subsection). Instead of applying controlling case law interpreting New York Penal Law § 240.26 and providing guidance on what kind of "annoying" conduct is prohibited, Plaintiffs-Appellants point to out-of-circuit cases to argue that prohibitions on annoying conduct involve an "inscrutable standard" and lack limiting constructions by state courts. Pls. Br. at 55-56. New York courts apply these limiting constructions when interpreting the term "harass" under New York's

Penal Law. Because Chapter 425 has not yet been interpreted by any state court, the same limiting constructions applied to interpretations of "harass" under the Penal Law should control when analyzing Chapter 425's follow-and-harass provision. *See Commack*, 680 F.3d at 213; *Grayned*, 408 U.S. at 110-11.

Plaintiffs-Appellants' second argument regarding the follow-and-harass provision likewise fails because the provision provides sufficient notice of what kind of conduct or acts "that serve no legitimate purpose" are prohibited by an express or "implied request to cease." To violate the follow-and-harass provision, an individual must *continue a course of conduct* after learning that a request to cease that conduct has been made. Again, New York case law provides guidance on how this provision should be interpreted. New York courts have long held that the clause "course of conduct" requires a course of deliberate behavior and "excludes constitutionally protected speech from its reach, [and] plainly distinguishes [the] statute from those which impose criminal liability for pure speech." *Matter of Martin v. Flynn*, 133 A.D.3d 1369, 1370 (4th Dep't 2015) (citing *People v. Shack*, 86 N.Y.2d 529, 535 (1995)); *People v. Valerio*, 60 N.Y.2d 669, 670 (1983) (reversing harassment conviction where the only evidence was that the defendant, while picketing, pointed to a union official as he left the building and stated "there is one of the corrupt ones"). Consistent with that statutory construction, there must be an "absence of expression of ideas or

thoughts" to satisfy the "no legitimate purpose" element. *People v. Stuart*, 100

N.Y.2d 412, 428 (2003) (construing the phrase "no legitimate purpose"). Penal

Law § 240.26(3) was found to be facially sufficient in *People v. Richards*, where a

balloon seller was convicted of harassment for "repeatedly block[ing] the path" of

a prospective buyer because, each time she declined the seller's offer and

attempted to walk around the seller, the seller stepped in front of her and insisted

that she buy balloons for her young children. 22 Misc. 3d 798, 807 (Crim. Ct.

2008). The court notes that while the seller's "initial offer to engage in a

commercial transaction may have served a legitimate purpose, his continuing to

aggressively hawk his wares to an unwilling customer, did not." *Id.*; *see also*

*People v. Shack*, 86 N.Y.2d 529, 533-37 (1995) (finding defendant's calls to

psychologist-cousin no longer served legitimate purpose of treating his mental

health after he stopped taking medication and cousin explained his calls were not

welcome).

Under Chapter 425, an express or "implied request to cease" does not

include constitutionally protected activity such as leafleting or picketing, but rather

prohibits a clearly established course of harassing conduct that is unwanted by the

listener.[7] An individual seeking reproductive health care services can make an

---

[7] Plaintiffs-Appellants argue that, in defining an implied request to cease, Westchester County
improperly relied on the vacated decision in *New York v. Griepp*, 991 F.3d 81 (2d Cir. ), *reh'g*

implied request for Plaintiffs-Appellants to cease by evading unwanted communication and hurrying down the street, as in *Richards*. A violation of Chapter 425 would occur if a sidewalk counselor continued stepping in front of the individual and insisted that she talk to them. As another example, one Plaintiff-Appellant sidewalk counselor described engaging cars entering or leaving the parking lot of a reproductive health care facility and speaking to the individual or offering literature after she rolled down the window prior to the adoption of Chapter 425. A-292. This conduct is still permissible under Chapter 425. A violation of Chapter 425 would occur if the individual in the car made an implied request to cease by rolling up the window and the sidewalk counselor *continued* to follow and speak to them and offer literature.

Further, any vagueness concerns with respect to the follow-and-harass provision are "ameliorated by [the statute's] scienter requirement." *Hill*, 530 U.S. at 732. The law applies only to a person who "knowingly" follows and harasses another within 25 feet of a reproductive health care facility. Taken together, the prohibition on annoying conduct and the implied request to cease provision give

---

granted and opinion vacated sub nom. *People v. Griepp,* 997 F.3d 1258 (2d Cir. 2021), and *on reh'g sub nom. New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021) ("*Griepp I*"). The constitutionality of a law's prohibition on a course of conduct following an implied request to cease is supported by New York state jurisprudence, and nothing in *Griepp I* or *II* casts doubt on this. In *Griepp II*, this Court ultimately declined to comment on the constitutional validity of the New York City law's follow-and-harass provision. *New York by James v. Griepp*, 11 F.4th 174, 178 (2d Cir. 2021).

Plaintiffs-Appellants sufficient notice of when they would be engaging in conduct or acts in violation of Chapter 425. All of the elements of the follow-and-harass provision must be met to establish a violation—an individual would need to follow another person *and* commit repeated *acts* or engage in courses of conduct that alarm or seriously annoy another person, and which serve no legitimate purpose *after* a request to cease has been made.

Finally, in evaluating whether the follow-and-harass provision is unconstitutionally vague, it is important to note that Chapter 425's follow-and-harass provision is nearly identical to the follow-and-harass provision in Section 8–803(a)(3) of the New York City clinic access act, N.Y.C. Admin. Code § 10-1001 *et seq*. The United States Supreme Court has expressly cited the New York City clinic access act as a model of "narrow tailoring." *See McCullen v. Coakley*, 573 U.S. 464, 491 (2014). The Supreme Court specifically observed that "[i]f [Massachusetts] is particularly concerned about harassment, it could also consider an ordinance such as the one adopted in New York City that not only prohibits obstructing access to a clinic, but also makes it a crime to follow and harass another person within 15 feet of the premises of a reproductive health care facility." *Id*. Notably, the Court cabined its commendation of the City statute by stating that "whether [New York City's] law would pass constitutional muster would depend on a number of other factors such as whether the term 'harassment'

has been authoritatively construed to avoid vagueness . . . problems." *Id*. at 491

n.8. It has been so construed by the New York courts, as discussed at length above.

Viewed in this light, Chapter 425 is an example of a narrowly tailored law that

properly balances the rights of protestors with the County's interest in ensuring

patients can safely seek reproductive health care in Westchester County.

### B. New York Courts Interpret the Term "Harass" Narrowly in Related Criminal Harassment Statutes So as Not to Implicate Protected Speech.

If any doubt remains as to the constitutionality of the definition of "harass"

under Penal Law § 240.26(3), New York courts have authoritatively construed

predecessor criminal harassment statutes and other harassment provisions of the

New York Penal Law narrowly to not reach speech protected by the First

Amendment.

In *People v. Dietze*, 75 N.Y.2d 47 (1989), the Court of Appeals reviewed a

conviction under a former provision in the criminal harassment statute, Penal Law

§ 240.25(2), that prohibited the use of "abusive" language with the intent to

"harass" or "annoy." Defendant's misconduct involved her referring to the

complainant as a "bitch" and the complainant's son as a "dog." *Id.* at 50. The

defendant further stated that she would "beat the crap" out of [the complainant]

some day[.]" *Id.* The Court agreed that defendant's statement was "abusive." *Id.* at

51. But it held that it was not harassment, because, for "pure speech" to be

rendered criminal, the words must "by their utterance alone, inflict injury or tend naturally to evoke immediate violence or other breach of the peace." *Id.* at 52. Finding that the words uttered by the defendant posed no such "clear and present danger," the Court reversed the conviction and found the provision under which the defendant was prosecuted to be invalid. *Id.* at 51-53.

*People v. Golb*, 23 N.Y.3d 455 (2014), involved appellate review of a conviction, as relevant here, on three counts of aggravated harassment in the second degree under Penal Law § 240.30(1)(a). That provision prohibited "communicat[ing] with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm." *Id.* at 466-67. Relying upon its earlier decision in *Dietze*, the Court of Appeals concluded that the harassment provision unconstitutionally intruded on expression by encompassing any communication that has the intent to annoy and was excessively vague. *Id.* at 467-68.

The lower courts in New York have followed the lead of the Court of Appeals and have construed other harassment provisions of the Penal Law in a manner to protect free expression. For example, in *People v. Feliciano*, No. 01-147, 2002 WL 338123, at *3 (N.Y. App. Term Feb. 26, 2002), the court vacated the defendant's first degree harassment conviction because, although the

defendant's "intent to harass, annoy or alarm" the 14-year old complainant was properly inferred from his unwanted conduct in repeatedly approaching and speaking to the complainant, the brief but repeated encounters between the defendant and complainant all occurred in a public setting and the defendant's statements were not accompanied by threatening gestures or conduct. The court therefore found that complainant was not "put in reasonable fear of physical injury" as the statute required. Accordingly, under Penal Law Section 240.25, harassment involves "true threats" unprotected by the First Amendment. *Watts v. United States,* 394 U.S. 705 (1969).

In sum, New York courts have interpreted harassment laws narrowly so as not to encroach upon protected speech. This Court's interpretation of Chapter 425's follow-and-harass provision should be no different.

## CONCLUSION

For the reasons set forth above, *amicus curiae* respectfully urges this Court to affirm the District Court's order below denying the preliminary injunction.

Dated: November 13, 2023
    New York, NY

Respectfully submitted,

New York Civil Liberties Union
    Foundation, by:


_____
JESSICA PERRY
GABRIELLA LARIOS
KATHARINE ES BODDE
MOLLY K. BIKLEN
125 Broad Street, 19th Floor
New York, NY 10004
Phone: (212) 607-3300
jperry@nyclu.org

*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

This brief complies with Federal Rules of Appellate Procedure 27(d)(2)(A), stating that the total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, and certificate of compliance, is 6,087. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Procedure 32(a)(6) because it has been prepared using 14-point Times New Roman proportionally spaced typeface, double-spaced.

_____

Jessica Perry